**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-01385-SKC-STV

JASON BROOKS

Plaintiff(s),

v.

NISSAN NORTH AMERICA, INC,

Defendants.

---

**PLAINTIFF'S AFFIDAVIT IN SUPPORT OF**
**MOTION FOR DEFAULT JUDGMENT**

---

Plaintiff, Jason T. Brooks, being duly sworn, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

## I. PERSONAL BACKGROUND

1. I am the Plaintiff in the above-captioned action. I am a resident of Longmont, Colorado 80503, residing at 636 Barberry Drive. I am over the age of 18 and am competent to testify to the matters set forth herein.

2. I am a pro se litigant. I developed my legal knowledge and skills over the course of more than 12 years of incarceration, during which I dedicated substantial time to the study of federal civil procedure, constitutional law, and appellate practice. Following my release, I applied those skills across multiple federal civil actions in the

United States District Court for the District of Colorado, including matters before this Court in which I successfully obtained two remands from the United States Court of Appeals for the Tenth Circuit. I am familiar with this Court, its procedures, and the standards applicable to the motions filed in this action.

3. I bring this action as a gig worker whose entire livelihood depends on my personal vehicle. I suffer from a long-standing autoimmune condition that qualifies as a disability under the Americans with Disabilities Act, and I have managed this condition for more than 20 years. The events described in this affidavit unfolded against that backdrop.

## II. THE LEASE AND THE VEHICLE'S DEFECTS

4. On October 31, 2024, I leased a 2024 Nissan Ariya, Engage E-4ORCE AWD, VIN JN1CF0BB2RM740913 ("the Vehicle"), from Valley Nissan, LLC in Longmont, Colorado. The Lease was assigned to and serviced by Nissan Motor Acceptance Company LLC ("NMAC"), a wholly-owned subsidiary and agent of Nissan North America, Inc. ("NNA"). My monthly lease payment was $418.66.

5. The Vehicle experienced four complete mechanical failures over the course of the Lease, leaving me without a functioning vehicle for a cumulative total of 51 days, including 36 business days — exceeding Colorado's statutory threshold of 24 business days. The first failure occurred on December 24, 2024, at just 3,649 miles, 54 days after the lease commenced.

6. During the second breakdown, Nissan failed to provide any loaner vehicle whatsoever, leaving me completely without transportation and unable to work. As a

gig worker whose entire income depends on my personal registered vehicle, this failure was devastating. During all four breakdown periods — whether because no loaner was provided, or because loaners provided could not substitute for my registered vehicle in gig work — I suffered lost income exceeding $5,100.

## III. THE BATTERY PERFORMANCE MISREPRESENTATION

7. Nissan marketed the Vehicle with an advertised battery range of 216 miles. I relied on this representation when entering the Lease.

8. On January 26, 2025, with the Vehicle at 4,992 miles, I photographed the Vehicle's dashboard while it was stationary, with the battery charged to 100%, in 23°F outside temperature. The dashboard showed an estimated range of only 139 miles — 77 miles less than the advertised 216-mile range, a deficit of 35.6% — before a single mile had been driven. A true and accurate copy of this photograph is attached hereto as **Exhibit A.**

9. In real-world conditions in Colorado's climate, the Vehicle's battery range dropped by up to 76 miles in cold weather. At highway speeds above 55 miles per hour, the Vehicle lost up to 20% of its expected range. These material limitations were never disclosed to me at the time of leasing.

10. My subsequent experience with a 2024 Kia EV6 confirmed that these battery deficiencies were not inherent to electric vehicles generally but were specific to the defective Vehicle — the EV6 did not exhibit the same cold-weather range loss or highway speed degradation.

## IV. NISSAN NORTH AMERICA'S DIRECT INVOLVEMENT

11. Every material action taken by Nissan in this dispute was taken directly by Nissan North America, Inc. — not by NMAC or NILT acting independently. Specifically:

a. The Prior Settlement of $2,500 was entered into directly with Nissan North America, Inc.

b. The March 20, 2025 voluntary repurchase offer was issued on Nissan North America, Inc. Consumer Affairs letterhead, signed by Desiray Neely, Arbitration Specialist, Dispute Resolution Programs, Nissan North America, Inc., P.O. Box 685003, Franklin, TN 37068-5003. A true and accurate copy of this letter is attached hereto as **Exhibit B.**

c. The corrected repurchase offer was also issued by Nissan North America, Inc. Consumer Affairs. A true and accurate copy is attached hereto as **Exhibit C.**

d. Desiray Neely — acting in her capacity as Arbitration Specialist, Dispute Resolution Programs, Nissan North America, Inc. — was the individual who refused JAMS arbitration in writing and directed me to BBB AUTO LINE. Her April 23, 2025 email, copied to JAMS, is attached hereto as **Exhibit D.**

e. The New Vehicle Limited Warranty on the Vehicle was issued by Nissan North America, Inc.

f. The BBB AUTO LINE program is administered pursuant to Nissan North America, Inc.'s warranty program obligations under the Magnuson-Moss Warranty Act and 16 C.F.R. Part 703.

