**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-01385-SKC-STV

JASON T. BROOKS,

Plaintiff,

v.

NISSAN NORTH AMERICA, INC.

Defendant.

---

**MOTION TO SET ASIDE DEFAULT PURSUANT TO F.R.C.P. 55(c)**

---

Defendant Nissan North America, Inc. ("Nissan"), by and through undersigned counsel, O'Hagan Meyer, PLLC, respectfully moves the Court to set aside the Clerk's Entry of Default entered on May 5, 2026 and to permit it to file an Answer to Plaintiff's Complaint, and in support, submits the following Motion to Set Aside Default Pursuant to F.R.C.P. 55(c) ("Motion"):

## CONFERRAL

Counsel for Nissan conferred with Plaintiff on this Motion by telephone and email. Plaintiff opposes this Motion in full. Plaintiff contends that Nissan's stated reasons for setting aside the entry of default do not satisfy the good cause standard under F.R.C.P. 55(c). Specifically, Plaintiff contends that the breakdown in communication between Nissan and its registered agent, Corporation Service Company, does not establish good cause, that Nissan's pre-lawsuit conduct pattern

establishes willfulness, that Plaintiff will be prejudiced by ongoing, daily harm, and that Nissan has no meritorious defense to Plaintiff's claims.

## I. INTRODUCTION

The entry of default against Nissan in this action should be set aside under Rule 55(c) of the Federal Rules of Civil Procedure. The Clerk of Court entered default against Nissan on May 5, 2026 [ECF 14] (the "Default"), just days after the responsive pleading deadline expired on May 1, 2026. That very same day, Plaintiff filed a Motion for Default Judgment seeking $506,172.16 in total monetary damages plus injunctive relief requiring deletion of negative credit reporting [ECF No. 16].

This case presents compelling circumstances for setting aside the Default and permitting Nissan to defend on the merits. First, Nissan's failure to timely respond to Plaintiff's Complaint was not the product of any culpable conduct; instead, Nissan failed to respond solely because of a communication breakdown between Nissan's designated registered agent, Corporation Service Company, and Nissan's legal department. Default was entered at the earliest possible stage of litigation, mere days after the response deadline expired, and Nissan thereafter responded to the Default as quickly as possible. Second, Plaintiff will not be prejudiced by setting aside the Default. No discovery has been conducted, no trial date has been set, and no trial preparation has occurred. Plaintiff has not relied on the Default or changed position in reliance on it. Third, Nissan has multiple substantial and meritorious defenses to Plaintiff's claims, including defenses based on the arbitration clause contained in the lease agreement, Nissan's warranty service and repurchase offers, industry-standard

battery range specifications, and the express contract governing the parties' relationship. These defenses present triable issues of fact and law that cannot be resolved by entry of default and that warrant adjudication on the merits. Additionally, the Default should be set aside because Plaintiff's demand for $250,000 in punitive damages is facially disproportionate to any alleged harm and is nothing more than an effort to inflate potential exposure and exert undue pressure, a litigation tactic the Court should not condone.

Based on the foregoing, and as set forth more fully below, Nissan respectfully requests that this Court set aside the Default and permit Nissan to file its Answer and defend this action on the merits.

## II. STATEMENT OF FACTS

### A. The Underlying Dispute and Nissan's Active Engagement in Resolution

Plaintiff Jason T. Brooks leased a 2024 Nissan Ariya (the "Vehicle") from Valley Nissan, LLC on October 31, 2024 (the "Lease"). The lease was assigned to and serviced by Nissan Motor Acceptance Company LLC. Plaintiff's monthly lease payment was $418.66.

Beginning in December 2024, Plaintiff reported alleged mechanical failures with the Vehicle. Rather than ignoring these complaints, Nissan actively engaged in dispute resolution efforts spanning approximately five months. Between December 2024 and February 2025, Nissan and Plaintiff negotiated a settlement agreement. In fact, prior to executing this settlement, a Nissan engineer personally inspected the

Vehicle and represented that the Vehicle was operating properly. Nissan paid Plaintiff $2,500 in settlement of claims through February 26, 2025.

