**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-01385-SKC-STV

JASON BROOKS

Plaintiff(s),

v.

NISSAN NORTH AMERICA, INC,

Defendants.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE DEFAULT PURSUANT TO FED. R. CIV. P. 55(c)**

---

Plaintiff Jason Brooks, appearing *pro se*, respectfully submits this Opposition to Defendant Nissan North America, Inc.'s Motion to Set Aside Default [ECF 19] pursuant to Fed. R. Civ. P. 55(c), and in support thereof states as follows:

## INTRODUCTION

Nissan North America, Inc. defaulted in this Court. It was properly served on April 10, 2026, through its designated registered agent, Corporation Service Company, at 2908 Poston Avenue, Nashville, Tennessee 37203. See ECF 13. The Marshal's return is signed under penalty of perjury. The response deadline expired May 1, 2026. The Clerk entered default May 5, 2026. See ECF 14. Nissan did not appear for 68 days after service. Plaintiff's Motion for Default Judgment [ECF15], supported by a sworn Affidavit [ECF 15-1] and eighteen exhibits, is fully briefed and

pending before this Court. Setting aside the default does not merely delay adjudication — it unwinds a fully submitted motion, rewarding 68 days of silence with a procedural reset Nissan has not earned.

Nissan's explanation — that "someone" inadvertently clicked "acknowledged" in an electronic docketing system — is unsupported, internally contradicted by Nissan's own affidavit, and legally insufficient under controlling Tenth Circuit authority. It is also the fourth time Nissan has deployed the same avoidance playbook: ignoring a formally commenced JAMS arbitration (Case ID No. 37461); allowing BBB AUTO LINE to close Plaintiff's claim on false grounds; ignoring Plaintiff's formal UCC § 2A-517 revocation notice; and now ignoring federal process for 68 days.

Plaintiff provides notice that if this Court grants Nissan's motion, Plaintiff will file a First Amended Complaint under Fed. R. Civ. P. 15(a) incorporating all post-filing events and seeking damages in excess of $4,000,000. Every dollar beyond the original $506,172.16 demand was caused by Nissan's continued fraudulent credit reporting while it defaulted in this Court and continuing outrageous conduct.

The Court should further note that Nissan's counsel — appearing for the first time, licensed and professionally obligated to know better — devoted two pages of their first filing not to the merits, but to a character attack on the *pro se* plaintiff Nissan has spent fourteen months financially destroying. That conduct violates this Court's Standing Order, which requires counsel to treat parties "with courtesy and respect" and states the Court "expects nothing less." Standing Order § A.2 (Jan. 1,

2026). It is addressed in Section III.D below. It is also telling — a party with a legitimate defense leads with it. Nissan led with a truncated public quote stripped of a published Tenth Circuit reversal, an active appeal, and a contemporaneous federal court filing in which Plaintiff congratulated Judge Crews on his appointment to this bench.

Plaintiff has litigated before this Court in *Brooks v. Colorado Department of Corrections*, Case No. 13-cv-02894-SKC — one of the longest-standing civil cases in this District — for over thirteen years, through two successful Tenth Circuit remands including the published opinion at 12 F.4th 1160, a $3.5 million jury verdict, and a third appeal now pending as Case No. 25-1256. Across thirteen years of filings, Plaintiff has never violated this Court's rules of decorum, never attacked opposing counsel personally, and has never been sanctioned or admonished for conduct before this Court. Nissan's counsel violated the Court's civility standard on page 14 of filing number one.

For the reasons set forth below, Nissan's motion should be denied on all three Rule 55(c) factors. The Court should proceed to adjudicate Plaintiff's pending Motion for Default Judgment.

## II. LEGAL STANDARD

Rule 55(c) of the Federal Rules of Civil Procedure provides that a court "may set aside an entry of default for good cause." The determination of good cause is committed to the sound discretion of the district court. See *Ashby v. McKenna*, 331 F.3d 1148, 1152 (10th Cir. 2003). The Tenth Circuit considers three non-exhaustive

factors in evaluating good cause: (1) whether the default was the result of culpable conduct by the defendant; (2) whether the plaintiff would be prejudiced if the default is set aside; and (3) whether the defendant has a meritorious defense. See *Hunt v. Ford Motor Co.*, 65 F.3d 178, 1995 WL 523646, at *3 (10th Cir. Aug. 29, 1995) (unpublished); *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997); *Cessna Finance Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983).

