**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-01385-SKC-STV

JASON T. BROOKS

Plaintiff(s),

v.

NISSAN NORTH AMERICA, INC.

Defendant.

---

**SECOND MOTION TO SET ASIDE DEFAULT**
**PURSUANT TO F.R.C.P. 55(c)**

---

Defendant Nissan North America, Inc. ("Nissan"), by its undersigned counsel, O'Hagan Meyer, PLLC, respectfully submits this Second Motion to Set Aside Default Pursuant to Fed. R. Civ. P. 55(c) ("Second Motion") and moves the Court to set aside the Clerk's Entry of Default entered on May 5, 2026 and to permit it to file a responsive pleading to Plaintiff's Complaint.

## I. INTRODUCTION

The entry of default against Nissan should be set aside under Rule 55(c) of the Federal Rules of Civil Procedure and Nissan should be permitted to defend on the merits. Unfortunately, this matter was not promptly assigned to outside counsel before the responsive pleading deadline expired. Nissan responded quickly after outside counsel was retained. Further, as no discovery has been conducted, no trial date has been set, and no trial preparation has occurred, any prejudicial effect is non-existent or *de minimis*, at best. And, importantly, Nissan has multiple substantial

and meritorious defenses to Plaintiff's claims, including defenses contained in the lease agreement, Nissan's warranty service and repurchase offers, industry-standard battery range specifications, the express contract governing the parties' relationship, and lack of involvement with any credit reporting. These defenses present triable issues of fact and law that cannot be resolved by entry of default and that warrant adjudication on the merits.

Based on the foregoing, and as set forth more fully below, Nissan respectfully requests that this Court set aside the Default and permit Nissan to file its responsive pleading and defend this action on the merits.

## II. STATEMENT OF FACTS

### A. The Underlying Dispute and Nissan's Active Engagement in Resolution

Plaintiff Jason T. Brooks leased a 2024 Nissan Ariya (the "Vehicle") from Valley Nissan, LLC on October 31, 2024 (the "Lease"). The Lease was assigned to and serviced by Nissan Motor Acceptance Company LLC. Plaintiff's monthly lease payment was $418.66.

In December 2024, Plaintiff reported alleged mechanical failures with the Vehicle. Rather than ignoring these complaints, Nissan actively engaged in dispute resolution efforts spanning approximately five months. Between December 2024 and February 2025, Nissan and Plaintiff negotiated a settlement agreement, and a Nissan engineer personally inspected the Vehicle and represented that the Vehicle was operating properly. Nissan paid Plaintiff $2,500 in settlement of claims through February 26, 2025.

On March 1, 2025, the Vehicle allegedly suffered another mechanical failure. On March 20, 2025, Nissan North America, Inc., issued a voluntary repurchase offer. Even so, Plaintiff filed a formal demand for arbitration with JAMS on March 26, 2025 (Case ID No. 37461). On April 23, 2025, Nissan North America, Inc., directed Plaintiff to BBB Auto Line and Plaintiff filed a claim with BBB Auto Line (Case NIS2507014) on April 23, 2025, which BBB Auto Line closed within two days on April 25, 2025.

Nissan's pattern of active engagement—settlement negotiations, repurchase offers, and direction to alternative dispute resolution forums—demonstrates that Nissan was **not** deliberately avoiding the dispute or ignoring Plaintiff's claims. Instead, Nissan was actively attempting to resolve the matter through contractually designated dispute resolution mechanisms.

### B. Service and Nissan Involvement in this Litigation

The Summons and Complaint were filed on April 1, 2026. The Summons and Complaint were electronically served on Nissan's designated registered agent, Corporation Service Company ("CSC"), on April 10, 2026. Upon receipt of a new complaint, the matter is forwarded to Nissan and assigned to personnel within Nissan's legal department for retention of outside counsel. Nissan discovered that the internal assignment occurred on April 20, 2026, rather than June 2026, and therefore, hereby corrects the previously tendered inaccurate information provided in its first Motion to Set Aside the Default Judgment with this Motion.[1]

[1] Should the Court so require or permit, Nissan is willing to participate in an *in camera* hearing with the Court to discuss its discovery of information that caused it

Nissan's responsive pleading was due on May 1, 2026. Plaintiff filed a motion for entry of default on May 2, 2026, and Default was entered on May 5, 2026. That same day, Plaintiff filed a motion for default judgment. Upon Nissan assigning this matter to outside counsel on June 17, 2026, its first Motion to Set Aside Default was filed on June 22, 2026.

