**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-01385-SKC-STV

JASON BROOKS

Plaintiff(s),

v.

NISSAN NORTH AMERICA, INC,

Defendants.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S SECOND MOTION TO SET ASIDE DEFAULT [ECF NO. 25], MOTION FOR RULE 11 SANCTIONS, AND REQUEST FOR EXPEDITED RULING**

---

Plaintiff Jason Brooks, appearing pro se, respectfully submits this Opposition to Defendant Nissan North America, Inc.'s Second Motion to Set Aside Default [ECF No. 25], Motion for Rule 11 Sanctions pursuant to Fed. R. Civ. P. 11(c), and Request for Expedited Ruling pursuant to D.C.COLO.LCivR 7.1(d), and in support thereof states as follows:

## I. PRELIMINARY STATEMENT AND EXPEDITED RULING REQUEST

This Court should deny ECF No. 25, impose sanctions against Defendant and its counsel, and issue an expedited ruling on whether Nissan will be permitted back into this litigation. Plaintiff requests that this Court: (a) order Nissan to file its reply within 7 days of this filing; (b) issue its ruling on ECF No. 25 within 14 days on the papers; and (c) simultaneously — upon denying ECF No. 25 — rule on Plaintiff's

Motion for Default Judgment [ECF No. 16] as supplemented by the simultaneously filed ECF No. 27 — either on the papers or by setting an expedited damages hearing at the earliest available date.

The complete email record — attached hereto as Exhibits A through C — makes the bad faith nature of ECF No. 25 impossible to dispute. On August 12, 2026, Plaintiff transmitted to Nissan's counsel a notice advising that should this Court grant ECF No. 19, Plaintiff would immediately file: a First Amended Verified Complaint seeking damages in excess of $6,000,000 and naming O'Hagan Meyer PLLC as a defendant — requiring O'Hagan Meyer to withdraw from the representation; a Motion for Rule 11 Sanctions; a Motion for Preliminary Injunction seeking immediate credit deletion; and a possible recusal motion across all five of Plaintiff's active matters before this Court. See Exhibit A.

On August 14, 2026 — within hours of receiving that notice and the attached First Amended Verified Complaint — Nissan's own counsel confirmed in writing: "We are in receipt of the attached proposed First Amended Verified Complaint... Nissan has directed us to withdraw its Motion to Vacate and its corollary documents [Docket 19, 19-1 and 22]. We have done so." See Exhibit A. This Court granted the withdrawal the same day. See ECF No. 23. The default stood unchallenged.

On August 15, 2026, Plaintiff transmitted a settlement demand of $350,000 with an explicit expiration condition: "This offer expires the moment Nissan files any motion with the Court or by August 21, 2026" — and simultaneously transmitted a draft of the Supplemental Brief documenting total damages exceeding $1,100,000.

See Exhibit B. On August 18, 2026 — the same day ECF No. 25 was filed — Nissan's counsel responded: "We acknowledge your email below and your objection to any future filing by NNA. Today, we filed a second motion to set aside the default." See Exhibit B.

Counsel read Plaintiff's objection. Counsel reviewed the supplemental brief. Counsel filed ECF No. 25 anyway — simultaneously offering mediation — knowingly destroying the settlement offer by its own terms and extending the period during which Plaintiff's documented housing insecurity compounds daily. Plaintiff declines mediation. The settlement offer is closed.

In light of ECF No. 27 — filed simultaneously herewith — Plaintiff updates his damages request to $750,000 plus pre-judgment interest, injunctive credit deletion pursuant to Fed. R. Civ. P. 55(b)(2), and declaratory relief extinguishing the $30,908.03 claimed balance. Also attached hereto as Exhibit C is the First Amended Verified Complaint — offered for the limited purposes of establishing the scope of documented liability that caused Nissan to withdraw ECF No. 19.

## II. THE FOURTEEN-MONTH PATTERN OF MALICIOUS DELAY

ECF No. 25 is the latest act in a deliberate, continuous, and malicious fourteen-month campaign to prevent resolution of a $625.28 net dispute while the financial harm to Plaintiff compounds daily. Nissan refused to participate in JAMS arbitration — in writing — through its own Arbitration Specialist — while simultaneously designating JAMS as the mandatory forum in its own Lease. Nissan directed Plaintiff to BBB AUTO LINE — a forum not designated in the Lease — which closed the claim

within two days on false grounds without corrective action. Nissan ignored Plaintiff's May 1, 2025 UCC § 2A-517 revocation notice — never responding, never challenging it in any court, never refunding any payments — for fourteen months. Nissan repossessed the Vehicle 72 days after the Lease was legally terminated without refunding any payments — then reported "voluntary surrender / balance charged to loss" four separate times after written notice.

