IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-01385-SKC-STV

JASON T. BROOKS, Plaintiff v. NISSAN NORTH AMERICA, INC., Defendant.

# EXHIBIT A

## EMAIL CHAIN — NOTICE OF ANTICIPATED FILINGS AND KALVELAGE RESPONSE

*August 12, 2026 — Plaintiff to Kalvelage*

*Notice: Should ECF No. 19 Be Granted, Plaintiff Would File FAC, Sanctions Motion, and Recusal Motion*

*August 14, 2026 — Kalvelage to Plaintiff — 1:30 PM*

*"We are in receipt of the attached proposed First Amended Verified Complaint...*
*Nissan has directed us to withdraw its Motion to Vacate and its corollary*
*documents [Docket 19, 19-1 and 22]. We have done so."*

Outlook

**RE: Notice of Anticipated Filings if Default is Set Aside — Brooks v. Nissan North America, Inc., Case No. 1:26-cv-01385-SKC-STV**

**From** Russell Kalvelage <rkalvelage@ohaganmeyer.com>
**Date** Fri 8/14/2026 1:30 PM
**To** geniusjasonbrooks@gmail.com <geniusjasonbrooks@gmail.com>
**Cc** Denean Sturino <DSturino@ohaganmeyer.com>

Good afternoon Mr. Brooks,
We are in receipt of the attached proposed First Amended Verified Complaint and also the email below. While we do not agree that the damages you allege would be recoverable, Nissan has directed us to withdraw its Motion to Vacate and its corollary documents [Docket 19, 19-1 and 22]. We have done so. We will be in touch at later date related to a responsive pleading to your Docket 14 and 16 and possibly seeking a settlement conference before an agreeable Magistrate.

Thank you,
Russell

**Russell Kalvelage**
Associate Attorney
1331 17th Street, Suite 350
Denver, Colorado 80202
DIR 303.652.5882

O'HAGAN MEYER
ATTORNEYS ▲ ADVISORS
California ▲ Colorado ▲ Delaware ▲ District of Columbia ▲ Georgia ▲ Illinois
Maryland ▲ Massachusetts ▲ Michigan ▲ Nevada ▲ New Jersey ▲ New York
North Carolina ▲ Oregon ▲ Pennsylvania ▲ Virginia ▲ Washington

OHaganMeyer.com

---

**From:** geniusjasonbrooks@gmail.com <geniusjasonbrooks@gmail.com>
**Sent:** Wednesday, August 12, 2026 1:34 PM
**To:** Russell Kalvelage <rkalvelage@ohaganmeyer.com>
**Subject:** [EXTERNAL] Notice of Anticipated Filings if Default is Set Aside — Brooks v. Nissan North America, Inc., Case No. 1:26-cv-01385-SKC-STV

**CAUTION:** This email originated from outside the organization.
Do not click links or open attachments unless you are expecting them from the sender.

Mr. Kalvelage,

Should the Court grant Defendant's Motion to Set Aside Default [ECF No. 19], please be advised of the following anticipated filings:

I have substantially completed—and attached—a First Amended Verified Complaint that is in near-final draft form. The amended complaint adds a standalone FCRA § 1681s-2(b) willful furnisher liability count, expands the factual allegations to incorporate all post-filing events, and names O'Hagan Meyer PLLC as a defendant on counts for abuse of process, intentional interference with prospective economic advantage, civil conspiracy, and intentional infliction of emotional distress. The amended complaint seeks damages in excess of $6,000,000. It will be filed immediately if default is set aside.

Counsel should also be aware that the addition of O'Hagan Meyer PLLC as a named defendant creates an immediate and unwaivable conflict of interest. O'Hagan Meyer will be required to withdraw from its representation of Nissan North America, Inc. in this action — as counsel cannot simultaneously represent a defendant and defend itself as a co-defendant in the same proceeding. Nissan will be required to retain new counsel. Plaintiff provides this notice now so that Nissan and its current counsel may factor that disruption into any assessment of the consequences of a ruling granting ECF No. 19.

Simultaneously, Plaintiff will file a Motion for Sanctions pursuant to Fed. R. Civ. P. 11(c) based on the conduct described in Plaintiff's safe harbor letter of July 7, 2026. The 21-day safe harbor period has expired. No withdrawal was made.

