**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-01385-SKC-STV

JASON BROOKS

Plaintiff(s),

v.

NISSAN NORTH AMERICA, INC,

Defendants.

---

**PLAINTIFF'S MOTION FOR DISQUALIFICATION OF JUDGE S. KATO CREWS PURSUANT TO 28 U.S.C. §§ 455(a) AND 455(b)(1)**

---

Plaintiff Jason Brooks, *pro se*, respectfully moves this Court for an order disqualifying the Honorable S. Kato Crews from further proceedings in this action and reassigning it to a different district judge. As grounds, Plaintiff states

## I. INTRODUCTION

This motion does not rest on the fact that rulings have gone against Plaintiff, or on the mere existence of a prior reversal. A single adverse ruling — even an erroneous one — is not a basis for recusal. See *Liteky v. United States*, 510 U.S. 540, 555 (1994). This motion rests on a documented pattern across four related and overlapping matters before this Court — a direct personal reversal on a question this Court resolved incorrectly as a matter of law rather than submitting to a jury; a six-and-a-half-month failure to rule on a fully briefed statutory delay motion that

Colorado law requires be resolved in fourteen to twenty-one days; this Court's own dismissal, on a legally incorrect standard, of a closely analogous recusal argument against the magistrate judge referred cases in this district; an order that acknowledged it lacked jurisdiction to reach two questions and reached them anyway, in the direction favoring the state defendants, incorrectly under binding Colorado law; and a documented sequence in this case in which, after Defendant's counsel placed Plaintiff's public criticism of this Court's own prior rulings into the record, this Court referred a ripe, unopposed, fully briefed motion to the very magistrate judge Plaintiff had just separately challenged, rather than ruling on it — that, taken together, would cause a reasonable person, aware of all the facts, to question this Court's impartiality.

## II. LEGAL STANDARD

Section 455(a) requires disqualification "in any proceeding in which [the judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The standard is objective: recusal is required when "a reasonable person, knowing all the facts, would harbor doubts about the judge's impartiality." *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 659 (10th Cir. 2002) (quoting *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987)). Actual bias is not required — "the trial judge must recuse himself when there is the appearance of bias, regardless of whether there is actual bias." *Id.* (citing *Nichols v. Alley*, 71 F.3d 347, 350 (10th Cir. 1995)). Section 455(b)(1) separately requires disqualification where the judge "has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). See *Liteky*, 510 U.S. at 555

(adverse rulings alone rarely satisfy either standard). They may do so, however, where they "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* A documented pattern spanning multiple proceedings is properly evaluated under that standard as a whole, rather than ruling by ruling.

## III. FACTUAL GROUNDS

### A. This Court's Direct Personal Reversal on the Same Underlying Matter Nissan's Counsel Later Weaponized

In September 2019, this Court — then a magistrate judge — granted summary judgment against Plaintiff in *Brooks v. Colorado Department of Corrections*, No. 13-cv-02894-SKC ("*Brooks I*"), holding that the provision of adult diapers to Plaintiff, "though not ideal, is a reasonable accommodation that would provide him meaningful access to his meals" as a matter of law. See ECF No. 279 at 21 (Sept. 30, 2019). On September 8, 2021, the Tenth Circuit reversed in a published, precedential opinion, holding that reasonableness of an ADA accommodation is a mixed question of law and fact and that genuine factual disputes — including whether diapers provided meaningful access, and dignitary and safety concerns — required resolution by a jury, not summary disposition by the court. See *Brooks v. Colo. Dep't of Corrs.*, 12 F.4th 1160 (10th Cir. 2021). On remand, a jury returned a $3.5 million verdict in December 2022 — the largest ADA damages verdict ever obtained by a prisoner in United States history — and specifically found that Plaintiff had been unconstitutionally denied access to meals, categorically rejecting this Court's own characterization that the diaper accommodation gave him "meaningful access to his meals." This was not a technical or close reversal — it was a finding that this Court had resolved a genuinely

disputed factual question of basic human dignity in favor of the state, incorrectly, as a matter of law.

