**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-01385-SKC-STV

JASON BROOKS

Plaintiff(s),

v.

NISSAN NORTH AMERICA, INC,

Defendants.

---

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 21, 2026 MINUTE ORDER [ECF NO. 33]**

---

Plaintiff Jason Brooks, appearing pro se, respectfully submits this Motion for Reconsideration of the Court's August 21, 2026 Minute Order [ECF No. 33], and in support states as follows:

## I. INTRODUCTION

On August 20, 2026, Plaintiff filed a Motion to Disqualify [ECF No. 32]. The next day, August 21, 2026, this Court denied it. That same order, in the same four pages, did three more things: it denied Plaintiff's Motion for Reconsideration of the Referral Order [ECF No. 29] on the ground that referral to a magistrate judge is "committed solely to this Court's discretion" — and then, one paragraph later, the Court sua sponte withdrew that exact referral itself, without explanation, to rule on

Nissan's Second Motion to Set Aside Default directly. It then granted that motion [ECF No. 25], on a record that does not support the result the Order describes.

Plaintiff states his position directly: this is not a coincidence of timing. A recusal motion was filed and denied in twenty-four hours. A referral the Court had just told Plaintiff was untouchable was untouched — until the next paragraph, when the Court touched it itself, in Plaintiff's disfavor. And the ruling that followed rests on a description of the record that does not match the record. Plaintiff is entitled to say so and does.

This motion does not ask the Court to revisit its recusal analysis — that is addressed separately in Plaintiff's forthcoming petition for a writ of mandamus to the Tenth Circuit. This motion addresses the merits of ECF No. 33's ruling on ECF No. 25, on its own terms, because that ruling does not engage the arguments Plaintiff actually made and misstates the ones it purports to reject.

## I. STANDARD OF REVIEW

No final judgment has entered in this case. The Order granting ECF No. 25 is an interlocutory ruling, and "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). D.C.COLO.LCivR 7.1(d) permits a motion to reconsider such an order on a showing of clear error or manifest injustice — a lower bar than the Rule 59(e)/60(b) standard that applies to final judgments, precisely because interlocutory rulings remain within the Court's ongoing control. Both are met here: the Order rests on a

mischaracterization of the record on the one issue it purports to resolve against Plaintiff (meritorious defense), and it does not address multiple dispositive arguments Plaintiff actually raised.

## II. THE ORDER DOES NOT ADDRESS THE ARGUMENTS PLAINTIFF ACTUALLY RAISED

Plaintiff's Opposition to ECF No. 25 [ECF No. 26] raised at least six arguments that would independently require denial of Defendant's motion. The Order does not address any of them.

*First* — culpable conduct alone is sufficient to deny a motion to set aside default, without regard to prejudice or meritorious defense. See *Hunt v. Ford Motor Co.*, 65 F.3d 178 (10th Cir. 1995); *United States v. Timbers Pres., Routt Cnty., Colo.*, 999 F.2d 452, 454 (10th Cir. 1993). Nissan's own motion admits it had actual internal knowledge of this lawsuit on April 20, 2026 — eleven days before the May 1, 2026 response deadline — and still did not respond. That is culpable conduct under *Hunt* as a matter of law, independent of any finding on "willfulness" in the colloquial sense the Order applies. The Order's willfulness discussion addresses only Nissan's pre-litigation settlement conduct; it never engages this argument at all.

*Second* — judicial estoppel. Nissan voluntarily withdrew its first Motion to Set Aside Default [ECF No. 19] on August 14, 2026, and this Court granted that withdrawal the same day. See ECF No. 23. "Judicial estoppel is an equitable doctrine invoked by a court at its discretion" to prevent a party from asserting a position inconsistent with one it successfully maintained in an earlier proceeding. See *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). All three of the factors that typically

inform that discretion are present here: Nissan's current position — that it is entitled to the relief ECF No. 19 sought — is clearly inconsistent with the position it took four days earlier; this Court accepted that earlier position, granting the withdrawal the same day it was filed; and Nissan would derive an unfair advantage from now being permitted to relitigate the identical relief on revised grounds after benefiting from the clean withdrawal. The Order does not address this argument, or the discretion it calls on the Court to exercise. Plaintiff states the obvious: Nissan is a multi-billion-dollar, multinational corporation represented by retained outside counsel, and Plaintiff is a pro se litigant the Court is clearly frustrated with. The doctrine exists precisely to stop a party from taking one position to secure a court's approval and the opposite position four days later once that approval is banked. It was not applied here. When the party doing the flip-flopping is a corporation of Nissan's size and the party absorbing the cost of it is not, deference should not be the default. It was the default anyway.

