**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-01385-SKC-STV

JASON T. BROOKS

Plaintiff(s),

v.

NISSAN NORTH AMERICA, INC.

Defendant.

---

# DEFENDANT NISSAN NORTH AMERICA, INC.'S MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

---

Defendant Nissan North America, Inc. ("Nissan"), by its undersigned counsel, O'Hagan Meyer, PLLC, moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Verified Complaint and Demand for Jury Trial filed April 1, 2026 (the "Complaint") in its entirety, with prejudice. In support, Nissan states as follows:

## CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a) and Section C.1 of Judge Crews' Standing Order for Civil Cases, undersigned counsel certifies that, on September 1, 2026, he emailed Plaintiff to set a telephonic conferral regarding this Rule 12(b)(6) motion, identified that Nissan intended to seek dismissal of all counts, and invited Plaintiff to discuss whether the issues could be narrowed or resolved. Plaintiff responded the same day by email in lieu of a call, objected generally to Nissan's anticipated motion, indicated that he would not agree to narrow or withdraw any claims, and advised that he intends to file a First Amended Complaint. The relief requested in this Motion is therefore opposed.

## I. INTRODUCTION

This case arises from Plaintiff's dissatisfaction with a leased vehicle, Nissan's efforts to address Plaintiff's concerns, and the parties' subsequent dealings

concerning the vehicle's repurchase. Plaintiff attempts to transform those circumstances into seven separate causes of action seeking hundreds of thousands of dollars in damages. But even accepting Plaintiff's factual allegations as true, the Complaint fails to state a claim as a matter of law.

The pleading does not cross the line from conceivable to plausible. Count I for violation of the Magnuson-Moss Warranty Act ("MMWA") does not plead facts showing a breach by Nissan after the parties entered into a settlement and release of claims, and because any warranty-based claim under state law therefore fails, so too does Plaintiff's MMWA claim. Count II for breach of contract and the implied covenant of good faith and fair dealing alleges breach of the lease against Nissan while simultaneously conceding that the lease was with Valley Nissan and assigned to Nissan Motor Acceptance Company ("NMAC"), not Nissan. Count III for violation of the Colorado Consumer Protection Act ("CCPA") asserts deceptive practices without facts showing a requisite false statement by Nissan or a public impact theory grounded in the allegations. Count IV seeks unjust enrichment while admitting the existence of a valid, express lease structure. Count V pleads negligent misrepresentation without identifying a specific false statement by Nissan beyond an advertised range figure, makes no showing that Nissan failed to exercise reasonable care, and, at most, is premised on nonactionable advertising puffery. Count VI attempts to recast alleged dispute resolution conduct as "bad faith and abuse of process," but neither identifies any judicial process that Nissan allegedly misused nor alleges facts showing that Nissan employed legal process for an ulterior purpose

unrelated to the legitimate objectives of dispute resolution. Count VII for intentional infliction of emotional distress fails because the alleged conduct, even accepted as true, does not meet Colorado's exceptionally high threshold for outrageous conduct.

Accordingly, and as set forth in greater detail below, each of Plaintiff's claims fail as a matter of law and the Court should dismiss all of Plaintiff's claims with prejudice.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that on October 31, 2024, he leased a 2024 Nissan Ariya from Valley Nissan in Longmont, Colorado. Compl. ¶ 1. The lease was assigned to and serviced by NMAC. *Id*. Plaintiff alleges that he agreed to make 24 monthly lease payments of $418.66 and that the lease transaction included a capitalized cost reduction derived in substantial part from electric vehicle incentive credits. Compl. ¶ 3.

Plaintiff alleges that Nissan marketed the vehicle with an advertised driving range of 216 miles and that he relied on those representations when deciding to enter into the lease. Compl. ¶ 5. Plaintiff further alleges that the vehicle suffered four separate breakdowns beginning on December 24, 2024, when the vehicle had approximately 3,649 miles. Compl. ¶¶ 6-7. Plaintiff contends that the vehicle was out of service for a cumulative total of 51 days, including 36 business days. Compl. ¶ 8. Plaintiff alleges that, following the third breakdown, Plaintiff and Nissan entered into a settlement agreement under which Nissan paid Plaintiff $2,500 in exchange for a release of claims arising from the first three breakdowns through February 26,

2025. Compl. ¶ 12. Plaintiff further alleges that the vehicle experienced a fourth breakdown on March 1, 2025. Compl. ¶ 14.