## V. THE PRIOR SETTLEMENT AND THE FOURTH BREAKDOWN

12. Following the third breakdown, I entered into a settlement agreement with Nissan North America, Inc. releasing claims through February 26, 2025, in exchange for $2,500. Prior to executing the settlement, a Nissan engineer personally inspected the Vehicle and represented that the defect had been remediated.

13. On March 1, 2025 — three days after the Prior Settlement's release window closed — the Vehicle suffered its fourth complete mechanical failure, remaining out of service from March 1 through March 20, 2025. This fourth breakdown occurred within days of the Nissan engineer's declaration of repair.

14. On March 20, 2025, Desiray Neely of Nissan North America, Inc.'s Dispute Resolution Programs issued a new voluntary repurchase offer — 22 days after the settlement release window closed — acknowledging the Vehicle's continued defective condition and confirming that new, post-settlement events required independent resolution. See **Exhibit B.**

## VI. NISSAN NORTH AMERICA'S SYSTEMATIC OBSTRUCTION OF DISPUTE RESOLUTION

15. Section 28 of the Lease contains a mandatory arbitration clause designating JAMS or the American Arbitration Association as the arbitration forums. A true and accurate copy of the Lease, with Section 28 identified, is attached hereto as **Exhibit E.**

16. On March 26, 2025, I filed a formal demand for arbitration with JAMS, Case ID No. 37461, captioned *Brooks, Jason v. Nissan North America, Inc.* A true and accurate copy of the JAMS Arbitration Agreement is attached hereto as **Exhibit F.**

17. JAMS Case Manager Brianne Strickland confirmed commencement of the proceeding, highlighted the JAMS provision in Section 28 of the Lease, and attempted to engage Nissan North America, Inc. Her emails dated April 7, 8, and 15, 2025 — confirming that Nissan had not responded at all — are attached hereto as **Exhibit G.**

18. On April 23, 2025, Desiray Neely, Arbitration Specialist, Dispute Resolution Programs, Nissan North America, Inc., sent an email — copied simultaneously to JAMS at arbitrationdocs@jamsdenver.com — stating: "NNA does not participate with JAMS. JAMS is only for if you have an actual concern with your lease. The BBB auto line is for if you believe there is a defect with your vehicle." See **Exhibit D.** This affirmative, written statement by Nissan North America's own Arbitration Specialist — transmitted simultaneously to me and to JAMS — is a direct admission that Nissan deliberately refused to participate in the arbitration forum its own contract designated.

19. Directed by Nissan North America to BBB AUTO LINE, I filed Case NIS2507014 on April 23, 2025. Within two days — April 25, 2025 — BBB closed the case. I received two contradictory communications regarding the closure:

a. An automated BBB notification stating the claim was "not eligible under the guidelines set forth in your manufacturer's program summary." A true and accurate copy is attached hereto as **Exhibit H.**

b. A formal closure letter from Christian Azize stating the claim was ineligible because it "was resolved by a previous settlement with the manufacturer." A true and accurate copy is attached hereto as **Exhibit I.** These two stated reasons are irreconcilable. The settlement-based closure was factually incorrect — the Prior Settlement released only claims through February 26, 2025, while my BBB claim arose from the fourth breakdown of March 1, 2025. Nissan North America's own March 20, 2025 repurchase offer confirms it knew the fourth breakdown was a new, unresolved event requiring separate resolution.

20. I immediately forwarded the contradictory BBB closure to Desiray Neely at Nissan North America on April 25, 2025, placing Nissan on direct written notice that the closure was based on false information. Nissan took no action to correct the record or reopen the forum it had directed me to use.