On March 1, 2025, the Vehicle allegedly suffered another mechanical failure. On March 20, 2025, Desiray Neely, Arbitration Specialist, Dispute Resolution Programs, Nissan North America, Inc., issued a voluntary repurchase offer acknowledging the Vehicle's continued defective condition.

Plaintiff filed a formal demand for arbitration with JAMS on March 26, 2025 (Case ID No. 37461). On April 23, 2025, Desiray Neely, acting in her capacity as Arbitration Specialist for Nissan North America, Inc., directed Plaintiff to BBB Auto Line, stating in writing: "NNA does not participate with JAMS. JAMS is only for if you have an actual concern with your lease. The BBB auto line is for if you believe there is a defect with your vehicle." Plaintiff filed a claim with BBB Auto Line (Case NIS2507014) on April 23, 2025, which BBB Auto Line closed within two days on April 25, 2025.

Nissan's pattern of active engagement—settlement negotiations, repurchase offers, and direction to alternative dispute resolution forums—demonstrates that Nissan was **not** deliberately avoiding the dispute or ignoring Plaintiff's claims. Instead, Nissan was actively attempting to resolve the matter through contractually designated dispute resolution mechanisms.

### B. The Communication Breakdown Between CSC and Nissan

Nissan is a large corporation with its principal place of business in Tennessee, not Colorado, and does not sell or service Vehicles like Plaintiff's. *See* Exhibit A,

Affidavit of of Kimberly Ross at ¶ 5. The Lease was serviced by Nissan Motor Acceptance Company LLC, and dispute resolution matters were handled by Nissan's Consumer Affairs department, specifically by Desiray Neely, Arbitration Specialist, Dispute Resolution Programs. The legal department at Nissan, which is responsible for monitoring litigation and ensuring timely responses to legal process, was not immediately aware of the underlying dispute or the need to monitor for potential litigation. See *id*. at ¶ 20.

CSC, a professional registered agent service, is responsible for receiving legal process on behalf of Nissan and communicating that process to Nissan's legal department in a timely manner. See *id*. at ¶ 8. Although service was electronically received through CSC and marked as "acknowledged" in the system, the acknowledgment appears to have been made inadvertently and the matter was never properly escalated or assigned to the appropriate legal personnel. See *id*. at ¶¶ 17-18. The file effectively remained unassigned due to this internal miscommunication and systems-level breakdown. *Id*. at ¶ 19. Accordingly, Nissan's legal department did not learn of the service until after the response deadline had expired. *Id*. at ¶ 20.

### C. Nissan's Prompt Response Upon Learning of the Default

Upon learning of the Default, Nissan promptly took steps to address the situation. Nissan immediately retained counsel and began preparing this motion to set aside the Default. The haste of Nissan's response upon learning of the Default demonstrates diligence and a commitment to defending this action on the merits.

### D. Early Stage of Litigation and Absence of Prejudice

As of the date of this Motion, the litigation is at an extremely early stage: no discovery has been conducted, no trial date has been set, and no trial preparation has occurred. Additionally, no party has relied on the Default or changed its position in reliance on it, and the statute of limitations for Plaintiff's claims has not expired. Plaintiff will suffer no prejudice from setting aside the Default. In fact, setting aside the Default will allow the case to proceed to trial, where Plaintiff will have the opportunity to present evidence and arguments in support of his claims on the merits.

## III. LEGAL ARGUMENT

### A. Nissan can Show Good Cause to Set Aside Default

Critically, "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Whether to set aside entry of default is within the sound discretion of the court. *Ashby v. McKenna*, 331 F.3d 1148, 1152 (10th Cir. 2003). "[T]he good cause standard required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)." *Kahler v. Wal-Mart Stores, Inc.*, No. 20-cv-01536-WJM-KMT, 2020 U.S. Dist. LEXIS 2334163, at *6 (D. Colo. Dec. 14, 2020) (citation and quotations omitted).

The non-exhaustive factors the Court should consider are: (1) whether the default was the result of culpable conduct of the defendant; (2) whether the plaintiff would be prejudiced if the default should be set aside; and (3) whether the defendant

presents a meritorious defense. This determination is liberal and is guided by the strong preference that courts dispose of cases on their merits, and not by default. *See, e.g., Zen & Art of Clients Server Computing, Inc. v. Res. Support Assocs.*, Civil Action No. 06-cv-00239-REB-MEH, 2006 U.S. Dist. LEXIS 101239, at *4 (D. Colo. June 15, 2006) (citing *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) ("[T]he preferred disposition of any case is upon its merits and not by default judgment.")).