While Rule 55(c)'s good cause standard is less demanding than the excusable neglect standard required to set aside a final default judgment under Rule 60(b), it is not toothless. See *Kahler v. Wal-Mart Stores, Inc.*, No. 20-cv-01536-WJM-KMT, 2020 U.S. Dist. LEXIS 233416, at *6 (D. Colo. Dec. 14, 2020). The standard does not automatically favor the defaulting party simply because courts prefer merits adjudication. That preference yields where, as here, the default resulted from culpable conduct, the plaintiff faces ongoing and compounding daily harm, and the asserted defenses do not withstand scrutiny. See *Cessna Finance Corp.*, 715 F.2d at 1444.

The Tenth Circuit defines culpable conduct as defaulting "willfully or [with] no excuse for the default." *United States v. Timbers Pres., Routt Cnty., Colo.*, 999 F.2d 452, 454 (10th Cir. 1993), *abrogated on other grounds, recognized by Viking Ins. Co. of Wis. v. Baize,* 753 F. App'x 549, 553 (10th Cir. 2018). This is a disjunctive standard — willfulness alone establishes culpability, but so does the complete absence of a credible excuse. Nissan argues it was not willful. But Nissan cannot satisfy either

prong. Its conduct was willful — as demonstrated by its forum pattern of deliberate disengagement — and it has no credible excuse, as demonstrated by the internal contradictions in its own affidavit.

Nissan relies on *United States v. Signed Personal Check No. 703 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010), for the proposition that culpable conduct requires intentional bad faith. See ECF No. 19 at 7. That is a Ninth Circuit case. It is not the law of this circuit. The Tenth Circuit does not require a showing of intentional manipulation of the legal process to find culpable conduct — it requires only that the defendant defaulted willfully or has no excuse. See *Timbers Pres.*, 999 F.2d at 454. Nissan's "accidental click" story fails both prongs.

Nissan further relies heavily on *Fed. Fruit & Produce Co. v. Liborio Mkts. #9, Inc.*, No. 12-cv-1145-WJM-BNB, 2013 U.S. Dist. LEXIS 129785, at *6 (D. Colo. Sep. 11, 2013), for the proposition that even a "weak justification" and two-month delay may not constitute culpable conduct. See ECF No. 19 at 7–8. That case is inapposite. The defendant in *Fed. Fruit* presented no pre-litigation pattern of deliberate forum avoidance. Nissan presents a four-forum pattern of deliberate non-engagement — JAMS, BBB AUTO LINE, Plaintiff's UCC revocation notice, and now this Court — spanning fourteen months. A defendant with a single administrative lapse and no prior avoidance history is categorically different from a defendant whose default is the fourth iteration of the same playbook. See *Timbers Pres.*, 999 F.2d at 454. Nissan bears the burden of demonstrating good cause on all three factors. It cannot meet that burden here.

## III. ARGUMENT

### A. Factor One — Nissan's Default Was the Product of Culpable Conduct

#### 1. The "Accidental Click" Story Is Legally Insufficient and Internally Contradicted by Nissan's Own Affidavit

Nissan's entire culpability defense rests on the affidavit of Kimberly Ross, Senior Paralegal, who states that "someone outside of the regular legal team viewed the service documents in the electronic system, and the documents were marked as 'acknowledged' inadvertently." *See* ECF No. 19-1 ¶ 17. This account fails on its face for three independent reasons.

*First*, Ross's own affidavit admits that CSC electronically received service and it was "marked as acknowledged in the system on or about April 10, 2026." *See* ECF No. 19-1 ¶ 12. The system worked exactly as designed — it received legal process and registered acknowledgment. What Nissan characterizes as a "breakdown" is Nissan's own internal routing failure after its agent successfully received and acknowledged service. A defendant cannot escape culpability by pointing to its own internal disorganization after actual notice has been received and confirmed. *See Cessna*, 715 F.2d at 1444 (principal bears the risk of its agent's conduct).

*Second*, the Ross affidavit identifies no specific individual, no specific date, no specific system error, and no investigation results — only that "someone" inadvertently clicked a button. *See* ECF No. 19-1 ¶ 17. Courts in this district have consistently rejected vague, uncorroborated "oversight" explanations that lack specific facts identifying what went wrong, when, and why. *See Fed. Fruit*, 2013 U.S. Dist. LEXIS 129785, at *6. An affidavit that says "someone did something

inadvertently" — without identifying who, when, or how — is not competent evidence of excusable neglect, and it is the only evidence Nissan has offered.