Based on information learned, Nissan caused its June 22, 2026 Motion to Set Aside the Default, ECF docket number 19, along with filings stemming therefrom, ECF docket numbers 19-1 and 22, to be withdrawn on August 14, 2026 (ECF 24.) Nissan now presents this Second Motion to Set Aside Default which contains the corrected information.

### C. Early Stage of Litigation

The litigation is at an extremely early stage: no discovery has been conducted, no trial date has been set, and no trial preparation has occurred. Setting aside the Default will allow the case to proceed to trial, where Plaintiff will have the opportunity to present evidence and arguments in support of his claims on the merits.

## III. LEGAL ARGUMENT

### A. Good Cause Exists to Set Aside the Default

Critically, "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Whether to set aside entry of default is within the sound discretion of the court. *Ashby*

---

to immediately direct the withdrawal of its first Motion to Set Aside the Judgment based on inaccurate information and file the instant Motion.

*v. McKenna*, 331 F.3d 1148, 1152 (10th Cir. 2003). "[T]he good cause standard required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)." *Kahler v. Wal-Mart Stores, Inc.*, No. 20-cv-01536-WJM-KMT, 2020 U.S. Dist. LEXIS 2334163, at *6 (D. Colo. Dec. 14, 2020) (citation and quotations omitted).

The non-exhaustive factors the Court should consider are: (1) whether the default was the result of culpable conduct of the defendant; (2) whether the plaintiff would be prejudiced if the default should be set aside; and (3) whether the defendant presents a meritorious defense. This determination is liberal and is guided by the strong preference that courts dispose of cases on their merits, and not by default. *See, e.g., Zen & Art of Clients Server Computing, Inc. v. Res. Support Assocs.*, Civil Action No. 06-cv-00239-REB-MEH, 2006 U.S. Dist. LEXIS 101239, at *4 (D. Colo. June 15, 2006) (citing *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) ("[T]he preferred disposition of any case is upon its merits and not by default judgment.")).

**1. Nissan's Failure to Timely Respond to the Complaint is Mitigated by its Prior Engagement with Plaintiff.**

A party's prompt motion to set aside an entry of default serves to mitigate any culpable conduct that may exist. *See Zen*, 2006 U.S. Dist. LEXIS 101239, at *5-6 (citing *Savin Corp. v. C.M.C. Corp.*, 98 F.R.D. 509, 511 (N.D. Ohio 1983) (finding that a mistaken delay in response was not willful because the defendant "expeditiously moved to remedy his mistake"); *see also Fed. Fruit & Produce Co. v. Liborio Mkts. #9, Inc.*, Civil Action No. 12-cv-1145-WJM-BNB, 2013 U.S. Dist. LEXIS 129785, at *6 (D.

Colo. Sep. 11, 2013) (despite a "weak justification" and a two-month delay, failure to respond did not thwart the ability to have default vacated) and *Winmark Corp. v. Schneeberger*, Civil Action No. 13-cv-0274-WJM-BNB, 2013 U.S. Dist. LEXIS 162364, at *7 (D. Colo. Nov. 14, 2013) (finding that other evidence in the record, which demonstrated that the defendants were anything but a silent player in the proceedings, militated against any finding of bad faith and entry of default, and noting that a party's prompt motion to set aside an entry of default serves to mitigate any culpability that may exist).

Here, Nissan's failure to timely assign outside counsel and respond to Plaintiff's Complaint was mitigated by the prior and active engagement with Plaintiff, and Nissan's timely action in retention of counsel and filing of its first motion to set aside default.

Nissan likewise lacked any rational strategic incentive to default in a case involving alleged significant monetary exposure and injunctive relief. Further, Nissan's pre-suit conduct also demonstrates active engagement with the dispute, including participation in settlement discussions, repurchase-related communications, and other dispute resolution efforts. This behavior negates any inference of willfulness or tactical delay and is the type of conduct that is incompatible with any suggestion that Nissan deliberately chose to ignore the litigation once filed.

### 2. Setting Aside Default will not Prejudice Plaintiff

Prejudice is established when a plaintiff's ability to pursue his claims has been hindered by, for example, a loss of available evidence, increased potential for fraud or

collusion, or substantial reliance upon the judgment. *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523-24 (3d Cir. 2006). However, "'[t]here is no prejudice to the plaintiff where the setting aside of the default has done no harm to the plaintiff except to require [him] to prove [his] case.'" *Securitynational Mortg. Co. v. Head*, Civil Action No. 13-cv-03020-PAB-BNB, 2014 U.S. Dist. LEXIS 129351, at *9 (D. Colo. Sep. 15, 2014) (quoting *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000)).