Nissan defaulted in this federal action for 68 days after service through its professional registered agent. Nissan filed ECF No. 19 containing materially false information about when it learned of the lawsuit — then withdrew that motion strategically after reviewing $6,271,068+ in documented liability — not to correct the false information. Nissan filed ECF No. 25 four days later — with full knowledge of Plaintiff's objection, the expired settlement offer, and the $1,100,000+ damages documented in the supplemental brief it had just reviewed — simultaneously offering mediation to extend the delay further still.

Every day ECF No. 25 remains pending is another day the fraudulent charge-off reports on Plaintiff's credit file — another housing application denied, another month at Capital One's 17.85% APR, pre-judgment interest accruing at 8% per year under C.R.S. § 5-12-102 — approximately $6,700 per month added to the judgment with each passing month of delay. Two housing denials are already documented — ECF No. 15-1, Exhibit N. ECF No. 25 is not a good faith attempt to defend on the merits. It is the latest act in a malicious pattern of delay.

## III. THE REAL PURPOSE OF ECF NO. 25 — CONTESTING DAMAGES NISSAN HAS NO RIGHT TO CONTEST

Nissan cannot set aside the default on the merits — as demonstrated below. What it actually seeks through ECF No. 25 is access to the damages determination. Specifically, Nissan reviewed Plaintiff's supplemental brief documenting $1,100,000+ in total damages before filing ECF No. 25. It is using ECF No. 25 as a procedural vehicle to gain access to a damages hearing it has no right to participate in, while simultaneously offering mediation to reduce the award through negotiation. A defaulting party that has not set aside the default has no right to participate in the damages determination.

The now $750,000 request Plaintiff seeks — documented in ECF No. 27 — reflects harm caused not only by the defective vehicle and fraudulent credit reporting but by Nissan's and O'Hagan Meyer's conduct within this litigation, independently compensable under the IIED and bad faith counts already pled. O'Hagan Meyer deliberately placed Plaintiff's criticism of this Court's own judicial reasoning before this Court in ECF No. 19 — at a moment when Plaintiff had five active matters before Judge Crews with combined exposure exceeding $67,000,000. That conduct caused the distress of having constitutionally protected speech weaponized before the judge presiding over five of Plaintiff's most consequential cases — raising the prospect of being compelled to seek recusal of Judge Crews across all five matters, including *Brooks v. CDOC* with its active $3.5 million jury verdict and en banc petition and the $60,000,000 companion matter. O'Hagan Meyer's conduct destroyed the settlement negotiations active as of July 7, 2026 — eliminating the credit deletion that would

have ended Plaintiff's housing insecurity — and forced Plaintiff to serve a Rule 11 safe harbor letter, draft ECF No. 20, and spend hours of pro se litigation time on misconduct that should never have occurred. The false information in ECF No. 19 — now admitted — required additional investigation and response. The whipsaw of withdrawal and immediate refiling caused additional independent emotional distress and additional pro se litigation burden. All of this is compensable. Nissan's attempt to use ECF No. 25 to contest the updated $750,000 request is itself an act of bad faith.

## IV. DAMAGES ACCRUE THROUGH JUDGMENT — NOT FILING DATE

The simultaneously filed ECF No. 27 properly updates the damages record before this Court rules on ECF No. 16. A defaulting party admits all well-pleaded allegations of liability. See *Olcott v. Delaware Flood Co.*, 327 F.3d 1115 (10th Cir. 2003). Damages are determined as of the date of the Court's ruling — not the date of filing. See *AirDoctor, LLC v. Xiamen Qichuang Trade Co., Ltd.*, 134 F.4th 552 (9th Cir. 2025) — plaintiffs may recover full actual damages in default proceedings including damages accruing after the complaint was filed; see also *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) — damages calculated as of the date of ruling. The original complaint pled ongoing and continuing harm, not harm frozen at the filing date. Under Colorado law — *DeCicco v. Trinidad Area Health Ass'n*, 40 Colo. App. 63, 573 P.2d 559 (1977) — and Restatement (Second) of Torts § 46, comment j (1965) — ongoing outrageous conduct generates ongoing compensable emotional distress through the date of judgment. Every month Nissan continues to report the fraudulent charge-off is another month

of documented, compounding harm that the damages award must capture. And Nissan's conduct in this litigation is simply beyond the pale.