Plaintiff also anticipates filing a Motion for Preliminary Injunction seeking immediate credit deletion pursuant to Fed. R. Civ. P. 65. The UCC § 2A-517 revocation notice served on May 1, 2025 is clearly enforceable under C.R.S. § 4-2.5-517 — and its legal effect is unambiguous: the Lease was terminated by operation of Colorado law on that date, Nissan was placed in default under C.R.S. § 4-2.5-508, and no balance was owed from that date forward. Plaintiff notes that even if the specific subsection cited in the revocation notice was imprecise, that is legally irrelevant. Colorado law requires no particular form or statutory citation in a revocation notice — only that the notice fairly apprise the lessor that the lessee wants to give back the goods. See Jackson v. Rocky Mtn. Datsun, Inc., 693 P.2d 391, 391 (Colo. App. 1984). The legal effect of revocation flows from the statute — not from the notice's citation — and the statutory conditions were plainly met: four mechanical failures, reasonable time, and written notice received by Nissan. Nissan chose not to challenge the revocation in any court. Its silence is acquiescence.

Every reporting event after May 1, 2025 was therefore legally false — not disputed, not subject to differing interpretations, but provably and objectively false as a matter of Colorado statutory law. Nissan is not the first auto manufacturer to engage in this precise pattern of conduct. In November 2023, the Consumer Financial Protection Bureau entered a consent order against Toyota Motor Credit Corporation, Docket No. 2023-CFPB-0015, ordering $60 million in consumer redress and civil penalties after finding that Toyota falsely reported customer accounts as delinquent for failure to make monthly lease payments even though customers had already returned their leased vehicles — and did not promptly correct the negative information it had sent to consumer reporting agencies even though it knew it was wrong. The CFPB found Toyota violated both the Fair Credit Reporting Act and its implementing Regulation V. Prior to that, the CFPB fined Hyundai Capital America more than $19 million for the same pattern — reporting customers as more than 30 days late on car-loan payments when they were in good standing. Nissan's conduct here is worse than either precedent — because Nissan received written notice on May 1, 2025 that the reporting was legally false, received consumer bureau dispute notifications from all three major credit bureaus, received the filing of a federal lawsuit, watched default enter, and continued reporting the false charge-off anyway.

This distinction is critical in light of the Tenth Circuit's recent decision in Ward v. National Credit Systems, Inc., No. 25-1078 (10th Cir. July 20, 2026), which adopted the "objectively and readily verifiable" standard for FCRA § 1681s-2(b) furnisher claims — holding that inaccuracy is a prima facie element of an unreasonable investigation claim and that the disputed information must be objectively and readily verifiable as containing a mistake or error. Ward actually strengthens Plaintiff's position rather than weakening it. Ward involved an identity theft dispute — a credibility contest requiring subjective assessment of whether the plaintiff had authorized his daughter's fraud. The Tenth Circuit held that kind of dispute is not objectively verifiable because the furnisher would have had to take the plaintiff at his word. Plaintiff's case is the exact opposite. The falsity of Nissan's reporting is verified from Nissan's own documents — the UCC revocation notice legally terminating the Lease, Nissan's own repo notice simultaneously checking "voluntary surrender" while noting a repossession date of July 12, 2025 — an objective contradiction on its face — and the absence of any legally cognizable balance after May 1, 2025, under C.R.S. § 4-2.5-508. No credibility contest. No subjective assessment. No competing narratives. The inaccuracy is objectively and readily verifiable from Nissan's own records — which is precisely the standard Ward requires. The credit reporting is illegal as a matter of law. The preliminary injunction — ordering deletion within five business days subject to daily contempt sanctions of $1,000 per day — is the only available mechanism to end the documented, ongoing, and daily housing insecurity that illegal reporting continues to cause. Nissan having knowledge of the damage and still refusing to rectify it just evinces more evidence of bad faith.

Finally, if the Court grants Defendant's motion, Plaintiff believes that outcome would have been directly influenced by the conduct described in ECF No. 20 and Plaintiff's safe harbor letter — specifically, the deliberate injection of Plaintiff's criticism of the Court's judicial reasoning into a pending motion at a moment when Plaintiff had four active matters before this Court with combined exposure exceeding $67,000,000 — Plaintiff will have no choice but to file a motion requesting that Judge Crews recuse himself from all matters in which Plaintiff appears before him pursuant to 28 U.S.C. § 455(a). Recusal requests across now five active matters (a defamation case I just filed against another social media creator was assigned a few weeks ago) would be catastrophically disruptive to my litigation. Considering Nissans' conduct in obstructing every forum I have attempted to resolve this case; the law and facts do no support Judge Crews setting aside default. However, if it happens, Nissan has no chance to win this case. I will win more than a million dollars without question, likely more.

This email is provided as a courtesy so that counsel may advise Nissan of the full scope of consequences that follow from a ruling granting ECF No. 19.

Jason Brooks
Plaintiff, Pro Se
636 Barberry Drive
Longmont, Colorado 80503
(925) 366-0803
geniusjasonbrooks@gmail.com