Nor was the 2019 summary judgment order the first time this Court left Plaintiff's meal-access crisis unresolved. On September 28, 2018, while housed in dry cells with no in-cell toilet, Plaintiff moved for a preliminary injunction compelling a workable meal accommodation, supported by a sworn declaration stating that he had soiled himself thirteen times in the two weeks preceding the filing, that he faced having no food to eat beginning that month absent relief, and that CDOC's own ADA coordinator had granted a comparable accommodation to another inmate at the same facility around the same time while denying one to Plaintiff. See *Brooks I*, ECF No. 221; ECF No. 221-1. That motion was never ruled on. It sat before this Court, then a magistrate judge, for twelve months, until it was denied as moot — together with "any remaining pending motions" — by the same September 30, 2019 order that found adult diapers gave Plaintiff "meaningful access to his meals." ECF No. 279 at 28. This Court's own order acknowledged, in addressing Plaintiff's argument against mootness, that the meal accommodation it relied on could be revoked by CDOC at any time. See ECF No. 279 at 15 n.6. Having left Plaintiff's request for injunctive protection against exactly that risk undecided for a year, this Court then treated the risk it never foreclosed as too speculative to matter.

Standing alone, under *Liteky*, this would not support recusal. It is included here because Nissan's own counsel — not Plaintiff — placed this exact history before this Court as a weapon, as set forth in Section III.D below, making this Court's own

history with the underlying facts directly relevant to the appearance question now before it.

**B. Six and a Half Months of Undecided, Fully Briefed, Statutorily Time-Limited Relief in the Companion Case**

In the companion case, *Brooks v. Colorado Department of Corrections, et al.*, No. 25-cv-02610-SKC-STV ("*Brooks II*"), Plaintiff petitioned on November 25, 2025 under Colorado's spurious lien statute, C.R.S. § 38-35-204 — a statute the Colorado Court of Appeals has held requires resolution within fourteen to twenty-one days precisely because a recorded lien inflicts continuing harm for every day it remains of record. See *Fiscus v. Liberty Mortg. Corp.*, 2014 COA 79, ¶¶ 29–30, 373 P.3d 644 (Colo. App. 2014). Rather than resolve that petition directly within the statutory window, this Court referred it to Magistrate Judge Varholak. This Court had ordered supplemental jurisdictional briefing due January 21, 2026; Magistrate Judge Varholak issued his Report and Recommendation that same day, before the ordered briefing was even filed — Defendants' own counsel, filing their brief that afternoon, noted in its opening footnote that the Recommendation had already issued and that their filing was therefore "moot." *Brooks II*, ECF No. 42 at 1 n.1. The Recommendation denied the petition on four separate procedural and jurisdictional theories that neither party had briefed or argued — including a holding that the claim, not being "a claim based on federal law," could not be heard absent diversity jurisdiction. See *Brooks II*, ECF No. 41 at 5–6 & n.2. Both sides objected to that reasoning; Defendants themselves stated they "do not object to a dismissal of the Petition, but they do object to [the] Recommendation's reasoning." *Brooks II*, ECF No.

47 at 1–3. Plaintiff's objections were fully briefed before this Court as of February 4, 2026. As of the date of this motion, 267 days have passed since the petition was filed — more than six and a half months of that spent on fully briefed objections awaiting this Court's ruling — against a statute that itself demands resolution in fourteen to twenty-one days. Plaintiff moved to expedite on May 18, 2026. See *Brooks II*, ECF No. 67. That motion itself has now been pending over three months without a ruling. This delay leaves Plaintiff in an untenable position: having invoked federal jurisdiction and litigated this identical claim in this Court for close to nine months, Plaintiff cannot simply abandon the federal petition and refile the same claim in state court without inviting dismissal under Colorado's rule against claim-splitting, and any eventual ruling by this Court risks preclusive effect under *res judicata* on further state-court relief. The delay is not neutral; it is closing every avenue of relief at once.

The same pattern is repeating on the same lien — compounded now by a direct self-contradiction. On May 22, 2026, Plaintiff moved for a preliminary injunction declaring that lien void and requiring its immediate removal from the public record pending final judgment — relief that sought no money whatsoever. See *Brooks II*, ECF No. 68. This Court referred that motion to the same Magistrate Judge Varholak. On July 16, 2026, Magistrate Judge Varholak recommended the motion be denied, reasoning that "Ex parte Young cannot apply to the relief sought here because the relief is purely a retrospective effort to cure a past injury." *Brooks II*, ECF No. 75 at 27. That directly contradicted Plaintiff's express argument that the lien is not a past act but "an ongoing self-executing constitutional deprivation" inflicting new harm

each day it remains on the public record. Seven pages later in that same Recommendation, Magistrate Judge Varholak went further: he credited that same C.R.S. § 38-35-204 procedure — the statute he had held five months earlier "is not a claim based on federal law" and could not be heard in federal court at all absent diversity jurisdiction, *Brooks II*, ECF No. 41 at 5–6 & n.2 — as the constitutionally adequate post-deprivation remedy satisfying due process on Plaintiff's separate claims. See *Brooks II*, ECF No. 75 at 20. A remedy this Court's own magistrate judge had already ruled he lacked jurisdiction to hear became, five months later and without any acknowledgment of the conflict, the specific process the Constitution supposedly required. That recommendation remains pending before this Court, on the same lien, under the same delay-then-mischaracterization pattern.