*Third* — Plaintiff's Opposition moved for Rule 11 sanctions on three specific grounds: that ECF No. 19 contained a materially false statement about when Nissan learned of this lawsuit; that ECF No. 25 was filed for an improper purpose; and that footnote 1 of ECF No. 25 violates Colo. RPC 3.5(b). The Order does not mention Rule 11, sanctions, or any of these three grounds. Nothing in the Order's disposition — granting ECF No. 25 and denying ECF Nos. 16 and 27 as moot — resolves a Rule 11 motion and the Order does not say it does.

*Fourth* — footnote 1 of ECF No. 25 states: "Should the Court so require or permit, Nissan is willing to participate in an in camera hearing with the Court to discuss its discovery of information that caused it to immediately direct the withdrawal of its first Motion to Set Aside the Judgment ... and file the instant Motion." Plaintiff's Opposition expressly objected to any such proceeding and asked the Court to require any explanation to be made in a public filing Plaintiff could see and respond to. The Order does not rule on that objection and nothing in the record indicates whether any such conversation occurred, was offered, or was declined.

*Fifth*, and most directly — the Order's treatment of meritorious defense mischaracterizes what Plaintiff actually argued. That is addressed in full in Section IV below.

*Sixth* — Nissan's first filing in this litigation violated this Court's own Standing Order. ECF No. 19, at pages 14-15, placed before this Court Plaintiff's public criticism of this Court's handling of an unrelated prior case — quoting a news article in which Plaintiff stated he had "lost all respect for [the Court's] decision making" — offered not as relevant to any Rule 55(c) factor, but to characterize Plaintiff's damages demand as a "windfall" attempt by a litigant with "extensive federal litigation experience." Plaintiff's Opposition [ECF No. 20] objected on the record that this violated Standing Order for Civil Cases § A.2, which requires counsel to treat parties "with courtesy and respect" and states the Court "expects nothing less." Rather than withdraw the material, O'Hagan Meyer repeated it in ECF No. 22.

The Order does not mention this conduct, this violation, or Plaintiff's objection to it anywhere.

A ruling that grants relief without addressing the specific, dispositive arguments raised against it is not a considered ruling on the merits. Plaintiff is entitled to a ruling that engages what he actually filed, but understands fully that will likely not occur in front of this Court.

**III. THE ORDER'S WILLFULNESS FINDING RESTS ON A SWORN STATEMENT NISSAN'S OWN COUNSEL ADMITS WAS FALSE**

The Order finds "no indication that Defendant willfully defaulted," based on Nissan's pre-litigation settlement conduct. That conduct — settlement negotiations and a $2,500 payment between December 2024 and February 26, 2025 — predates the very harm this lawsuit is about. The vehicle's second mechanical failure, the one that led to the arbitration demand, the BBB claim, the revocation notice, and ultimately this lawsuit, did not occur until March 1, 2025 — after that settlement conduct had already concluded. Nissan's willingness to negotiate a dispute that had not yet happened, more than a year before this lawsuit was filed and fourteen months before default was entered, says nothing about whether Nissan's failure to respond to a federal complaint in 2026 was willful. It has nothing to do with this case at all. What the Order does not mention is what actually happened between ECF No. 19 and ECF No. 25 — the only events that actually bear on willfulness — and it should have.

Nissan's first Motion to Set Aside Default [ECF No. 19] was supported by a declaration from Kimberly Ross, signed under penalty of perjury on June 22, 2026,

which stated that "[o]n or about June 17, 2026, Nissan's legal department became aware of the Default" and that the failure to respond "was not intentional, willful, or the result of any deliberate decision to ignore the litigation," but instead "solely the result of an inadvertent systems-level breakdown." Every part of that good-faith narrative depended on the June 17 date — a defendant that only learns of a lawsuit six weeks after default was entered has a plausible administrative-lapse story. A defendant that knew eleven days before its response was even due does not.

Nissan's own Second Motion [ECF No. 25] admits the June 17 date was false: "Nissan discovered that the internal assignment occurred on April 20, 2026, rather than June 2026, and therefore, hereby corrects the previously tendered inaccurate information provided in its first Motion." April 20, 2026 is eleven days before the May 1, 2026 response deadline. The sworn declaration underlying ECF No. 19 was false on the one fact that mattered to the willfulness analysis, and Nissan's own counsel has now said so in a filing with this Court.