Plaintiff also alleges that the vehicle did not achieve its advertised range in certain operating conditions. According to the Complaint, the vehicle's range was reduced in cold weather and at highway speeds and Nissan allegedly failed to disclose those limitations before the lease transaction. Compl. ¶¶ 17-20. Plaintiff asserts that he would not have entered into the lease had he known the vehicle's alleged real-world performance characteristics. Compl. ¶ 20.

The Complaint further alleges that Nissan made repurchase offers after the fourth breakdown. Compl. ¶¶ 22-23. Plaintiff alleges that Nissan initially presented a repurchase calculation that was later revised and that the revised offer required Plaintiff to pay money in connection with surrendering the vehicle. Compl. ¶ 23. Plaintiff contends that the repurchase proposals did not compensate him for alleged consequential losses, including lost income and other claimed damages. *Id*.

Plaintiff additionally alleges that he attempted to pursue dispute resolution under the lease's arbitration provision. According to the Complaint, Plaintiff initiated a proceeding with JAMS, and Plaintiff alleges that Nissan failed to participate in that proceeding or pay certain arbitration-related fees. Compl. ¶¶ 25, 28-29. Plaintiff also alleges that he later submitted a claim through the BBB AUTO LINE program. Compl. ¶¶ 26-28. The Complaint further alleges that Nissan's handling of the dispute negatively affected Plaintiff's credit profile. Compl. ¶¶ 30-36. Plaintiff claims that a derogatory lease account reporting entry resulted in adverse credit consequences,

including the closure or non-renewal of certain credit accounts and allegedly increased costs associated with obtaining replacement transportation. *Id.*

Finally, Plaintiff alleges that the lease transaction incorporated approximately $15,600 in federal and/or state electric vehicle tax credit benefits. Compl. ¶ 38. Plaintiff alleges that Nissan or NMAC received and retained those incentives and did not account for them in connection with its repurchase calculations. Compl. ¶¶ 39, 42.

## III. LEGAL STANDARD

A complaint challenged under Rule 12(b)(6) must plead factual content sufficient to raise the asserted right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007). A plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels, conclusions, or a formulaic recitation of elements. *Id.* at 555. Courts do not weigh trial evidence at this stage; they determine whether the complaint alone is legally sufficient to state a claim. *HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*, 805 F. Supp. 2d 1115, 1119 (D. Colo. 2011), citing *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). Pro se pleadings are construed liberally, but the Court does not act as an advocate for the pro se litigant. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Pro se status also does not excuse compliance with the Federal Rules of Civil Procedure. *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005), quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## IV. ARGUMENT

### A. Count I for Magnuson-Moss Warranty Act Violations Should Be Dismissed.

Count I fails because plaintiff admits to the existence of a prior settlement and release of claims. Plaintiff alleges that the vehicle experienced "four complete failures totaling 51 days and 36 business days out of service" and that Nissan "failed to remedy the defects within a reasonable number of attempts despite being given multiple opportunities to do so." But the Complaint also pleads that, after the third breakdown, Plaintiff and Nissan entered into a settlement agreement under which Nissan paid Plaintiff $2,500 and Plaintiff released claims arising from the first through third breakdowns through February 26, 2025. The only alleged post-release breakdown allegedly occurred on March 1, 2025, after which the vehicle allegedly remained out of service through March 20, 2025. That pleading concession defeats the claim.

"A release is the relinquishment of a vested right or claim to a person against whom the claim is enforceable." *Neves v. Potter*, 769 P.2d 1047, 1049 (Colo. 1989). Once claims are released, the release bars the injured party from seeking further recovery. *See Ashley v. Roche*, 431 P.2d 783 (Colo. 1967). Accordingly, Plaintiff cannot rely on the released first, second, and third breakdowns as actionable repair attempts supporting Count I. Once those released events are excluded, Count I rests on a single alleged post-release repair event: the March 2025 breakdown. Plaintiff's own allegations therefore do not plausibly show that Nissan failed to repair the vehicle after a reasonable number of opportunities. Colorado warranty law recognizes that a