21. On May 1, 2025, I formally rescinded the Lease pursuant to UCC-206, citing four complete mechanical failures substantially impairing the Vehicle's value, and explicitly warned Nissan North America in writing that I would be filing a federal lawsuit in the U.S. District Court for the District of Colorado. A true and accurate copy of this rescission notice is attached hereto as **Exhibit J.**

22. A true and accurate copy of the Nissan BBB Program Summary — which expressly excludes claims for punitive damages, legal fees, lost wages, and mental anguish — is attached hereto as **Exhibit K.**

## VII. CREDIT DAMAGE AND CASCADING FINANCIAL HARM

23. Prior to Nissan's conduct, I maintained a credit profile reflecting 17 active accounts and two auto loans, with a perfect payment history across every single account. Not a single late payment on any account in my entire credit history. The Nissan lease account is the only negative mark on my entire credit profile.

24. Nissan North America, Inc. transmitted negative information to Experian on no fewer than four separate occasions — reporting delinquencies in July, August, and September 2025, and reporting a charge-off on March 31, 2026 as "Voluntary surrender / Balance charged to loss." I never voluntarily surrendered the Vehicle. I formally rescinded the Lease under UCC-206 on May 1, 2025. See **Exhibit J.** The charge-off is not the result of any financial default on my part — it is the direct result of Nissan's deliberate bad faith. Nissan's own repurchase offer documentation expressly warned me that failure to make payments would adversely affect my credit — Nissan had actual, documented knowledge that its conduct would damage my credit and proceeded regardless.

25. As a direct result of the fraudulent charge-off, Bank of America closed my credit card account ending in 8836 ($3,700 credit limit) in June 2025 — despite a perfect payment history.

26. Citi declined to reissue my credit card account ending in 2147 ($3,000 credit limit). Citi's written response bearing Reference Number 202603121701211336005 confirmed the decision was based on a credit scoring system that reviewed my credit report — the sole negative item on which is the Nissan charge-off. A true and accurate copy of the Citi written response is attached hereto as **Exhibit M.**

27. The fraudulent charge-off suppressed my VantageScore 3.0 by approximately 100 points — from a baseline consistent with a consumer carrying 17 accounts and a perfect payment history, to a current score of 593.

28. On April 6, 2026, I applied for housing at Residences at Nova West Phase 2 in Longmont, Colorado. My application was denied. The RentGrow screening report (Report ID: 80696099) cited a single reason: "Severe level of Charge-offs." The sole charge-off on my entire credit history is the Nissan account. I qualified on every other screening metric. A true and accurate copy of the RentGrow screening report is attached hereto as **Exhibit N.**

30. On April 29, 2026, I was required to pay a double security deposit of $3,800 at a second property due to my VantageScore falling below the 680 minimum threshold, which I could not afford. The sole cause was the Nissan charge-off. A true and accurate copy of the Fox Management email and the AppFolio screening report are attached hereto as **Exhibit P.**

## VIII. SURGERY AND ONGOING HARM

31. At the time of these housing-related harms and throughout the post-filing period, I was recovering from surgical repair of a torn distal bicep tendon, rendering

me physically unable to perform my gig work for approximately three months. As a gig worker whose entire income depends on my physical ability to operate a vehicle, this surgery compounded the financial devastation caused by Nissan's fraudulent credit reporting. The confluence of physical incapacity, housing insecurity, and credit destruction — all directly traceable to Nissan's deliberate bad faith over a $625 dispute — has caused severe, ongoing, and compounding harm to my financial stability, housing security, and emotional and physical wellbeing.

32. The stress caused by Nissan's conduct has directly worsened my long-standing autoimmune condition. I have experienced anxiety, shame, fear, and a profound sense of helplessness — knowing that a single fraudulently reported item on an otherwise perfect credit profile is blocking my access to housing, financing, and financial stability, and that the company responsible has defaulted in the federal court I properly invoked to seek relief.

## IX. DAMAGES DECLARATION

33. Based on the foregoing, I declare that the following damages are accurate and supported by the documentary evidence attached hereto:

**Economic Compensatory Damages:**

- Monthly lease payments on defective vehicle (5 × $418.66): $2,093.30
- Prior Settlement entirely consumed as replacement lease down payment: $2,500.00
- Lost gig income during all breakdown periods: $5,100.00+

• Excess Kia EV6 replacement lease costs (36 mo × $250.34)[1]: $9,012.24

• Loss of Bank of America credit access: $3,700.00

• Loss of Citi credit access (Exhibit M): $3,000.00

**Economic compensatory subtotal: $25,405.54**

**Non-Economic Compensatory Damages:**

• Emotional distress — housing denial, shame, fear, helplessness, surgery recovery, autoimmune condition worsening, threat of homelessness: $25,000.00