### 1. Default was Not the Result of Nissan's Culpable Conduct

"Generally a party's conduct will be considered culpable only if the party defaulted willfully or has no excuse for the default." *United States v. Timbers Pres., Routt Cnty., Colo.*, 999 F.2d 452, 454 (10th Cir. 1993) (citation omitted) *abrogated on other grounds by Degen v. United States*, 517 U.S. 820, 825 (1996). Conversely, an unintentional or good faith mistake is not considered culpable conduct for the purposes of Rule 55(c). *See id.*; *see also United States v. Signed Pers. Check No. 703 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010) (describing "culpable conduct" as "intentionally" failing to answer, or acting in bad faith in order to take advantage of the opposing party, to interfere with judicial decision-making, or otherwise trying to manipulate the legal process). Further, a party's prompt motion to set aside an entry of default serves to mitigate any culpable conduct that may exist. *See Zen*, 2006 U.S. Dist. LEXIS 101239, at *5-6 (citing *Savin Corp. v. C.M.C. Corp.*, 98 F.R.D. 509, 511 (N.D. Ohio 1983) (finding that a mistaken delay in response was not willful because the defendant "expeditiously moved to remedy his mistake"); *see also Fed. Fruit & Produce Co. v. Liborio Mkts. #9, Inc.*, Civil Action No. 12-cv-1145-WJM-BNB,

2013 U.S. Dist. LEXIS 129785, at *6 (D. Colo. Sep. 11, 2013) (Despite a "weak justification" and a two-month delay, failure to respond was still not attributable to culpable conduct as defined by Tenth Circuit case law).

Here, Nissan's failure to timely respond was the product of negligence and oversight in the routing and processing of service materials—specifically, a breakdown between its registered agent's receipt of service and internal escalation to the appropriate legal personnel—rather than any intent to ignore the litigation or manipulate the process. The timing further underscores the absence of culpability: Default was entered immediately following the response deadline, reflecting at most a brief and technical lapse, not a conscious decision to abstain from participation.

Nissan likewise lacked any rational strategic incentive to default in a case involving significant monetary exposure and injunctive relief, which further negates any inference of willfulness or tactical delay. Nissan's pre-suit conduct also demonstrates active engagement with the dispute, including participation in settlement discussions, repurchase-related communications, and other dispute-resolution efforts. This course of conduct is incompatible with any suggestion that Nissan deliberately chose to ignore the litigation once filed, and instead confirms that its failure to respond was inadvertent rather than culpable.

**2. Setting Aside Default will not Prejudice Plaintiff**

Prejudice is established when a plaintiff's ability to pursue his claims has been hindered by, for example, a loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment. *Nationwide Mut. Ins. Co. v.*

*Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523-24 (3d Cir. 2006). However, "'[t]here is no prejudice to the plaintiff where the setting aside of the default has done no harm to the plaintiff except to require [him] to prove [his] case.'" *Securitynational Mortg. Co. v. Head*, Civil Action No. 13-cv-03020-PAB-BNB, 2014 U.S. Dist. LEXIS 129351, at *9 (D. Colo. Sep. 15, 2014) (quoting *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000)).

Plaintiff cannot demonstrate the type of prejudice required to justify maintaining the Default; at most, he faces the ordinary burden of proving his claims on the merits. This case remains at an early stage: no meaningful discovery has occurred, and the Court has issued no merits-based rulings that would be disturbed by permitting Nissan to appear and defend. Any incremental delay associated with litigating the case does not constitute prejudice because the Default arose from a brief administrative lapse rather than any willful disregard. There is no credible suggestion that setting aside the Default will result in the loss of relevant evidence, increase difficulty in obtaining discovery, or any risk of fraud or collusion. Nor has Plaintiff shown any detrimental reliance on the Default or that his ability to prosecute the case has been materially impaired in any way. Plaintiff's allegations of ongoing financial- or credit-related harm go to the substance of the underlying dispute, not to any litigation prejudice caused by vacating the default. Absent a concrete showing of harm to the integrity or fairness of the proceedings, no prejudice exists that would justify preserving the Default.