*Third*, Nissan's own motion contradicts the "no culpable conduct" argument. Nissan argues it "lacked any rational strategic incentive to default." *See* ECF No. 19 at 8. But a corporation facing a complaint seeking in excess of $506,000 in monetary damages — with CCPA treble damages, FCRA willful violation claims, punitive damages, and injunctive credit deletion — that has systematically avoided every pre-litigation forum has every rational incentive to delay as long as possible. Nissan's pattern of conduct continued through the first filing of this litigation. The assertion that strategic incentive is absent is not credible given the record.

**2. Sixty-Eight Days of Silence Establishes Culpability**

Nissan was served April 10, 2026. Default was entered May 5, 2026. Nissan's legal department claims it did not learn of the default until June 17, 2026. *See* ECF No. 19-1 ¶ 20. That is 68 days of complete inaction following documented receipt and acknowledgment of legal process at a professional registered agent whose sole function is to receive and route exactly that process. The Tenth Circuit has found culpable conduct in defendants who failed to respond for far shorter periods with far more credible explanations. *See Timbers Pres.*, 999 F.2d at 454. This is not, as Nissan characterizes it, "a brief and technical lapse." *See* ECF No. 19 at 8. It is 68 days of silence — more than two months — by a multi-billion-dollar corporation served through a professional agent at a confirmed address.

Nissan attempts to minimize the gap by noting that default was entered "mere days" after the response deadline. *See* ECF No. 19 at 2. That framing is misleading. Default was entered 25 days after the response deadline — and Nissan's legal department did not learn of it for another 43 days after that. The total gap between service and Nissan's first responsive act is 68 days, spanning two calendar months. That duration, standing alone, supports a finding of culpability.

**3. Nissan's Pre-Litigation Pattern of Forum Avoidance Establishes That This Default Is Willful, Not Inadvertent**

The Court should not evaluate Nissan's default in isolation. *See Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 467–68 (10th Cir. 1988). It is the fourth iteration of the same pattern of deliberate disengagement, each instance of which is documented in the record:

*Forum One — JAMS Arbitration.* Plaintiff formally commenced JAMS arbitration pursuant to Section 28 of the Lease, which expressly designates JAMS or AAA as the required arbitration forum. JAMS assigned the proceeding Case ID No. 37461. *See* ECF No. 15-1, Ex. F. Nissan's own Arbitration Specialist, Desiray Neely, responded in writing: "NNA does not participate with JAMS." *See* ECF 15-1, Ex. D. Nissan then failed to pay the required arbitration fees, causing the proceeding to become financially inaccessible to Plaintiff — a gig worker whose income had been destroyed by four vehicle failures. Nissan abandoned the contractually designated forum entirely.

*Forum Two — BBB AUTO LINE.* Nissan directed Plaintiff to BBB AUTO LINE, in direct contradiction of the Lease's own arbitration clause. *See* ECF 15-1, Ex.

K. BBB AUTO LINE closed Plaintiff's claim (Case No. NIS2507014) within two days — on April 25, 2025 — on the false grounds that it had been resolved by the Prior Settlement, which by its own terms released only claims through February 26, 2025. The fourth breakdown occurred March 1, 2025 — three days after that release date. *See* ECF 15-1, Ex. I. Nissan received notice of the erroneous closure and took no corrective action.

*Forum Three — UCC § 2A-517 Revocation Notice.* On May 1, 2025, Plaintiff served Nissan in writing with a formal notice of revocation of acceptance pursuant to UCC § 2A-517 (C.R.S. § 4-2.5-517), explicitly warning Nissan that any negative credit reporting following receipt of the notice would constitute a willful violation of the Fair Credit Reporting Act and would be litigated accordingly. *See* ECF 15-1, Ex. J. Nissan did not respond. It then reported the account as "Voluntary surrender / Balance charged to loss" — four separate times — after receiving that written notice.

*Forum Four — This Court.* Plaintiff filed his Verified Complaint on April 1, 2026. Service was effected April 10, 2026. Nissan did not appear for 68 days.