Plaintiff cannot demonstrate the type of prejudice required to justify maintaining the Default. Instead, in setting aside the Default, he faces the ordinary burden of proving his claims on the merits. This case remains at an early stage: no meaningful discovery has occurred, and the Court has issued no merits-based rulings that would be disturbed by permitting Nissan to appear and defend. Any incremental delay associated with litigating the case does not constitute prejudice because the Default arose from an administrative lapse. There is no credible suggestion that setting aside the Default will result in the loss of relevant evidence, increase difficulty in obtaining discovery, or any risk of fraud or collusion on the merits. Nor has Plaintiff's ability to prosecute the case been materially impaired in any way. Plaintiff's allegations of ongoing financial- or credit-related harm go to the substance of the underlying dispute, not to any litigation prejudice caused by vacating the Default.

### 3. Nissan has Meritorious Defenses

As to the third "good cause" factor, "the court examines the allegations contained in the moving papers to determine whether the movant's version of the factual circumstances surrounding the dispute, if true, would constitute a defense in the action." *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978). A defendant must provide "a sufficient elaboration of facts to permit the trial court to judge whether the defense, if movant's version were to be believed, would be a meritorious defense." *Id*. A defendant is not required to "demonstrate a likelihood of success on the merits." *Coon v. Grenier*, 867 F.2d 73, 77 (1st Cir. 1989). Nissan meets that standard because it has multiple defenses that could materially alter the outcome of this case if litigated.

First, the Lease includes dispute resolution terms that may require some or all claims to be resolved in arbitration rather than in court, and any waiver or enforceability issues are fact-intensive and unsuitable for resolution by default. Second, Nissan disputes that Plaintiff can establish the elements necessary to impose liability based on alleged defects, including whether Nissan was afforded a reasonable opportunity to diagnose and repair, whether any alleged nonconformity persisted, and whether Plaintiff's claimed damages were caused by any actionable breach. Third, Nissan disputes breach, disputes the measure and recoverability of the damages sought, and contends that Plaintiff's claimed consequential losses are not recoverable as pleaded or are otherwise limited by the governing contractual framework and causation principles. Fourth, where, as here, an express contract

governs the parties' relationship and the subject matter of the dispute, quasi-contract theories such as unjust enrichment are generally unavailable. Fifth, Nissan disputes that Plaintiff can convert a contractual vehicle performance dispute into tort liability for purely economic losses, and further disputes that the alleged conduct meets the demanding threshold for any claim requiring extreme or outrageous conduct. Sixth, the allegations related to credit reporting were not the result of any reporting by Nissan North America. These defenses are substantial and demonstrate that the case should proceed through the ordinary adversarial process rather than be resolved by default.

**B. CONCLUSION**

For the reasons set forth above, good cause exists to set aside the Default. Setting aside the Default also aligns with the Court's strong preference for resolving cases on their merits, particularly where the default occurred at the outset of the case and Nissan sought to promptly appear and litigate.

Accordingly, Nissan respectfully moves the Court to set aside the Default and to allow Nissan to answer the Complaint so that the case can proceed on the merits.

Respectfully submitted this 18th day of August, 2026.

By: */s/ Russell Kalvelage*______________
Russell S. Kalvelage
O'Hagan Meyer PLLC
1331 17th St., Suite 350
Denver, CO 80202
Telephone: (303) 652-5871
rkalvelage@ohaganmeyer.com
***Attorneys for Nissan North America, Inc.***

**Generative AI Certification**: In accordance with Section C.2. of Judge Crews's Standing Order for Civil Cases, the attorney that drafted this motion certifies that any language drafted by AI was personally reviewed by the filer or another human for accuracy, and all legal citations are to actual, non-fictitious cases or cited authority.

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August, 2026, a true and correct copy of this **SECOND MOTION TO SET ASIDE DEFAULT PURSUANT TO F.R.C.P. 55(c)** was filed via the Court's CM/ECF system and served via E-Mail to the following:

***Jason Brooks***
636 Barberry Drive
Longmont, CO 80503
Telephone: (925) 366-0803
E-mail: geniusjasonbrooks@gmail.com
Plaintiff, *pro se*

*/s/ Russell Kalvelage*