## V. ECF NO. 25 FAILS ALL THREE RULE 55(c) FACTORS — CULPABLE CONDUCT ALONE IS SUFFICIENT

Under *United States v. Timbers Pres., Routt Cnty.*, Colo., 999 F.2d 452, 454 (10th Cir. 1993), a defendant's conduct is culpable where it "has defaulted willfully or has no excuse for the default." Under *Hunt v. Ford Motor Co.*, 65 F.3d 178 (10th Cir. 1995), "if the default was the result of the defendant's culpable conduct, the district court may refuse to set aside the default on that basis alone." This Court need not reach prejudice or meritorious defenses. Culpable conduct alone is sufficient.

**A. Good Cause — Destroyed.** ECF No. 25 admits Nissan had actual internal knowledge of this lawsuit on April 20, 2026 — eleven days before the May 1, 2026 response deadline. Under *Hunt*, "a defendant's failure to answer or otherwise respond to the complaint after receiving actual notice of the complaint demonstrated a willful disregard for the court." 65 F.3d at 178. Actual notice on April 20 plus failure to respond by May 1 equals culpable conduct, sufficient alone to deny ECF No. 25 without reaching prejudice or meritorious defenses. See *Ashby v. McKenna*, 331 F.3d 1148, 1152 (10th Cir. 2003). Nissan's characterization as an "administrative lapse" fails. *Hunt* does not require intentional avoidance. Eleven days of actual knowledge is a deadline missed after actual notice. Culpable conduct as a matter of Tenth Circuit law. The good cause analysis is independently destroyed by the false information in ECF No. 19 — now admitted — filed and not corrected before strategic withdrawal — withdrawn for strategic reasons entirely unrelated to the false information. Good

cause requires good faith. The sequence of ECF No. 19, its strategic withdrawal, and ECF No. 25 establishes the opposite.

**B. Voluntary Withdrawal — Bad Faith Concession.** Nissan voluntarily withdrew ECF No. 19 — without compulsion — after reviewing $6,271,068+ in documented liability. Nissan's own counsel confirmed in writing that the FAC caused the withdrawal — not the discovery of the false assignment date. Under *New Hampshire v. Maine*, 532 U.S. 742, 749-750 (2001), judicial estoppel prevents a party from asserting a position inconsistent with one successfully maintained in prior proceedings where the court accepted the earlier position. Here — this Court granted ECF No. 23 the same day it was filed — accepting Nissan's position that the withdrawal was appropriate. Nissan now takes the inconsistent position that it wants the same relief ECF No. 19 sought. Nissan succeeded in persuading this Court to grant ECF No. 23. It would derive an unfair advantage from now refiling on corrected grounds. All three New Hampshire factors are met. The voluntary withdrawal was a concession. ECF No. 25 cannot undo it.

**C. Prejudice — Concrete, Documented, and Ongoing.** Nissan cites *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000) — requiring a plaintiff to prove his case does not constitute prejudice. That case does not address documented ongoing financial destruction already in the evidentiary record. Two housing denials — ECF No. 15-1, Exhibit N. Capital One at 17.85% APR — ECF No. 27-1, 27-2. Pre-judgment interest accruing at $6,700 per month. Housing insecurity with the prospect of couch

surfing and homelessness. This is not ordinary litigation burden. It is documented, ongoing harm that compounds with every day ECF No. 25 remains pending.

**D. Meritorious Defenses — None Survive.** Arbitration clause — waived in writing by Nissan's own Arbitration Specialist. See *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022). Reasonable repair — four failures, Nissan's own engineer declared repair complete, Vehicle failed three days later, both Lemon Law thresholds met under C.R.S. § 42-10-104. Admitted by default. Damages causation — documented by eighteen exhibits. Admitted by default. Unjust enrichment unavailable — wrong. Post-revocation the contract ceased to exist. See *DCB Construction Co. v. Central City Development Co.*, 965 P.2d 115, 119-20 (Colo. 1998). Cannot convert contract to tort — wrong. CCPA, IIED, bad faith, and fraudulent misrepresentation are independent claims. Admitted by default. Defendants suggestion that the credit reporting was not by Nissan North America is legally frivolous on three independent grounds. First — NMAC is Nissan's wholly owned captive finance subsidiary, established specifically to service Nissan North America's vehicle lease portfolio. The CFPB has recognized NMAC as "an auto financing subsidiary of Nissan North America, Inc., which services auto loans and leases originated by Nissan and Infiniti dealerships nationwide." CFPB Consent Order, Docket No. 2020-BCFP-0017 (Oct. 13, 2020). Second — the agency relationship is established by the record already before this Court. Nissan North America's own Arbitration Specialist directed Plaintiff away from JAMS and toward BBB AUTO LINE — directly affecting the lease account NMAC was servicing. Nissan North