**C. This Court's Own Standard for Evaluating a Closely Analogous Recusal Motion**

In the related case *Brooks v. DraftKings, Inc.*, No. 1:26-cv-01692-SKC-STV, Plaintiff and co-plaintiffs moved to disqualify Magistrate Judge Varholak based on a documented pattern of deciding dispositive questions on grounds no party raised. This Court, ruling on the objection to the denial of that motion, characterized the recusal theory as resting on "adverse rulings" and stated it would be "hard pressed to believe" Plaintiff would have sought recusal had Magistrate Judge Varholak ruled in his favor. See DraftKings, ECF No. 44. That characterization did not address the actual record: the two facts most central to the motion — that the Report and Recommendation issued before the parties' court-ordered supplemental briefing deadline had passed, and that Defendants, despite prevailing, separately objected to

the same unargued reasoning — were generated by the prevailing defendants, not by Plaintiff. This matters here for a specific reason: it demonstrates that when presented with a documented, opposing-counsel-corroborated pattern, this Court applied a subjective "would you be upset if you'd won" test rather than the objective § 455(a) standard. A reasonable person evaluating this Court's likely approach to a recusal motion directed at itself is entitled to weigh how this Court has already treated a substantively similar motion once before.

**D. The Timeline in This Case**

On June 22, 2026, Nissan's counsel, appearing for the first time, devoted two pages of its first filing in this case — not to the merits of a Rule 55(c) motion, but to a public quote in which Plaintiff criticized this Court's legal reasoning in the CDOC matter, presented as evidence of improper litigation motive. See ECF No. 19 at 14–15. This Court did not need counsel's disclosure to know what that history actually was: the criticized reasoning was this Court's own, had already been reversed once by the Tenth Circuit, led directly to the $3.5 million verdict, and the specific 2025 findings underlying the criticized statement were, at the time of filing, on appeal before the very panel that would vacate them the following day. This Court was in the best position of anyone in this litigation to recognize that what Nissan's counsel presented as evidence of Plaintiff's improper motive was, in substance, a description of this Court's own history with the underlying facts.

Plaintiff's Motion for Default Judgment, ECF No. 16, has been pending before this Court since May 5, 2026 — the same day default was entered — supported by

eighteen exhibits and a sworn affidavit, and unopposed from the moment it was filed. By July 7, 2026, when Nissan's own first Motion to Set Aside Default, ECF No. 19, became fully briefed, this Court had a complete record on both motions and could have ruled on either or both — meaning ECF No. 16 had already been sitting fully ripe for over a month before this Court took any further action. On August 14, 2026, Nissan withdrew ECF No. 19, confirmed in writing by its own counsel as caused by the First Amended Verified Complaint's damages exposure; for five days afterward, ECF No. 16 was the only motion pending before this Court — unopposed, fully briefed, ripe for ruling. On August 18, 2026, Nissan filed a second Motion to Set Aside Default, ECF No. 25, seeking substantially the same relief this Court had personally adjudicated the first time, without referral to any magistrate judge. Plaintiff filed an opposition and a supplemental brief the same day, both requesting expedited resolution given Plaintiff's documented, worsening housing insecurity. On August 19, 2026 — 107 days after ECF No. 16 was filed — rather than ruling on the fully briefed ECF No. 16 or addressing Plaintiff's request for expedited treatment, this Court referred ECF No. 25 to Magistrate Judge Varholak and set a hearing for September 23, 2026 — over a month away — without addressing Plaintiff's same-day motion asking this Court to retain the matter, ECF No. 29.

The referral itself is worth isolating. Three weeks earlier, on July 20, 2026, Plaintiff had moved to disqualify Magistrate Judge Varholak in the DraftKings matter, because — as that motion documented — the central constitutional and post-deprivation-remedy questions already pending in *Brooks II* were about to recur there,

and Magistrate Judge Varholak had already shown, on those exact questions, that he could not be relied on to apply the law to the facts: a pattern in which he had twice decided dispositive questions on grounds neither party argued, including, in *Brooks II*, a January 6, 2026 hearing that both sides later confirmed did not inform the ruling that followed it fifteen days later, and a directly self-contradictory pair of holdings on the same statute five months apart. See DraftKings, ECF No. 40 at 4, 6, 9. This Court was the tribunal that ruled on the objection to that recusal motion's denial. When Nissan refiled its motion to set aside default on August 18, 2026, this Court referred that motion to the same magistrate judge, for a hearing, rather than ruling on it directly or on Plaintiff's pending ECF No. 16.