Nissan did not correct that sworn declaration. It withdrew the entire motion four days after Plaintiff transmitted notice of a forthcoming First Amended Verified Complaint alleging damages in excess of $6,000,000 and a Rule 11 safe-harbor letter — a timeline Nissan does not dispute — and it now offers a different explanation: that withdrawal followed its own "discovery" of the date error, an explanation it proposes, in footnote 1, to elaborate on to the Court privately rather than in a filing Plaintiff can see and answer. The record does not support that account, and the public filing does not reconcile it. Either way, nothing about that sequence was placed before

the Court in a sworn correction, an amended declaration, or any admission that the prior sworn statement was false — it appears in a footnote, as an offer of private explanation, in the motion that superseded the false declaration entirely.

None of this appears in the Order. The willfulness finding rests entirely on Nissan's pre-suit settlement conduct in late 2024 and early 2025 — a period that ended over a year before this lawsuit was filed — and never engages with the sworn misrepresentation Nissan's own subsequent motion admits was made about when it learned of this case. Plaintiff's Rule 11 motion directed at that misrepresentation was likewise never ruled on. See Section II above.

What this record shows is that the outcome here turned less on the law and facts actually argued and more on this Court's own view of Plaintiff. Plaintiff says that as a matter of principle, not anger, and nothing in saying it falls outside what an advocate is entitled to say to a court. This Court carries an enormous docket and Plaintiff does not fault it for that, nor does he ask it to rule quickly when conditions don't warrant it. He would rather this Court take the time it needs and get it right than rule fast and get it wrong. A denial of this motion that actually explains why the arguments in Sections II through V do not change the outcome would satisfy what Plaintiff was asking for. Plaintiff is not asking this Court for a favor. As Justice Ginsburg said, quoting the abolitionist Sarah Grimké, in her first oral argument before the Supreme Court: "I ask no favor... All I ask... is that they take their feet off our necks." Plaintiff asks the same — not a favor, only that the law and the facts he has actually argues be considered on the record, rather than answered with a

description of the record that does not match it. If this Court is going to rule against Plaintiff, let it be on the law and the facts. That is where this should be won or lost — not on this Court's opinion of Plaintiff or its patience for him. The disconnect between the arguments Plaintiff is making in front of this Court and the Orders that are resulting is what makes this ruling look pretextual — not Plaintiff's characterization of it, but the document's own contents. Plaintiff will stand up for that distinction and for the pursuit of justice it protects, regardless of how it affects all the litigation Plaintiff has before this Court, which Defendants caused.

## IV. THE ORDER'S DESCRIPTION OF DEFENDANT'S "MERITORIOUS DEFENSES" DOES NOT MATCH THE RECORD

The Order states, in full, on this point: "Plaintiff's only challenge to Defendant's alleged meritorious defenses is that Nissan has already admitted the claims by default. Such circular reasoning is not persuasive. Defendant has asserted plausible defenses based on the language and provisions in the lease contract, which should be settled on their merits." Neither sentence is accurate as a description of the record before the Court.

Nissan's own motion [ECF No. 25, § III.A.3] asserted six specific defenses: (1) enforceability of the lease's arbitration and dispute-resolution terms; (2) whether Plaintiff can establish the elements of the underlying defect claim; (3) the measure and recoverability of consequential damages; (4) whether the express contract bars quasi-contract relief; (5) whether the dispute sounds in tort at all, and whether it meets the outrageousness threshold for IIED; and (6) that "the allegations related to

credit reporting were not the result of any reporting by Nissan North America." At least two of these — the tort/outrageousness defense and the credit-reporting defense — have nothing to do with "the language and provisions in the lease contract." The Order's description does not match Nissan's own motion.