plaintiff asserting a breach of warranty claim against a seller with a right to limit warranty remedies must show that the product was defective, that the defendant had an opportunity to cure, that he or she failed to do so, and that damages ensued. *Cooley v. Big Horn Harvestore Systems, Inc.*, 813 P.2d 736, 744 n.7 (Colo. 1991). It would be a violation of the duty of good faith and fair dealing to foreclose that right prematurely and then assert a claim for breach of warranty. *Ranta Constr. Inc. v. Anderson*, 190 P.3d 835, 845 (Colo. App. 2008). The purposes of warranty notice include giving the seller a chance to correct any defect. *Rich's Restaurant, Inc. v. McFann Enterprises, Inc.*, 570 P.2d 1305, 1306 (Colo. App. 1977).

Under the Colorado Lemon Law, a reasonable number of repair attempts is presumed only where the same nonconformity has been subject to three or more repair attempts, where the vehicle is out of service for a cumulative total of twenty-four or more business days, or where a safety-based nonconformity has been subject to two or more repair attempts within the statutory period and continues to exist. C.R.S. 42-10-103(2)(a). Count I necessarily depends on the first through third breakdowns. The release matters because it removes the first three breakdowns from the actionable universe alleged in Count I. And because any state law warranty-based claim fails, Plaintiff's MMWA claim also fails.

The MMWA creates a federal cause of action for breach of written and implied warranties under state law. *See* 15 U.S.C. § 2310(d)(1) (creating a "civil action" for a "consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty [or] implied warranty"). The MMWA,

however, does not provide an independent cause of action, only additional damages for breaches of warranty under state law. *Janke v. Brooks*, 2012 U.S. Dist. LEXIS 51297, at *5 n.3 (D. Colo. Apr. 11, 2012). Because no state law warranty-based claim against Nissan is viable, Plaintiff's MMWA claim necessarily fails. *See Suhr v. Aqua Haven, LLC*, 2013 U.S. Dist. LEXIS 100200, (D. Kan. July 18, 2013) (holding that MMWA claims fail where implied or express warranty claims also failed). Because Plaintiff's MMWA claim depends on an underlying state-law warranty obligation, and because the Complaint does not plead a viable unreleased warranty-based claim against Nissan, Count I fails as a matter of law. The Court should dismiss Count I.

### B. Count II for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed.

Count II rests on the allegation that "[t]he Lease constitutes a valid and enforceable contract between Plaintiff and Nissan." Compl. ¶ 53. But the factual allegations incorporated into that count say something different: Plaintiff leased the Vehicle from Valley Nissan, LLC, and the lease was assigned to and serviced by NMAC. Compl. ¶ 2. The Complaint identifies Nissan as the defendant manufacturer, not as the dealer lessor or NMAC as assignee/servicer.

The Rule 12(b)(6) standard requires factual content making liability plausible, not just a bare legal conclusion that a contract exists between the parties. After disregarding the unsupported legal conclusion that the lease is a contract "between Plaintiff and Nissan," the Complaint contains no facts showing that Nissan was the lessor, assignee, servicer, or entity contractually obligated to perform the lease provisions Plaintiff invokes. Count II therefore does not plausibly allege that Nissan

breached the lease or any covenant implied in that lease. Accordingly, Count II should be dismissed.

### C. Count III for Violation of the Colorado Consumer Protection Act Should Be Dismissed.

To state a claim under the CCPA, Plaintiff must allege the following: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). A plaintiff must meet the heightened pleading requirements pursuant to Rule 9(b) to prove a deceptive or unfair trade practice. *HealthONE of Denver, Inc.*, 805 F. Supp. at 1120-21. To meet the heightened pleading requirements, a complaint must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quotations and citation omitted). "Rule 9(b)'s purpose is to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based[.]" *Id.*