• Credit profile damage and future credit accessibility impairment: $10,000.00

**Non-economic subtotal: $35,000.00**

**Total Compensatory Damages: $60,405.54**

**CCPA Treble Damages (3×): $181,216.62**

**Punitive Damages: $250,000.00**

**Total Monetary Damages: $491,622.16**

**Pro Se Litigation Fees — 97 Hours at $150/Hour:**

| Task Description | Hours | Rate | Amount |
|---|---|---|---|
| Legal research — federal warranty law, Magnuson-Moss, CCPA, bad faith, and arbitration waiver doctrine | 15 | $150 | $2,250 |
| Legal research — FCRA, Colorado tenant screening law, credit reporting, and consumer protection statutes | 10 | $150 | $1,500 |
| Drafting, revising, and finalizing Verified Complaint — seven counts, factual allegations, and prayer for relief | 25 | $150 | $3,750 |

[1] My 2024 Kia EV6GT lease payments are $670.31, a $250.34 difference in monthly lease price vs. the Nissan Ariya. See **Exhibit L**. Plaintiff had no choice but to lease the car as a replacement, as he had to get one immediately before the negative reporting ended up on his credit profile.

| | | | |
|---|---|---|---|
| CM/ECF filings — IFP application, complaint, civil cover sheet, summons, and service coordination with U.S. Marshal | 5 | $150 | $750 |
| Drafting and filing Motion for Entry of Default — legal research, factual recitation, case law citations, and certificate of service | 4 | $150 | $600 |
| Drafting Motion for Default Judgment — seven-count analysis, damages section, injunctive relief request, and case law | 15 | $150 | $2,250 |
| Drafting Plaintiff's Affidavit in Support of Motion for Default Judgment — personal narrative, damages declaration, and exhibit authentication | 8 | $150 | $1,200 |
| Reviewing, organizing, and preparing all documentary evidence — 17 authenticated exhibits with cover pages | 8 | $150 | $1,200 |
| Preparing Notice of Post-Filing Events — housing denial, double deposit, surgery, and ongoing harm documentation | 4 | $150 | $600 |
| Preparing Proposed Order for default judgment and injunctive relief | 3 | $150 | $450 |
| **TOTAL** | 97 | | |

Total Hours: 97
Hourly Rate: $150.00
**Total Pro Se Litigation Fees Requested: $14,550**
**Grand Total Damages with fees: $506,172.16**

## X. LIST OF EXHIBITS

| Exhibit | Description |
|---|---|
| **A** | Dashboard photograph — January 26, 2025 — 100% charge, 139 miles, 23°F |
| **B** | Nissan North America repurchase offer — March 20, 2025 — Desiray Neely |
| **C** | Nissan North America corrected repurchase offer |
| **D** | Desiray Neely email — April 23, 2025 — "NNA does not participate with JAMS" |
| **E** | Lease Agreement — Section 28 JAMS arbitration clause |
| **F** | JAMS Arbitration Agreement — Case ID 37461 |
| **G** | JAMS emails — Brianne Strickland — April 7, 8, and 15, 2025 |
| **H** | BBB automated notification — "not eligible under program summary guidelines" |

| | |
|---|---|
| **I** | BBB formal closure letter — April 25, 2025 — Christian Azize |
| **J** | Plaintiff's UCC rescission notice — May 1, 2025 |
| **K** | Nissan BBB Program Summary |
| **L** | Copy of Lease Payments difference |
| **M** | Citi written response — Reference No. 2026031217012113336005 |
| **N** | RentGrow screening report — Report ID 80696099 — April 6, 2026 |
| **O** | Settlement and Release Agreement |
| **P** | Fox Management email and AppFolio screening report — April 29, 2026 |
| **Q** | Service Records |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 5th, 2026, in Longmont, Colorado.

s/Jason T. Brooks______________

Jason T. Brooks
636 Barberry Drive
Longmont, CO 80503
(925) 366-0803
geniusjasonbrooks@gmail.com
*Pro Se Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May 2026, a true and accurate copy of the foregoing **PLAINTIFF'S AFFIDAVIT IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT** was filed with the Clerk of the United States District Court for the District of Colorado via the Court's CM/ECF system. Because Defendant Nissan North America, Inc. has not entered an appearance in this action and has not registered with CM/ECF, no service on Defendant is required at this time pursuant to Fed. R. Civ. P. 5(a)(2).

s/ Jason Brooks_________________
***Jason Brooks***
636 Barberry Drive
Longmont, CO 80503
Telephone: (925) 366-0803
E-mail: geniusjasonbrooks@gmail.com
Plaintiff, *pro se*