**3. Nissan has Meritorious Defenses**

As to the third "good cause" factor, "the court examines the allegations contained in the moving papers to determine whether the movant's version of the factual circumstances surrounding the dispute, if true, would constitute a defense in the action." *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978). A defendant must provide "a sufficient elaboration of facts to permit the trial court to judge whether the defense, if movant's version were to be believed, would be a meritorious defense." *Id*. A defendant is not required to "demonstrate a likelihood of success on the merits." *Coon v. Grenier*, 867 F.2d 73, 77 (1st Cir. 1989). Nissan meets that standard because it has multiple defenses that could materially alter the outcome of this case if litigated.

First, the Lease includes dispute resolution terms that may require some or all claims to be resolved in arbitration rather than in court, and any waiver or enforceability issues are fact-intensive and unsuitable for resolution by default. Second, Nissan disputes that Plaintiff can establish the elements necessary to impose liability based on alleged defects, including whether Nissan was afforded a reasonable opportunity to diagnose and repair, whether any alleged nonconformity persisted, and whether Plaintiff's claimed damages were caused by any actionable breach. Third, Nissan disputes breach, disputes the measure and recoverability of the damages sought, and contends that Plaintiff's claimed consequential losses are not recoverable as pleaded or are otherwise limited by the governing contractual framework and causation principles. Fourth, where, as here, an express contract governs the parties' relationship and the subject matter of the dispute, quasi-contract

theories such as unjust enrichment are generally unavailable. Fifth, Nissan disputes that Plaintiff can convert a contractual vehicle performance dispute into tort liability for purely economic losses, and further disputes that the alleged conduct meets the demanding threshold for any claim requiring extreme or outrageous conduct. These defenses are substantial and demonstrate that the case should proceed through the ordinary adversarial process rather than be resolved by default.

Because Nissan's default was not culpable, Plaintiff will not suffer prejudice, and Nissan has articulated meritorious defenses, good cause exists to set aside the Default. Setting aside the Default also aligns with the Court's strong preference for resolving cases on their merits, particularly where the default occurred at the outset of the case and Nissan seeks to promptly appear and litigate.

### B. Plaintiff's Disproportionate Request for $250,000 in Punitive Damages is a Trolling Tactic that the Court Should Not Allow

The Due Process Clause of the United States Constitution places substantive limits on the severity of punitive sanctions the government may impose and prohibits awards that are grossly excessive in relation to the government's legitimate interests in punishment and deterrence. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416-18 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996). The Supreme Court in *State Farm* identified "guideposts" governing punitive damages, including: "the degree of reprehensibility of the defendant's misconduct," and "the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award." *State Farm,* 538 U.S. at 418; *see BMW*, 517 U.S. at 575.

When these guideposts are analyzed in this case, there can be no doubt that the demanded punitive damage award is excessive.

### 1. Nissan's conduct is devoid of reprehensibility.

Of the constitutional guideposts governing punitive damages, the degree of reprehensibility of the defendant's conduct is the most important. *See Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1065 (10th Cir. 2016). In evaluating reprehensibility, courts consider whether: "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419. Each of these considerations confirms that Nissan's conduct falls at the lowest end of the reprehensibility spectrum.

First, the harm alleged here is purely economic, not physical. Plaintiff does not claim any threat to health or safety, personal injury, or risk of bodily harm. Economic injuries are less indicative of reprehensible conduct than physical harm, particularly where no safety concerns are implicated. This factor strongly weighs against any meaningful finding of reprehensibility.

Second, there is no evidence that Nissan acted with indifference to, or reckless disregard for, the health or safety of others. The dispute arises from commercial and consumer issues, not conduct that endangered the public or exposed others to risk.

The absence of any safety-related component further confirms that Nissan's actions do not approach the type of conduct that punitive damages are intended to deter.

Third, there is no showing that Plaintiff was uniquely financially vulnerable or that Nissan exploited any such vulnerability. The parties' relationship reflects an ordinary consumer transaction, and nothing suggests predatory targeting or opportunistic conduct directed at a particularly susceptible individual.