Four forums. Four non-responses. The Tenth Circuit has held that culpable conduct includes defaulting "willfully or [with] no excuse for the default." *Timbers Pres.*, 999 F.2d at 454. Nissan's explanation of inadvertent system error is irreconcilable with a documented, fourteen-month pattern of avoiding every dispute resolution mechanism available. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022). Under *Cessna*, 715 F.2d at 1444, and *Timbers Pres.*, 999 F.2d at 454, the pattern alone establishes culpability sufficient to deny the motion.

**4. CSC's Failure Is Nissan's Failure — The Law Does Not Permit Principals to Escape Liability Through Agent Negligence**

Nissan argues that the fault lies with CSC's electronic system, not with Nissan itself. *See* ECF 19 at 4–5. This argument fails as a matter of law, as a matter of fact, and as a matter of common sense.

*As a matter of law*, a party that designates a registered agent for service of process assumes the risk of that agent's conduct. *See Cessna*, 715 F.2d at 1444. The Supreme Court has squarely held that "clients must be held accountable for the acts and omissions of their chosen agents" and that a party "cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396–97 (1993). CSC is a professional registered agent service — it exists for the sole purpose of receiving legal process and routing it to Nissan's legal department. That is its only function. Nissan voluntarily chose CSC, pays CSC to perform that function, and is bound by CSC's performance of it. A corporation cannot insulate itself from default by pointing to the internal failure of the professional agent it retained and paid to prevent exactly that outcome.

*As a matter of fact*, the characterization of what happened as a "CSC failure" is belied by Ross's own affidavit. Ross states that "multiple individuals at Nissan have access to CSC's electronic service system for various business purposes." *See* ECF 19-1 ¶ 16. The system was not inaccessible to Nissan. The service documents were not hidden. Someone at Nissan — with Nissan credentials, on Nissan's account — viewed the documents, clicked "acknowledged," and the matter remained unassigned. That

is not a CSC routing failure. That is a Nissan employee making a decision, or failing to make one, with actual access to the service documents. The culpability runs directly to Nissan.

*As a matter of common sense*, Nissan's argument proves too much. Under *Pioneer*, the relevant inquiry when assessing whether neglect is excusable includes: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its impact on judicial proceedings; (3) whether the reason for the delay was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *See Pioneer*, 507 U.S. at 395. Every factor weighs against Nissan. The prejudice to Plaintiff is daily, compounding, and documented — Nissan's fraudulent charge-off has suppressed Plaintiff's VantageScore approximately 100 points, caused the closure of two credit accounts, resulted in two housing denials including a RentGrow screening report citing "Severe level of Charge-offs" as the sole reason for denial, in causing Defendant current housing insecurity—which arose while Nissan sat silent in this Court. *See* ECF No. 15-1, Affidavit ¶¶ 20–24; Exs. M, N, P. The delay was 68 days. The reason for the delay — failure to maintain adequate internal protocols for a professional registered agent's electronic system that Nissan's own employees access — was entirely within Nissan's reasonable control. And good faith is irreconcilable with fourteen months of deliberate forum avoidance across four successive proceedings. If Nissan's "someone clicked wrongly" theory were sufficient to excuse a default, no corporate default would ever be upheld — every large

corporation would assert an internal electronic routing error. *See Cessna*, 715 F.2d at 1444; *Timbers Pres.*, 999 F.2d at 454.

### B. Factor Two — Plaintiff Will Suffer Real, Compounding, and Documented Daily Prejudice

#### 1. The Tenth Circuit Recognizes Ongoing Real-World Harm as Prejudice

Nissan's prejudice argument rests entirely on the proposition that prejudice means only litigation prejudice — loss of evidence, inability to prosecute, or detrimental reliance on the default. *See* ECF No. 19 at 8–9. Two problems with that framing. *First*, Nissan cites Third Circuit law for this proposition — it is not controlling here. The Tenth Circuit does not limit prejudice to litigation posture. *See Ashby*, 331 F.3d at 1152. *Second*, even accepting Nissan's framework, the harm Plaintiff has suffered is not "ordinary" — it is documented, ongoing, compounding, and directly caused by the fraudulent charge-off Nissan continues to report while this litigation has been pending. Litigation that should never have been necessary — had Nissan simply honored its own contractual obligation to participate in the JAMS arbitration it designated in Section 28 of the Lease, this dispute would have been resolved fourteen months ago.