America directed its counsel to withdraw ECF No. 19 — "Nissan has directed us to withdraw" — exercising direct control over litigation involving NMAC's credit reporting. Under Colorado agency law — *Montoya v. Grease Monkey Holding Corp.,* 883 P.2d 486 (Colo. App. 1994)*, aff'd on other grounds sub nom. Grease Monkey Int'l, Inc. v. Montoya,* 904 P.2d 468 (Colo. 1995*)* — a principal is liable for the conduct of its agent acting on the principal's behalf and under the principal's control. NMAC was acting on Nissan North America's behalf and under its control throughout this dispute. Third — the defense was admitted away by the default and subsequent request to permit the default to stand. By defaulting, Nissan North America admitted every well-pleaded factual allegation — including that NMAC acted as its agent in all credit reporting. See *Olcott*, supra. This defense was waived by the default, the concession of it, and cannot now be resurrected in a second Rule 55(c) motion.

## VI. RULE 11 SANCTIONS — SPECIFIC RELIEF REQUESTED

**Ground One — ECF No. 19 contained materially false information.** Nissan now admits ECF No. 19 stated the internal assignment occurred in June 2026 — when it actually occurred April 20, 2026. That was a material false statement of fact presented to this Court in a signed filing. Nissan corrected the false information only by filing ECF No. 25 — not by withdrawing it. That is not remediation. Under *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990) — "a Rule 11 violation is complete when the paper is filed" — voluntary dismissal does not deprive the court of jurisdiction to impose sanctions. The false assignment date in ECF No. 19 was complete the moment ECF No. 19 was filed. The strategic withdrawal does not cure

it, nor does suddenly trying to re-enter this litigation to simply attempt to contest damages it already conceded.

**Ground Two — ECF No. 25 is filed for an improper purpose.** ECF No. 25 seeks identical relief to ECF No. 19 on revised grounds — filed four days after voluntary withdrawal — for the purpose of gaining access to a damages determination Nissan has no right to participate in while simultaneously offering mediation to delay judgment. A motion filed to access a damages proceeding through procedural maneuvering rather than for any legitimate meritorious legal purpose is filed for an improper purpose in violation of Fed. R. Civ. P. 11(b)(1).

**Ground Three — The in camera hearing request violates Colo. RPC 3.5(b).** Footnote 1 of ECF No. 25 requests a private conversation with Judge Crews without Plaintiff present — to explain the circumstances of the withdrawal of ECF No. 19. Colo. RPC 3.5(b) prohibits a lawyer from communicating ex parte with a judge during a proceeding 'unless authorized to do so by law or court order.' There is no law or court order authorizing an in camera hearing to explain why a party withdrew a prior motion and Defendants e-mails give that court the explicit reason they conceded this case, at Nissan's explicit instruction. Nissan's request asks this Court to create that authorization — through the very motion Plaintiff is opposing — so that Nissan can explain the circumstances of the withdrawal of ECF No. 19 without Plaintiff being present to hear, respond to, or challenge whatever explanation Nissan provides. That is an improper use of in camera proceedings. The recognized exceptions to the ex parte prohibition — scheduling, administrative matters, emergency TROs — have

no application here. Substantive communications about why a motion was filed, withdrawn, and refiled — without Plaintiff present — are precisely what Colo. RPC 3.5(b) prohibits. Plaintiff expressly objects to any in camera or ex parte communication regarding the withdrawal of ECF No. 19 or the filing of ECF No. 25.

Plaintiff requests: (a) monetary sanctions — reimbursement of all pro se litigation fees incurred responding to ECF Nos. 19 and 25 at $150 per hour — to be submitted within 14 days of this Court's order; (b) a formal finding that ECF No. 19 contained materially false information in violation of Fed. R. Civ. P. 11(b)(3); (c) a formal finding that ECF No. 25 was filed for an improper purpose in violation of Fed. R. Civ. P. 11(b)(1); (d) an order that pre-judgment interest continues to accrue at 8% per year under C.R.S. § 5-12-102 from May 1, 2025 through judgment — and that the delay caused by ECF Nos. 19 and 25 is attributed to Nissan for purposes of calculating that interest.