Plaintiff does not ask this Court to find that the referral was coordinated with Magistrate Judge Varholak's conduct in the other matters and the record does not establish that. What the record does establish does not require this Court to draw an inference or accept Plaintiff's characterization of disputed events — because the facts are not disputed. Nissan's own filings admit the key point: ECF No. 25 itself acknowledges that the assignment date represented in the sworn Ross affidavit supporting ECF No. 19 was false. Where a defaulting party's own filings have already resolved the operative facts against it, continuing to extend that party additional procedural opportunity — a second motion, a hearing, referral to a magistrate judge whose reliability Plaintiff had just separately challenged — while Plaintiff's parallel and equally undisputed requests for expedited relief go unaddressed, is not neutral case management. It is a documented asymmetry, not an inference.

**E. This Court's Own Order Acknowledged It Lacked Jurisdiction to Reach Two Questions That Favored Defendants, Reached Them Anyway, and Got Them Wrong Under Erie**

This Court's original order in the CDOC matter held that it lacked jurisdiction over the actions of the Nineteenth Judicial District, stating that "the 19th Judicial District is not a party to this case, and therefore, the Court has no jurisdiction over it or its actions," and that any discussion of its authority "would be little more than an advisory opinion." *Brooks I*, ECF No. 498 at 2. Having said so, this Court's order nonetheless went on to observe that the Nineteenth Judicial District qualifies as a "state agency" by importing a definition from a separate Risk Management statute into Colorado's intercept statute, id. at 4 n.3, and — per the Tenth Circuit's own later description of what it vacated — proceeded to hold that the ADA did not preempt Colorado's intercept scheme as applied. Those were the two findings Defendants' subsequent motion to dismiss in the companion case relied on as its entire substantive foundation. On June 23, 2026, the Tenth Circuit affirmed the bottom-line satisfaction holding but vacated both findings for want of jurisdiction, holding: "Having concluded that Defendant satisfied the judgment, neither we nor the district court have jurisdiction to consider the actions of the Nineteenth Judicial District or to consider whether Colorado's intercept statute conflicts with the ADA for preemption purposes." *Brooks v. Colo. Dep't of Corr.*, No. 25-1256, slip op. at 10 (10th Cir. June 23, 2026) (petition for panel rehearing and rehearing en banc filed June 25, 2026, and pending; notice of supplemental authority as to Judge Varholak's contradictions filed July 27, 2026, and pending).

This Court's order did not merely reach beyond a boundary later identified on appeal. It identified the boundary itself, in its own words, and crossed it anyway — in the direction that favored the state defendants. On the merits, it did so incorrectly: the "state agency" finding required importing a definition from C.R.S. § 24-30-1502, a Risk Management statute limited by its own terms to Part 15 of Article 30, into C.R.S. § 24-30-202.4, the intercept statute in Part 2 of the same article, contrary to binding Colorado authority holding that "[t]he judicial branch is fundamentally not an executive body and logically not a regulatory body," and therefore not a "state agency." *Dunafon v. Krupa*, 2020 COA 149, ¶ 24 (Colo. App. 2020). Under *Erie's* doctrine, this Court was bound to follow Colorado's own courts on that question of state law. See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). It did not.

That is the ruling Plaintiff publicly criticized and that Nissan's counsel placed before this Court on June 22, 2026 as evidence of Plaintiff's supposedly improper motive — a ruling this Court's own order had already flagged as beyond its jurisdiction to make, reached anyway, in a way that helped the party opposing Plaintiff, and reached incorrectly on the state-law question actually before it.

**F. What This Pattern Has Cost**

This is not an abstract pattern of procedural delay. Plaintiff has told this Court, in writing, that he faces homelessness beginning September 1, 2026. He has asked this Court, repeatedly and specifically, for a ruling that would have moved toward eliminating that harm: a decision on a motion that has been ripe and unopposed since the day it was filed, May 5, 2026 — 107 days ago. That request did not require this

Court to resolve a single disputed question of fact. Instead of ruling on it directly, or addressing Plaintiff's request for expedited treatment, this Court referred the newly filed motion to the magistrate judge whose conduct Plaintiff had just challenged in a related case — for a hearing five weeks away, and one that, based on Plaintiff's own experience with this Court's motions practice, is likely to take another six to nine months to actually resolve. In effect, this Court has foreclosed any possibility of resolution before Plaintiff's homelessness begins and lengthens and has forced him to choose between continuing to wait on a default judgment this Court could enter today, or abandoning that path to seek emergency preliminary injunctive relief instead — relief that, based on this Court's and Magistrate Judge Varholak's handling of every other request Plaintiff has brought before them, offers no greater assurance of a timely or accurate ruling. This is not docket management. It is locking Plaintiff out of the courthouse and substituting delay for any decision at all.