Nor did Plaintiff respond with the "circular reasoning" the Order describes. Plaintiff's Opposition [ECF No. 26, § V(D)] addressed each defense individually, by name, with citation: the arbitration defense, waived in writing by Nissan's own Arbitration Specialist and unenforceable under *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022); the unjust-enrichment defense, unavailable because the contract was terminated by revocation before the claim accrued, see *DCB Construction Co. v. Central City Development Co.*, 965 P.2d 115, 119-20 (Colo. 1998); the tort-conversion defense, misplaced because the CCPA, IIED, and bad-faith claims are independently pled, not converted contract claims; and the credit-reporting defense, rebutted on three independent grounds — that NMAC is Nissan's own wholly-owned captive finance subsidiary, as the CFPB itself has recognized, CFPB Consent Order, Docket No. 2020-BCFP-0017 (Oct. 13, 2020); that the existing record already shows Nissan North America directing NMAC-related conduct, including its own counsel's confirmation that "Nissan has directed us to withdraw" ECF No. 19, establishing the control element of agency under *Montoya v. Grease Monkey Holding Corp.*, 883 P.2d 486 (Colo. App. 1994), aff'd on other grounds sub nom. *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468 (Colo. 1995); and that any such defense was waived by the default itself under *Olcott v. Delaware Flood Co.*, 327 F.3d 1115 (10th Cir. 2003). That

is not "Nissan has already admitted the claims by default" repeated in a circle. That is a defense-by-defense rebuttal the Order does not mention, let alone reject on its merits. A finding that a party's argument is "circular reasoning" requires that the argument actually be circular. Here it was not and the record establishes that on its face.

## V. THE ORDER IS INTERNALLY INCONSISTENT ON THE REFERRAL QUESTION

Two consecutive sections of the same four-page Order cannot be reconciled. In denying Plaintiff's Motion for Reconsideration of the Referral Order [ECF No. 29], the Order states that "whether to refer matters to a magistrate judge is committed solely to this Court's discretion" and that "this Court will continue to refer motions and other issues to [Magistrate Judge Varholak's] wise counsel as it deems fit." The very next section of the same Order begins: "Based on its own review of the docket, the Court sua sponte withdraws its referral (Dkt. 28) and takes up Defendant's Motion to Set Aside Default." No explanation is given for why the referral the Court had just described as a matter of continuing discretion was, in the same document, immediately reversed — nor why that reversal happened to precede a ruling against the party who had asked for exactly that outcome one paragraph earlier and been told no. Plaintiff is entitled to know why the answer changed within the same order, on the same referral, without a single intervening fact, but fully understands the Courts response.

Plaintiff pushed for exactly this: an expedited ruling, under D.C.COLO.LCivR 7.1(d), rather than months added by referral to a magistrate judge. Plaintiff fully

understands the Court's response to that request. He got speed. What he received, twenty-four hours after asking this Court to examine its own conduct, was not a reasoned ruling on the arguments he had raised — it was every motion he had pending closed in the same document: recusal denied, referral reconsideration denied, and the one ruling that actually mattered decided against him, without engaging a single argument on the merits set out in Sections II through V above. Plaintiff states plainly what it clearly appears to be: not the careful consideration he has asked this Court for, but its wrath, delivered fast, aimed at the party who asked to be heard. If the intent was to silence him, it will not. Plaintiff will not stop asking this Court — and, if necessary, a reviewing court — to look at what it has actually done. If this Court wants to rule against Plaintiff, let it do so in good faith — on the law and the facts he has actually argued, addressed honestly rather than mischaracterized. That is a fight Plaintiff will always accept, win or lose. What just occurred was not that.

## VI. RELIEF REQUESTED

Plaintiff respectfully requests that this Court: (a) reconsider and vacate the portion of ECF No. 33 granting Defendant's Second Motion to Set Aside Default [ECF No. 25]; (b) in the alternative, issue a ruling that expressly addresses the culpable-conduct, judicial-estoppel, and defense-by-defense arguments set forth in Sections II through IV above; (c) rule on Plaintiff's Motion for Rule 11 Sanctions [ECF No. 26], which was not addressed or mooted by ECF No. 33; (d) reconcile or explain the inconsistency between the denial of ECF No. 29 and the Court's sua sponte

withdrawal of the same referral one paragraph later; and (e) grant such other and further relief as the Court deems just.

Respectfully submitted on this 21st day of August 2026.

s/Jason T. Brooks
Jason T. Brooks
636 Barberry Drive
Longmont, CO 80503
(925) 366-0803
geniusjasonbrooks@gmail.com
*Pro Se Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of August 2026, a true and accurate copy of the foregoing **PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 21, 2026 MINUTE ORDER [ECF NO. 33]** was served on all parties via the Court's CM/ECF system.

s/ Jason Brooks________________
***Jason Brooks***
636 Barberry Drive
Longmont, CO 80503
Telephone: (925) 366-0803
E-mail: geniusjasonbrooks@gmail.com
Plaintiff, *pro se*