Here, Plaintiff's CCPA claim fails to plausibly allege an unfair or deceptive trade practice. "To be a deceptive trade practice under the CCPA, a false or misleading statement must be made with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and

deceive the plaintiff." *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1120 (10th Cir. 2008) (quotations and citations omitted). The same intent requirement applies under a material omission theory: a material omission is actionable only if the defendant's failure to disclose was "intended to induce the consumer to enter into a transaction." *Id*. Under either theory, intent is not optional, it is an element of the claim. Plaintiff's Complaint offers nothing to establish the element of intent beyond conclusory labels. First, his allegations that Nissan's conduct was "knowing and willful," are entirely conclusory. But even if Plaintiff's allegations of knowledge or willfulness were supported with facts, "knowing and willful" addresses only the first part of the test; the Complaint is wholly silent on any intent to mislead and deceive, or any intent to induce a transaction. The Complaint also identifies no specific statement, no document or communication in which it appeared, no date or occasion on which it was made, and no person at Nissan who made it, precisely the specificity Rule 9(b) requires. *Koch*, 203 F.3d at 1236. The Complaint's bare recitation of the elements is a legal conclusion, not a factual allegation, and is not entitled to any assumption of truth.

Furthermore, Count III fails for the independent reason that none of the alleged deceptive practices significantly impact the public interest. Count III alleges four categories of deceptive conduct: advertised range, nondisclosure of battery limitations, alleged bad faith dispute resolution conduct, and alleged failure to disclose retained EV tax credits. None of these alleged deceptive trade practices, even if true, significantly impact the public interest.

Plaintiff's allegations that the battery range decreased in cold weather and highway speed driving conditions do not significantly impact the public interest. The Complaint does allege that any purported deceptive advertising campaign affected a significant number of consumers. Instead, the allegations focus entirely on Plaintiff's personal experience with his own vehicle and his subjective belief that the vehicle did not achieve the advertised range under real world conditions. Such allegations describe an individualized grievance, not a practice that significantly impacts the public. The Complaint does not allege facts showing widespread consumer deception, consumer complaints, regulatory findings, or any other basis demonstrating a significant impact on actual or potential consumers. Likewise, the Complaint contains no factual allegations demonstrating that Nissan's alleged failure to disclose battery limitations significantly impacted the public. The allegations also concern only the battery performance experienced by Plaintiff and the information allegedly provided to him in connection with his purchase. The Complaint does not allege facts establishing that Nissan concealed the same information from a substantial segment of the public, that other consumers were affected in a similar manner, or that the challenged omission was disseminated broadly to potential purchasers. Rather, the alleged nondisclosures arise solely from Plaintiff's individual transaction.

Plaintiff also alleges that Nissan failed to disclose that it retained certain federal electric vehicle tax credit benefits rather than passing those benefits on to Plaintiff. But once again, the Complaint alleges only that Plaintiff himself was supposedly deprived of information concerning the financial terms of his own

transaction. The Complaint contains no nonconclusory factual allegations demonstrating that this practice significantly impacted the public, that other consumers were misled, or that any purported omission was directed toward consumers generally. Nor does Plaintiff allege facts showing that potential consumers were exposed to a deceptive representation regarding tax credit treatment. Instead, the claim is premised entirely on Plaintiff's contention that additional information should have been provided during his individual transaction. Such allegations describe a private contractual dispute, not the type of public-facing deceptive trade practice contemplated by the CCPA. Based on the foregoing, Count III should be dismissed.

**D. Count IV for Unjust Enrichment Should Be Dismissed.**

To state a claim for unjust enrichment, Plaintiff must allege that: (1) at Plaintiff's expense (2) Nissan received a benefit (3) under circumstances that would make it unjust for Nissan to retain the benefit without paying. *DCB Constr. Co. v. Cent. City Dev. Co.*, 965 P.2d 115, 119-20 (Colo. 1998). Unjust enrichment is a quasi-contractual claim, based on the law of restitution. *See id.* at 118-19. "A party generally cannot recover for unjust enrichment, however, where there is an express contract addressing the subject of the alleged obligation to pay." *Pulte Home Corp., Inc. v. Countryside Cmty. Ass'n, Inc.*, 382 P.3d 821, 833 (Colo. 2016). Colorado courts have recognized two exceptional circumstances where a party could recover based on an unjust enrichment claim despite the existence of an express contract covering the same subject matter: (1) when "the express contract fails or is rescinded," *Pulte Home Corp.,* 382 P.3d at 833 (citing *Dudding*, 11 P.3d at 445); or (2) "the claim covers

matters that are outside of or arose after the contract." *Id.* (citing *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003)). A contract fails if it is "unenforceable for some reason." *Gravina Siding & Windows Co. v. Gravina*, 516 P.3d 37, 46 (Colo. App. 2022), *cert. denied sub nom. Frederiksen v. Gravina Siding & Windows Co.*, 2022 Colo. LEXIS 1083 (Colo. Dec. 19, 2022).