Fourth, the conduct at issue reflects, at most, an isolated incident, not a pattern of repeated wrongdoing. The Default itself resulted from a discrete administrative breakdown, and the underlying dispute reflects a single consumer matter. There is no evidence of systemic or repeated misconduct.

Finally, there is no indication that the alleged harm resulted from intentional malice, trickery, or deceit. Nissan's actions were, at most, the product of inadvertence, oversight, or routine dispute-resolution conduct, not bad faith. Nissan engaged with Plaintiff prior to litigation through settlement discussions, repurchase communications, and other resolution efforts, which is fundamentally inconsistent with any inference of deceit or intentional wrongdoing. Likewise, the failure to timely respond to the complaint stemmed from an internal administrative lapse, not a deliberate attempt to evade the judicial process. At most, Nissan's conduct was the product of negligence, which sits at the lowest end of the culpability spectrum contemplated by *State Farm*.

### 2. Plaintiff's punitive damages demand is disproportionate and untethered to plausible facts.

Plaintiff seeks $250,000 in punitive damages, an amount that dwarfs his alleged compensatory damages of approximately $60,405.54. This demand is facially disproportionate and unsupported by the underlying allegations. Plaintiff's claims arise from a consumer vehicle dispute involving a net monetary disagreement of only a few hundred dollars, which Plaintiff himself characterizes as approximately a $625 dispute. Courts routinely scrutinize punitive damages requests to ensure they are not speculative, exaggerated, or used to manufacture leverage. Here, the requested punitive damages exceed four times (4x) the alleged compensatory damages, which Plaintiff asserts is constitutionally permissible, but constitutional limits do not excuse the absence of factual allegations justifying such an award.

Plaintiff's demanded punitive damages are a strategic attempt to inflate perceived risk exposure rather than a good-faith valuation of damages. Plaintiff is not a typical pro se litigant. By his own admission, he has engaged in extensive prior federal litigation, including a case against the Colorado Department of Corrections that resulted in a multimillion-dollar jury verdict. This background is critical. Plaintiff is fully aware of litigation dynamics, including the leverage created by default and inflated damages demands.

Equally significant is Plaintiff's prior conduct toward this Court. In public reporting concerning prior litigation presided over by Judge S. Kato Crews, Plaintiff stated: "I think Judge Crews made an intellectually dishonest adjudication of this

issue and I have lost all respect for his decision making." Michael Karlik, *Federal judge agrees state's 'intercept' of man's $3.5 million jury award was proper*, Colorado Politics (May 7, 2025), https://www.coloradopolitics.com/2025/05/07/federal-judge-agrees-states-intercept-of-mans-3-5-million-jury-award-was-proper-1baf8955-2770-4f36-a992-98f9f7e165d6/. When viewed in conjunction with the present punitive damages demand, this history raises a serious concern that Plaintiff is using this litigation not merely to resolve a commercial dispute, but to extract a windfall judgment through default. A default judgment is not intended to serve as a windfall, particularly where the claimed damages are, as here, unliquidated, highly contested, and dependent on subjective characterizations of intent.

## IV. CONCLUSION

For the reasons set forth above, Nissan respectfully moves the Court to set aside the Default and to allow Nissan to answer the Complaint so that the case can proceed on the merits.

Respectfully submitted this 22nd day of June, 2026.


By: *\/s/ Russell Kalvelage*______________
Russell S. Kalvelage
O'HAGAN MEYER PLLC
1331 17th St., Suite 350
Denver, CO 80202
Telephone: (303) 652-5871
rkalvelage@ohaganmeyer.com
***Attorneys for Nissan North America, Inc.***


**Generative AI Certification**: In accordance with Section C.2. of Judge Crews's Standing Order for Civil Cases, the attorney that drafted this motion certifies that any language drafted by AI was personally reviewed by the filer or another human for accuracy, and all legal citations are to actual, non-fictitious cases or cited authority.

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of June, 2026, a true and correct copy of this **MOTION TO SET ASIDE DEFAULT PURSUANT TO F.R.C.P. 55(c)** was filed via the Court's CM/ECF system and served via E-Mail to the following:

***Jason Brooks***
636 Barberry Drive
Longmont, CO 80503
Telephone: (925) 366-0803
E-mail: geniusjasonbrooks@gmail.com
Plaintiff, *pro se*

*/s/ Russell Kalvelage*