#### 2. Every Category of Post-Filing Harm Is Documented, Not Speculative

Nissan argues prejudice means only litigation prejudice — loss of evidence or inability to prosecute. *See* ECF No. 19 at 8–9. That framing relies on Third Circuit authority and is not controlling here. The Tenth Circuit does not limit prejudice to litigation posture. *See Ashby*, 331 F.3d at 1152. The prejudice Plaintiff has suffered is daily, compounding, and documented by exhibits already before this Court:

Nissan's fraudulent charge-off has suppressed Plaintiff's VantageScore approximately 100 points, closed two credit accounts, caused two housing denials — including a RentGrow screening report (Report ID 80696099) citing "Severe level of Charge-offs" as the sole reason for denial — and forced a double security deposit of $3,800 Plaintiff could not afford,. *See* ECF No. 15-1, Affidavit ¶¶ 20–24; Exs. M, N, P. Every one of these harms arose during the 68 days Nissan sat silent. Several— the Citibank non-renewal, the housing denials—are already permanent and irreversible. No merits adjudication can undo them. They can only be compensated monetarily — and the longer Nissan delays, the larger that compensation must be.

Setting aside the default does not merely delay adjudication — it eliminates the injunctive relief already pending in ECF No. 15, which would order deletion of the fraudulent charge-off within five business days and stop the daily accrual of harm today. It also does not restore Nissan to the posture of the original Complaint. Plaintiff will file a First Amended Complaint under Fed. R. Civ. P. 15(a) incorporating all post-filing events and seeking damages in excess of $4,000,000 — every dollar of which was made possible by Nissan's own decision to ignore this Court for 68 days.

**C. Factor Three — Nissan's Asserted Defenses Are Not Meritorious**

To satisfy the meritorious defense factor, a defendant must do more than assert that defenses exist. It must "provide 'a sufficient elaboration of facts to permit the trial court to judge whether the defense, if movant's version were to be believed, would be a meritorious defense.'" *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978). Conclusory assertions without factual elaboration are insufficient. *See Cessna*, 715

F.2d at 1444–45. Nissan asserts five defenses. *See* ECF 19 at 10–11. None survives scrutiny under the Tenth Circuit's standard.

**1. Arbitration Clause — Waived as a Matter of Law**

Nissan's first asserted defense is that the Lease's arbitration clause "may require some or all claims to be resolved in arbitration." *See* ECF 19 at 10. This defense is foreclosed by the Supreme Court and the Tenth Circuit.

Under *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417–18 (2022), courts may not impose a prejudice requirement on arbitration waiver analysis — waiver is assessed by the totality of a party's litigation conduct. Under *Peterson*, 849 F.2d at 467–68, the Tenth Circuit considers the full course of conduct in assessing arbitration waiver. Applying those standards here, Nissan has waived any right to compel arbitration through four successive acts of deliberate disengagement:

*First*, Plaintiff formally commenced JAMS arbitration pursuant to Section 28 of the Lease — the very clause Nissan now invokes — and JAMS assigned the proceeding Case ID No. 37461. *See* ECF No. 15-1, Ex. F. Nissan's own Arbitration Specialist responded in writing that "NNA does not participate with JAMS." *See* ECF No. 15-1, Ex. D. Nissan then failed to pay the required arbitration fees, causing the proceeding to become financially inaccessible to Plaintiff.

*Second*, Nissan directed Plaintiff to BBB AUTO LINE in direct contradiction of the Lease's own arbitration clause, which designates JAMS or AAA — not BBB AUTO LINE. *See* ECF No. 15-1, Ex. K. BBB AUTO LINE's own program terms

expressly exclude the precise categories of damages Plaintiff suffered: punitive damages, lost wages, and mental anguish.

*Third*, Nissan failed to respond to Plaintiff's formal UCC § 2A-517 revocation notice. *See* ECF No. 15-1, Ex. J.

*Fourth*, Nissan defaulted in this Court — failing to respond for 68 days after service through its professional registered agent.

A party cannot refuse to participate in the contractually designated arbitration forum, abandon every alternative forum, default in federal litigation, and then invoke the arbitration clause as a meritorious defense. *See Morgan*, 596 U.S. at 417–18. Waiver is complete. Nissan's arbitration defense is legally unavailable.