## VII. IN THE ALTERNATIVE — IF THIS COURT IS IMPOSSIBLY GRANTS ECF NO. 25

The law and facts do not support granting ECF No. 25. Under *Hunt v. Ford Motor Co.*, 65 F.3d 178 (10th Cir. 1995), culpable conduct alone is sufficient to deny a motion to set aside default — and culpable conduct is established beyond dispute by Nissan's own admission that it had actual internal knowledge of this lawsuit eleven days before the deadline and still defaulted. Under *Timbers Preserve*, 999 F.2d at 454, a defendant with no excuse for the default cannot demonstrate good cause. Nissan has none. The false information in ECF No. 19 — now admitted — destroys any claim of good faith. The voluntary withdrawal of ECF No. 19 — confirmed in writing as

caused by the FAC, not by any legitimate procedural purpose — establishes consciousness of liability. The meritorious defenses asserted are either waived by the default, legally frivolous, or directly contradicted by the record. ECF No. 25 must be denied as a matter of law.

As a result of these circumstances, Plaintiff requests two things. First — an immediate ruling on whether Nissan may re-enter this case after default, concession of default, and second request to re-enter within the 14-day expedited period to establish what is going to happen with this case. Plaintiff needs to know whether this Court intends to allow Nissan back into this litigation so he can take the appropriate next steps. Second —if the default is set aside — this case resets and Plaintiff will immediately file the FAC. Plaintiff further requests that if this Court grants ECF No. 25 — it simultaneously grant leave to file an emergency preliminary injunction motion within 7 days, set an expedited briefing schedule of 7 days for Nissan's opposition and 3 days for Plaintiff's reply, and rule on the preliminary injunction within 14 days of filing — before any scheduling order is entered or discovery begins to prevent Plaintiff's possible homelessness.

## VIII. RELIEF REQUESTED

Plaintiff respectfully requests that this Court: (a) deny Defendant's Second Motion to Set Aside Default [ECF No. 25] in its entirety; (b) order Nissan to file its reply to this opposition within 7 days; (c) issue its ruling on ECF No. 25 within 14 days of this filing on the papers; (d) rule on Plaintiff's Motion for Default Judgment [ECF No. 16] as supplemented by ECF No. 27 — either on the papers or by setting

an expedited damages hearing — entering judgment in the amount of $750,000 plus pre-judgment interest accruing at 8% per year under C.R.S. § 5-12-102 from May 1, 2025 through the date of judgment; (e) enter injunctive credit deletion as part of the default judgment pursuant to Fed. R. Civ. P. 55(b)(2) — ordering Nissan to transmit deletion instructions to Experian, Equifax, and TransUnion within five business days — subject to daily contempt sanctions of $1,000 per bureau per day for non-compliance beyond 30 days — with a compliance report to this Court within 30 days — and a permanent injunction against any further negative reporting; (f) enter declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the $30,908.03 claimed balance legally extinguished and permanently enjoining any collection action or further reporting; (g) impose Rule 11 sanctions against Defendant and O'Hagan Meyer PLLC as set forth in Section VI; (h) deny the in camera hearing request in footnote 1 of ECF No. 25; (i) in the alternative — if this Court grants ECF No. 25 — grant Plaintiff leave to file an emergency motion for preliminary injunction within 7 days, set an expedited briefing schedule, and rule on the preliminary injunction within 14 days before any scheduling order is entered; and (j) award all costs pursuant to Fed. R. Civ. P. 54(d).

Respectfully submitted on this 18th day of August 2026.

s/Jason T. Brooks
Jason T. Brooks
636 Barberry Drive
Longmont, CO 80503
(925) 366-0803
geniusjasonbrooks@gmail.com
*Pro Se Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August 2026, a true and accurate copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S SECOND MOTION TO SET ASIDE DEFAULT [ECF NO. 25], MOTION FOR RULE 11 SANCTIONS, AND REQUEST FOR EXPEDITED RULING** was served on all parties via the Court's CM/ECF system.

s/ Jason Brooks________________
***Jason Brooks***
636 Barberry Drive
Longmont, CO 80503
Telephone: (925) 366-0803
E-mail: geniusjasonbrooks@gmail.com
Plaintiff, *pro se*