Extending further process to the party whose own filings concede the operative facts is itself the asymmetry this record shows. The first falsehood — the assignment date in Nissan's first motion — is now admitted. Plaintiff has separately argued that the second motion's own stated justification was pretextual: filed four days after Nissan reviewed a $1.1 million supplemental damages brief and after Plaintiff's $350,000 settlement offer expired by its own terms the moment any motion was filed, Nissan filed ECF No. 25 anyway while simultaneously offering mediation — conduct Plaintiff contends was aimed at gaining access to a damages determination it had no right to participate in, not at defending the case on the merits. See ECF No. 26.

Nissan's counsel has also been accused, in a filing already before this Court, see ECF No. 20, of violating this Court's own Standing Order requiring counsel to treat parties "with courtesy and respect," Standing Order § A.2 (Jan. 1, 2026). While all of that has played out, Plaintiff's parallel and equally documented requests have gone unaddressed. Nissan has now received more process and consideration from this Court in three months than Plaintiff received across thirteen years of litigating a case in which he documented facing malnutrition, medical neglect, death, and now the imminent loss of his home. That is not an inference from silence. It is a pattern visible on the docket itself.

**IV. THIS PATTERN SATISFIES THE OBJECTIVE § 455(a) STANDARD**

None of the elements above, standing alone, would necessarily require disqualification. A reversal, even a significant one, is ordinary appellate correction. A single delay, even an unusually long one, might have an innocent administrative explanation. A single order applying an arguably incorrect standard to one recusal objection might be simple legal error, correctable on appeal. But the deep-seated-favoritism-or-antagonism standard governing this analysis does not evaluate a single ruling in isolation, see *Liteky*, 510 U.S. at 555, and here the pattern is not composed of unrelated, scattered events. It is the same judge, presiding over overlapping matters arising from the same underlying facts, whose own prior ruling on those facts was reversed for legal error and partially vacated for want of jurisdiction this Court's own order had already acknowledged; who has been sitting on a statutorily time-limited, fully briefed motion in the companion case for over six months without

explanation; who applied a legally incorrect, subjective standard when a closely analogous recusal argument was raised against his own magistrate judge; and who, in this case, left a ripe and unopposed motion undecided, then referred a newly filed motion to the very magistrate judge whose reliability Plaintiff had just separately challenged, rather than addressing Plaintiff's request for expedited relief. A reasonable person aware of all of these facts would harbor doubts about this Court's continued impartial handling of this case.

Basic human decency as to Plaintiff has been repeatedly ignored. Harm has been compounded for no reason grounded in law or fact. A statutory deadline was blown past by six months and counting. The objective standard this Circuit requires collapsed into a subjective one. This Court's own acknowledged jurisdictional limits were crossed anyway, in directions that favored every party opposing Mr. Brooks. A man facing homelessness was met not with a ruling, but with another hearing that may not be resolved for six months to a year. This is not justice delayed. It is delay standing in the place where justice was supposed to be. Every federal judge takes an oath to "administer justice without respect to persons, and do equal right to the poor and to the rich." 28 U.S.C. § 453. That oath does not bend for a prisoner, a man with no home, nor one given any basic decency. This pattern shows that here, it has. The pattern is undeniable and Plaintiff will not stand for it any longer.

## V. RELIEF REQUESTED

Plaintiff respectfully requests that this Court disqualify itself pursuant to 28 U.S.C. §§ 455(a) and 455(b)(1) from further proceedings in this action, and that this

matter be reassigned to a different district judge pursuant to this District's random reassignment procedures.

Respectfully submitted on this 20th day of August 2026.

s/Jason T. Brooks______________
Jason T. Brooks
636 Barberry Drive
Longmont, CO 80503
(925) 366-0803
geniusjasonbrooks@gmail.com
*Pro Se Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August 2026, a true and accurate copy of the foregoing **PLAINTIFF'S MOTION FOR DISQUALIFICATION OF JUDGE S. KATO CREWS PURSUANT TO 28 U.S.C. §§ 455(a) AND 455(b)(1)** was served on all parties via the Court's CM/ECF system.

s/ Jason Brooks________________
***Jason Brooks***
636 Barberry Drive
Longmont, CO 80503
Telephone: (925) 366-0803
E-mail: geniusjasonbrooks@gmail.com
Plaintiff, *pro se*