Count IV should be dismissed because Plaintiff concedes the existence of express contracts governing the very subject matter of the alleged benefit conferred on Nissan. The Complaint admits that Plaintiff leased the subject vehicle pursuant to written agreements that define the parties' rights and obligations, including the vehicle's purchase price, financing or lease terms, warranties, remedies, and other contractual provisions governing the transaction. Plaintiff's alleged losses arise directly from those contractual relationships. Because Plaintiff seeks recovery of economic benefits allegedly conferred pursuant to the parties' agreements, his unjust enrichment claim is barred as a matter of law.

Neither recognized exception applies. First, Plaintiff does not allege that any governing contract failed, was rescinded, or is otherwise unenforceable. He does not seek rescission of the lease agreement on the basis that it is void or unenforceable, nor does he allege any facts suggesting that the governing agreements are invalid. To the contrary, Plaintiff's claims depend upon the existence of those agreements and the duties they purportedly impose. Second, Plaintiff's allegations do not concern matters outside of or arising after the parties' contracts. The alleged benefits Nissan supposedly retained, including payments received in connection with the vehicle

transaction and any alleged tax credit benefits, arise directly from the contractual relationship between the parties. Likewise, Plaintiff's allegations regarding vehicle performance, battery limitations, range representations, and warranty-related obligations all concern the subject matter of the sale or lease transaction and the accompanying contractual rights and remedies. None involves a subsequent, independent benefit conferred on Nissan outside the scope of the parties' agreements.

Accordingly, because express contracts govern the parties' relationship and the subject matter of Plaintiff's alleged injuries, Plaintiff cannot maintain a quasi-contractual claim for unjust enrichment. The Complaint alleges no facts plausibly bringing his claim within either of the limited exceptions recognized by Colorado law. Count IV therefore fails to state a claim upon which relief can be granted and should be dismissed.

### E. Count V for Negligent Misrepresentation Should Be Dismissed.

Colorado follows the Restatement formulation of negligent misrepresentation: liability may arise when a defendant, in the course of business or another transaction in which it has a pecuniary interest, supplies false information for the guidance of others in business transactions, causing pecuniary loss through justifiable reliance if the defendant failed to exercise reasonable care or competence in obtaining or communicating the information. *Mehaffy, Rider, Windholz & Wilson v. Cent. Bank, N.A.*, 892 P.2d 230, 236 (Colo. 1995). To establish negligent misrepresentation, the plaintiff must show that the defendant supplied false information in a business transaction, failed to exercise reasonable care or competence in obtaining or communicating the information, and that other parties justifiably relied on it. *Id.*

Count V fails for multiple independent reasons. First, Plaintiff fails to allege that Nissan supplied false information. The Complaint alleges that Nissan marketed the vehicle with an advertised range of 216 miles and that Plaintiff ultimately experienced lower range performance in cold weather and at higher speeds. But allegations that a vehicle failed to perform as expected under certain operating conditions do not plausibly establish that the advertised range figure was false when communicated. The Complaint contains no factual allegations concerning how the advertised range was determined, why the published estimate was inaccurate, whether the figure was based on standardized testing procedures, or whether Nissan knew that the stated range could never be achieved under the conditions represented. Instead, Plaintiff merely alleges that his own vehicle achieved less than the advertised range during his personal use in Colorado's climate. Such allegations of post-sale performance do not plausibly establish that Nissan supplied false information at the time of the lease transaction. Moreover, Plaintiff's allegations themselves acknowledge that the alleged range reduction occurred under specific circumstances, including cold weather conditions and highway driving. The fact that actual range may vary depending upon environmental conditions, driving habits, speed, terrain, and other factors does not render a published range estimate false.

Second, Plaintiff's claim fails because the Complaint does not plead facts showing Nissan failed to exercise reasonable care. Even assuming the advertised range could be construed as information capable of supporting a negligent misrepresentation claim, Plaintiff does not plead facts showing that Nissan failed to

exercise reasonable care or competence in obtaining or communicating that information. The Complaint simply recites the conclusory allegation that Nissan supplied inaccurate battery performance information. It identifies no specific facts regarding how Nissan generated the range estimate, what information Nissan possessed at the time, what testing was conducted, or why Nissan's procedures allegedly fell below any standard of reasonable care. A bare assertion that Nissan "failed to exercise reasonable care" is a legal conclusion that cannot satisfy plausibility pleading requirements.