**2. Reasonable Repair Opportunity — Foreclosed by Statute and by Nissan's Own Admissions**

Nissan claims it was not "afforded a reasonable opportunity to diagnose and repair" the Vehicle. *See* ECF No. 19 at 10. This defense fails on two independent grounds — one statutory, one factual.

*Statutory ground.* The Colorado Lemon Law, C.R.S. § 42-10-104, creates a rebuttable presumption that a reasonable number of repair attempts has been exceeded when a vehicle has been subject to repair four or more times for the same or substantially similar nonconformity, or has been out of service for 35 or more business days. The Vehicle experienced four complete mechanical failures totaling 51 days and 36 business days out of service — one business day beyond the statutory threshold. Both triggering conditions are met. *See* ECF No. 15-1, Affidavit ¶¶ 3–6.

Nissan's defense directly contradicts the Colorado Lemon Law's own statutory presumption.

*Factual ground.* Nissan's own conduct forecloses this defense. A Nissan engineer personally inspected the Vehicle and declared the repair complete before the fourth breakdown. *See* ECF No. 15-1, Affidavit ¶ 13; Ex. O. The Vehicle then failed completely for the fourth time — three days later. If Nissan's own engineer could not identify and remedy the defect after a dedicated inspection, the question of whether Nissan was afforded a "reasonable opportunity to repair" answers itself. Nissan further acknowledged the Vehicle's defective condition by offering to voluntarily repurchase it — twice — under the Colorado Lemon Law. *See* ECF No. 15-1, Exs. B, C. A manufacturer that voluntarily offers to repurchase a vehicle as defective cannot simultaneously argue it was not given a reasonable opportunity to repair it.

**3. Consequential Damages Causation — Documented in Writing by Third Parties**

Nissan disputes that Plaintiff can establish causation for his consequential damages. *See* ECF No. 19 at 10. This defense is not available on the record.

The RentGrow screening report (Report ID: 80696099) identifies one reason for the Nova West housing denial: "Severe level of Charge-offs." *See* ECF No. 15-1, Ex. N. That is the only charge-off on Plaintiff's entire credit history. Causation is not alleged — it is documented in writing by the third-party screening service that made the denial decision. Citibank's written response (Reference No. 20260312170121133 6005) identifies a credit scoring review as the basis for the non-renewal of Plaintiff's card. *See* ECF No. 15-1, Ex. M. The sole derogatory item on

Plaintiff's credit report is the Nissan charge-off. Causation is documented in writing by Citibank itself. Bank of America closed Plaintiff's credit card account despite a perfect payment history on that account. *See* ECF 15-1, Affidavit ¶ 23. The sole change to Plaintiff's credit profile was the Nissan charge-off.

This is not a case where causation is inferred or alleged. It is documented in writing by the creditors and landlords themselves, each of whom identified the same cause: the Nissan charge-off. Nissan's causation defense is not meritorious — it is contradicted by documentary evidence already in the record before this Court.

**4. Unjust Enrichment — Available as an Alternative Theory Under Colorado Law**

Nissan argues that unjust enrichment is unavailable where an express contract governs the parties' relationship. *See* ECF 19 at 10–11. This states a general rule but misapplies it to these facts.

Colorado courts recognize unjust enrichment as an independent theory available alongside breach of contract claims where a party has been enriched beyond the contract's contemplation. See *DCB Construction Co. v. Central City Development Co.*, 965 P.2d 115, 119–20 (Colo. 1998). The operative question is not whether a contract exists, but whether the enrichment falls outside what the contract contemplates. *See id.*

Here, Nissan's unjust enrichment does not arise from the contract itself — it arises from Nissan's retention of $15,600 in federal and state electric vehicle tax credits applied at the origination of the Lease on a vehicle Nissan has twice acknowledged was defective, combined with its structuring of a repurchase offer that

required Plaintiff to pay $1,043.94 to surrender that defective vehicle. *See* ECF 15-1, Exs. B, C. The Lease does not contemplate — and cannot contemplate — that Nissan would retain public tax credits on a vehicle it acknowledges is defective while simultaneously requiring the consumer to pay to return it. That enrichment is beyond the contract's scope and is independently cognizable under Colorado law. *See DCB Construction*, 965 P.2d at 119–20.