Third, Plaintiff's negligent misrepresentation claim fails to the extent Plaintiff seeks to premise his claim on marketing materials concerning vehicle range, battery performance, suitability, or anticipated driving characteristics because such statements are not actionable absent a concrete, objectively false representation. Colorado courts and the Tenth Circuit have consistently held that generalized promotional statements and product descriptions constitute non-actionable puffery. *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106-07 (10th Cir. 2009); *Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*, 638 F. App'x 778, 786-87 (10th Cir. 2016). Courts routinely reject misrepresentation claims based on broad marketing descriptions because such statements are subjective assessments and expressions of opinion rather than verifiable representations of fact. *See, e.g., Home-Tech, Inc. v. Gray*, 2017 LEXIS 1503, at *2-3, 6 (D. Colo. 2017); *Farmer v. Walmart, Inc.*, 729 F. Supp. 3d 1202, 1226 (D.N.M. 2024). Plaintiff attempts to transform generalized vehicle performance marketing into a negligence claim based solely on

his dissatisfaction with the vehicle's real-world operation. Such allegations are precisely the type of subjective performance expectations that cannot support an actionable misrepresentation claim.

Count V is nothing more than a warranty dispute recast as negligent misrepresentation. Plaintiff alleges that the vehicle did not perform as anticipated and that Nissan failed to repair it to his satisfaction. Colorado law does not permit a plaintiff to convert every alleged product performance issue into a tort claim by characterizing the dispute as a negligent misrepresentation. Because Plaintiff fails to plausibly allege that Nissan supplied false information, fails to plead facts demonstrating a lack of reasonable care, relies upon non-actionable marketing statements and product-performance expectations, and fails to establish causation, Count V fails to state a claim upon which relief can be granted and should be dismissed pursuant to Rule 12(b)(6).

### F. Count VI for Bad Faith and Abuse of Process Should Be Dismissed.

The elements of an abuse of process claim are that a defendant: (1) had an ulterior purpose in using a judicial proceeding; (2) used the proceeding in an improper manner by taking a willful action that was improper in the proceeding's regular course; and (3) caused damage to plaintiff. *Mintz. v. Accident & Injury Med. Specialists, P.C.*, 384 P.3d 62, 66 (Colo. App. 2010); *Hewitt v. Rice*, 119 P.3d 541, 544 (Colo. App. 2004), *aff'd* 154 P.3d 408 (Colo. 2007). "As to the first element, an ulterior purpose is one that the legal proceeding was not designed to accomplish." *Mintz* at 66. Usually, the ulterior purpose is to obtain an advantage in another matter to

achieve the surrender or property of the payment of money. *Id*. citing *Hertz. v. Luzenac Group*, 576 F.3d 1103, 1118 (10th Cir.2009). However, there is no liability for abuse of process if the defendant's ulterior purpose was simply incidental to the proceeding's proper purpose. *Id*. As to the second element, the "improper use" element, using a legal proceeding in an improper manner requires proof of a willful act by the defendant in the using the process that is not proper in the proceeding's regular course. *Id*. "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint, there is no abuse, even if the plaintiff had an ulterior motive in bringing the action." *Id*.

Plaintiff's abuse of process claim should be dismissed pursuant to Rule 12(b)(6) because the Complaint does not plausibly allege either of the first two essential elements of the tort. First, the Complaint does not plausibly allege that Nissan employed a judicial proceeding to achieve an objective for which the proceeding was not designed. The allegations amount to a claim that Nissan disputed Plaintiff's demands, defended its legal position, and attempted to resolve the parties' disagreement on terms favorable to Nissan. Those actions are entirely consistent with the legitimate purpose of litigation and dispute resolution. To the extent Plaintiff alleges that Nissan sought to avoid liability, defeat his claims, enforce its contractual rights, or obtain a favorable outcome, such objectives are the very purposes for which judicial proceedings exist. They do not constitute an "ulterior purpose." Moreover, even if Plaintiff alleges that Nissan hoped to obtain some incidental business or financial benefit by prevailing in the dispute, Colorado law is clear that there is no

abuse of process where the alleged ulterior purpose is merely incidental to the proceeding's proper purpose. Because the Complaint alleges no facts demonstrating that Nissan employed judicial process to obtain some collateral advantage unrelated to the litigation, the first element is not satisfied.