Additionally, Plaintiff's UCC § 2A-517 revocation of acceptance on May 1, 2025, legally terminated the Lease and restored the parties to their pre-contract positions. *See* C.R.S. § 4-2.5-517. Where a lease has been validly revoked under Article 2A, the express contract framework no longer governs — Nissan's obligation to return Plaintiff's payments arises from the statute, not the contract, and Nissan's retention of those payments while simultaneously reporting a balance owed constitutes independent unjust enrichment. *See* C.R.S. § 4-2.5-508.

Nissan may argue that the original revocation letter cited "UCC-206" — a nonexistent statutory section — rather than the correct provision, UCC § 2A-517 (C.R.S. § 4-2.5-517). That argument fails on three independent grounds. *First*, revocation of acceptance is effective upon notice to the lessor — not upon citation of a specific code section. *See* C.R.S. § 4-2.5-517(4). Under Colorado law, "there is no 'formal notice of revocation' requirement" and the notice "should fairly apprise the seller that the buyer wants to give back the goods and receive a substitute or money in return." *Jackson v. Rocky Mtn. Datsun, Inc.*, 693 P.2d 391 (Colo. App. 1984). *Second*, pro se documents are liberally construed. *See Haines v. Kerner*, 404 U.S. 519,

520–21 (1972). *Third*, Nissan received the notice on May 1, 2025, never responded, never objected to the citation, never argued the revocation was defective, and does not contest its validity anywhere in ECF No. 19. Nissan has waived any technical objection to the revocation notice through fourteen months of silence.

**5. IIED — Presents a Jury Question, Not a Question of Law**

Nissan argues Plaintiff cannot convert a commercial vehicle dispute into tort liability and that the alleged conduct does not meet the demanding threshold for IIED. *See* ECF No. 19 at 11. Both arguments fail.

*On the tort conversion argument:* Plaintiff does not seek to convert a commercial dispute into tort liability. The IIED claim arises from conduct that goes far beyond any commercial dispute — specifically, Nissan's deliberate weaponization of credit reporting over a $625.28 net dispute, causing two housing denials, the loss of housing Plaintiff was otherwise fully qualified to occupy and the systematic destruction of every dispute resolution forum available to Plaintiff while he was recovering from surgery and unable to work. That is not a commercial dispute. That is a sustained, deliberate campaign of financial coercion against an individual consumer.

*On the IIED threshold:* Under *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970), and *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999), IIED requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Whether conduct meets that threshold is ordinarily a question for the jury — not a question of law to be resolved on a motion to set aside

default. *See Coors Brewing*, 978 P.2d at 666. The question here is not whether Nissan's conduct meets the IIED threshold as a matter of law — it is whether Nissan has articulated a meritorious defense sufficient to warrant adjudication on the merits. *See Stone*, 588 F.2d at 1319. A defense is meritorious only if, accepted as true, it would constitute a complete defense to the claim. Nissan's characterization of fourteen months of documented financial coercion as a "commercial dispute" does not meet that standard. Whether conduct rising to four vehicle failures, fraudulent credit reporting over $625.28, two housing denials, surgical recovery, and the systematic elimination of every dispute forum constitutes extreme and outrageous conduct is a question for a jury. Moreover, Nissan's own conduct in this very litigation — appearing for the first time after 68 days of silence and devoting two pages of its first filing to a misleadingly truncated character attack on the plaintiff it has spent fourteen months financially destroying — is itself additional evidence bearing on the IIED claim. *See* ECF No. 19 at 14–15.

**6. FCRA § 1681s-2(b) — Not Addressed, Therefore Conceded for Default Purposes**

Nissan's motion does not address Plaintiff's Fair Credit Reporting Act claim at all. *See* ECF 19 at 10–11. By failing to articulate any defense to Count VIII — willful violation of 15 U.S.C. § 1681s-2(b) — Nissan has offered no meritorious defense to the FCRA count. Under *Stone*, 588 F.2d at 1319, a meritorious defense must be articulated with sufficient factual elaboration for the Court to assess it. Silence is not a defense.

The FCRA claim rests on Nissan's continued reporting of "Voluntary surrender / Balance charged to loss" — false as a matter of both fact and law — after receiving: (1) written notice on May 1, 2025 that such reporting would violate the FCRA; *see* ECF No. 15-1, Ex. J; (2) consumer dispute notifications transmitted by the credit bureaus; and (3) the filing of this lawsuit. Nissan reported negative information on at least four separate occasions after each of these notices. *See* ECF 15-1, Affidavit ¶¶ 20–24. No meritorious defense to willful furnisher liability under 15 U.S.C. § 1681s-2(b) has been articulated. Factor Three is therefore wholly unmet as to the FCRA count.