Second, the claim independently fails because Plaintiff does not identify any willful act constituting an improper use of process. The Complaint does not identify any legal process that Nissan allegedly misused. It does not allege that Nissan issued improper subpoenas, filed sham pleadings, sought improper attachments, misused discovery procedures, obtained process for a coercive purpose, or otherwise employed a judicial mechanism in a manner outside its lawful function. Instead, the allegations concern Nissan's communications with Plaintiff, its handling of Plaintiff's claims, its positions regarding settlement or warranty obligations, and its participation in dispute resolution proceedings. Such conduct falls squarely within the ordinary and legitimate functions of defending claims and participating in legal proceedings. Even accepting Plaintiff's allegations as true, the Complaint alleges nothing more than Nissan's exercise of its right to contest liability and advocate its position, which does not constitute abuse of process. Plaintiff's abuse of process claim merely rests on the theory that Nissan acted unfairly during the parties' dispute and sought an outcome favorable to itself. Because the Complaint fails to allege facts showing that Nissan used any judicial process for a collateral objective or that Nissan employed process in a manner outside its regular and legitimate function, Plaintiff has failed to plead the essential elements of an abuse-of-process claim. Accordingly, Count V should be

dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### G. Count VII for Intentional Infliction of Emotional Distress Should Be Dismissed.

Colorado sets a high threshold for intentional infliction of emotional distress by outrageous conduct. The conduct must be so extreme in degree and outrageous in character that it goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community. *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999). The trial court must initially determine, as a matter of law, whether the alleged conduct could be found outrageous by reasonable people. *Id.* at 665. The level of outrageousness required is extremely high. *McCarty v. Kaiser-Hill Co., L.L.C.*, 15 P.3d 1122, 1126 (Colo. App. 2000).

Plaintiff alleges Nissan leased him a defective vehicle, failed to provide adequate transportation, structured inadequate repurchase offers, directed him to an inadequate dispute resolution forum, failed to pay JAMS fees, retained electric vehicle tax credits, and used credit reporting as financial pressure. Those allegations describe a commercial dispute over a vehicle lease, warranty performance, repurchase terms, arbitration fees, and credit consequences. Even if accepted as true, they do not meet Colorado's high legal threshold for conduct that is atrocious and utterly intolerable in a civilized community. Colorado courts have affirmed dismissal where allegations, even if potentially tortious, did not rise to the level required for outrageous conduct. *See Hewitt v. Pitkin Cty. Bank & Tr. Co.*, 931 P.2d 456, 459 (Colo. App. 1995)

## V. CONCLUSION

For the foregoing reasons, Nissan respectfully requests that the Court enter an order dismissing Plaintiff's Verified Complaint in its entirety, with prejudice, and granting such other relief as the Court deems proper.

Respectfully submitted this 2nd day of September, 2026.

By: *__/s/ Russell Kalvelage__*_____________
Russell S. Kalvelage
O'Hagan Meyer PLLC
1331 17th St., Suite 350
Denver, CO 80202
Telephone: (303) 652-5871
rkalvelage@ohaganmeyer.com
***Attorneys for Nissan North America, Inc.***

**Generative AI Certification**: In accordance with Section C.2. of Judge Crews's Standing Order for Civil Cases, the attorney that drafted this motion certifies that any language drafted by AI was personally reviewed by the filer or another human for accuracy, and all legal citations are to actual, non-fictitious cases or cited authority.

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of September, 2026, a true and correct copy of this **DEFENDANT NISSAN NORTH AMERICA, INC.'S MOTION TO DISMISS FIRST AMENDED VERIFIED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** was filed via the Court's CM/ECF system and served via E-Mail to the following:

***Jason Brooks***
636 Barberry Drive
Longmont, CO 80503
Telephone: (925) 366-0803
E-mail: geniusjasonbrooks@gmail.com
Plaintiff, *pro se*

*/s/ Russell Kalvelage*