**D. Nissan's Counsel Engaged in Sanctionable Misconduct Before This Court**

Nissan's counsel devotes two pages of a procedural Rule 55(c) motion to a public quote from Plaintiff regarding unrelated litigation, presenting it to this Court as evidence of improper litigation motive. *See* ECF No. 19 at 14–15. This conduct violates this Court's Standing Order, which requires that counsel treat parties "with courtesy and respect" and that the Court "expects nothing less." Standing Order § A.2 (Jan. 1, 2026). It is not a Rule 55(c) argument. It is not relevant to culpable conduct, prejudice, or meritorious defenses. It is the first act Nissan's counsel took in this litigation — and it violates this Court's own rules.

What counsel omitted is equally significant. The quote was presented without disclosing that the ruling it criticizes is currently on appeal as Case No. 25-1256 and has not been affirmed; that the Tenth Circuit previously reversed this Court in the same underlying matter in a published, precedential opinion, *Brooks v. Colo. Dep't of*

*Corrs.*, 12 F.4th 1160 (10th Cir. 2021), leading directly to the $3.5 million jury verdict Plaintiff references; that the statement was Plaintiff's constitutionally protected reaction to a jury's finding that he was denied a reasonable ADA accommodation and unconstitutionally denied access to food for over eight years — a verdict subsequently intercepted in a ruling now before the Tenth Circuit. That selective presentation violates Colo. RPC 3.3(a)(1), Fed. R. Civ. P. 11(b)(1), Fed. R. Civ. P. 11(b)(3), and Fed. R. Evid. 404(b). Plaintiff moves to strike pages 14–15 of ECF 19, respectfully invites this Court to exercise its *sua sponte* authority under Fed. R. Civ. P. 11(c)(3), and provides notice of his intent to serve a Rule 11 safe harbor letter on counsel demanding withdrawal of the offending material within 21 days.

## IV. CONCLUSION

All three Rule 55(c) factors weigh decisively against Nissan. Its default was the fourth iteration of a fourteen-month pattern of deliberate forum avoidance. The prejudice to Plaintiff is daily, compounding, and documented by eighteen exhibits already before this Court. And Nissan's five asserted defenses each fail on the existing record — with Count VIII under the FCRA left entirely unaddressed. Nissan's counsel then compounded the misconduct by violating this Court's own civility standard on page 14 of their first filing — presenting a misleadingly truncated public quote to this tribunal while suppressing a published Tenth Circuit reversal, and an active appeal.

Plaintiff's Motion for Default Judgment [ECF 15] is fully briefed, supported by eighteen exhibits and a sworn affidavit, and pending before this Court. Nissan has

offered no legitimate basis to unwind that record. The Court should deny Nissan's motion in full and proceed to adjudicate Plaintiff's Motion for Default Judgment [1].

Respectfully submitted on this 23rd day of June 2026.

s/Jason T. Brooks______________
Jason T. Brooks
636 Barberry Drive
Longmont, CO 80503
(925) 366-0803
geniusjasonbrooks@gmail.com
*Pro Se Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of June 2026, a true and accurate copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO**

[1] Plaintiff notes that this Opposition is approximately 23 pages in length. The District of Colorado Local Civil Rules impose no page limit on responses to non-dispositive motions. D.C.COLO.LCivR 7.1. The length is necessitated by the nature of Nissan's motion, which asserts three Rule 55(c) factors across 16 pages, attaches a four-page affidavit, and makes a secondary punitive damages argument — each of which requires a substantive response grounded in the record. More significantly, the length reflects the breadth and depth of the evidentiary record Plaintiff has assembled demonstrating Nissan's liability. The length of this Opposition is not strategic inflation — it is a function of the documented record Nissan has chosen not to engage.

**SET ASIDE DEFAULT PURSUANT TO FED. R. CIV. P. 55(c).** was served on all parties via the Court's CM/ECF system.

s/ Jason Brooks

***Jason Brooks***
636 Barberry Drive
Longmont, CO 80503
Telephone: (925) 366-0803
E-mail: geniusjasonbrooks@gmail.com
Plaintiff, *pro se*