**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-01385-SKC-STV

JASON T. BROOKS

Plaintiff(s),

v.

NISSAN NORTH AMERICA, INC.

Defendant.

---

**DEFENDANT NISSAN NORTH AMERICA, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

---

Defendant Nissan North America, Inc. ("Nissan"), by its undersigned counsel, O'Hagan Meyer, PLLC, moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's First Amended Complaint and Demand for Jury filed September 2, 2026 [ECF No. 38] (the "Amended Complaint") in its entirety, with prejudice. In support, Nissan states as follows:

## CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a) and Section C.1 of Judge Crews' Standing Order for Civil Cases, undersigned counsel certifies that, on September 16, 2026, counsel emailed Plaintiff and invited him to confer regarding the relief requested in this Motion. Plaintiff did not respond. Based on Plaintiff's non-response and the parties' prior conferral communications, Nissan presumes that Plaintiff opposes the relief requested herein.

## I. INTRODUCTION

Plaintiff filed the Amended Complaint on September 2, 2026, the same day—and just hours after—Nissan filed a Motion to Dismiss his original Verified

Complaint for failure to state a claim (Nissan's "First Motion to Dismiss"). The Court later denied Nissan's First Motion to Dismiss as moot solely because Plaintiff had amended his pleading, but Nissan's First Motion to Dismiss put Plaintiff on notice of the deficiencies fatal to each of his claims against Nissan. Rather than try to cure those deficiencies, Plaintiff's Amended Complaint changed the cast of defendants, reorganized some labels, added allegations attacking Nissan's counsel and prior litigation conduct, and expanded his damages demand to approximately $3.28 million. The core defects as to Plaintiff's claims against Nissan, however, remain. Plaintiff's Amended Complaint therefore confirms that each of Plaintiff's claims fail as a matter of law. Plaintiff used sixty-eight pages to add defendants, rhetoric, and damages theories, but additional volume does not equate to additional plausibility. The claims against Nissan should be dismissed with prejudice.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Amended Complaint alleges that Plaintiff entered into a 36-month lease for a 2024 Nissan Ariya through Valley Nissan on October 31, 2024, with monthly payments of $418.66. Am. Compl. ¶¶ 1-2. The Lease identified Valley Nissan as lessor and assigned its rights to Nissan-Infiniti LT LLC and Nissan Motor Acceptance Company, LLC ("NMAC"). Am. Compl. ¶ 3.

The Amended Complaint alleges that the vehicle experienced four failures between December 2024 and March 2025. Am. Compl. ¶ 7. After the third failure, Plaintiff and Nissan entered into a settlement under which Nissan paid Plaintiff $2,500 and Plaintiff released claims arising from the first three failures through

February 26, 2025. Am. Compl. ¶¶ 10-11. Plaintiff alleges a fourth failure occurred on March 1, 2025, after which he stopped driving the Vehicle and leased a replacement vehicle. Am. Compl. ¶ 7.

The Amended Complaint alleges that Nissan offered to repurchase the vehicle but improperly reduced its offer by the prior $2,500 settlement payment, resulting in a disputed balance that Plaintiff refused to accept. Am. Compl. ¶¶ 11-13. Plaintiff alleges that Nissan advertised the vehicle as providing an EPA-estimated range of 216 miles and suitable performance in cold weather, but that the vehicle failed to perform in accordance with those representations during his use. Am. Compl. ¶¶ 14-18.

According to the Amended Complaint, Plaintiff initiated arbitration under the Lease in March 2025, was directed instead to the BBB AUTO LINE program, and the BBB AUT LINE proceeding was subsequently closed. Am. Compl. ¶¶ 21-22. Plaintiff sent Nissan a notice purporting to revoke acceptance of the Vehicle on May 1, 2025, returned the Vehicle in July 2025, and alleges that neither Nissan nor NMAC refunded his prior payments. Am. Compl. ¶¶ 23, 27. Plaintiff further alleges that NMAC thereafter reported the lease account as delinquent and charged off, causing credit-related harm, including adverse housing and credit decisions. Am. Compl. ¶¶ 36, 42.

Plaintiff filed his original Verified Complaint on April 1, 2026. Am. Compl. ¶ 24. After the Clerk entered default and Nissan later appeared and moved to set it aside, the Court vacated the default on August 21, 2026. *Id.* Nissan moved to dismiss

the original Complaint on September 2, 2026. Plaintiff responded by filing a 68-page Amended Complaint that same day, adding NMAC and Nissan's counsel as defendants and asserting claims under the Magnuson-Moss Warranty Act, for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Colorado Consumer Protection Act, fraudulent misrepresentation, intentional infliction of emotional distress, abuse of process, and civil conspiracy. The claims arise from the same vehicle lease, repair history, settlement and release, repurchase negotiations, dispute resolution efforts, and alleged credit-reporting consequences described in the original Complaint.

## III. LEGAL STANDARD

A complaint challenged under Rule 12(b)(6) must plead factual content sufficient to raise the asserted right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007). A plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels, conclusions, or a formulaic recitation of elements. *Id.* at 555. Courts do not weigh trial evidence at this stage; they determine whether the complaint alone is legally sufficient to state a claim. *HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*, 805 F. Supp. 2d 1115, 1119 (D. Colo. 2011), citing *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). Pro se pleadings are construed liberally, but the Court does not act as an advocate for the pro se litigant. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Pro se status also does not excuse compliance with the Federal Rules of Civil Procedure. *Garrett v.*

*Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005), quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## IV. ARGUMENT

### A. Plaintiff's Amended Complaint Does Not Cure the Defects in the Magnuson-Moss Warranty Act Claim.

Nissan's First Motion to Dismiss identified a critical defect in the Magnuson-Moss Warranty Act ("MMWA") claim: Plaintiff had released all claims arising from the first three breakdowns, and the sole alleged post-release repair event did not plausibly show a failure to repair after a reasonable number of opportunities. The Amended Complaint does not cure this defect. Plaintiff again alleges a total of four mechanical failures, but he again admits that the parties' settlement released all claims arising from the first three. He admits that only one alleged failure occurred after the release. A valid release supports dismissal of claims encompassed by its terms. *Arline v. Am. Family Mut. Ins. Co.*, 431 P.3d 670, 672 (Colo. App. 2018) (citations omitted). Plaintiff therefore cannot avoid the release merely by aggregating released events with the one later event. The Amended Complaint admits just one post-release breakdown and repair, and does not allege another breakdown after that repair, another unsuccessful post-release repair effort, or any remaining post-repair defect. Thus, Plaintiff still does not plead facts showing an unreleased defect that continued after Nissan received a reasonable opportunity to repair the vehicle.

To the extent Plaintiff's MMWA claim relies on the Colorado Lemon Law, such reliance does not make his claim plausible. Under the Colorado Lemon Law, a statutory presumption of a reasonable number of attempts to conform a motor vehicle

to the warranty may arise when the same nonconformity has undergone three or more qualifying repair attempts, when the vehicle has been out of service for at least twenty-four qualifying business days, or when a safety-based nonconformity continues after two or more qualifying repair attempts. C.R.S. § 42-10-103(2)(a). The statute also conditions the presumption against a manufacturer on prior written notice by certified mail and ten business days for the manufacturer to cure. C.R.S. § 42-10-103(2)(c). The Amended Complaint neither alleges the requisite number of post-release repair attempts, nor does it allege that Plaintiff sent the prescribed certified mail notice and afforded Nissan the statutory cure period.

Nissan's alleged repurchase offer also does not revive released warranty claims or establish that the single post-release event remained uncured. The MMWA requires a warrantor to remedy a covered defect within a reasonable time and, after a reasonable number of unsuccessful attempts, permit an election of refund or replacement. 15 U.S.C. § 2304(a). Plaintiff admits that Nissan offered repurchase after the fourth breakdown; his grievance is that he rejected Nissan's calculation and demanded additional damages. That allegation does not plausibly establish a failure to provide a warranty remedy.

Finally, Plaintiff still does not identify a viable underlying, unreleased state-law warranty claim. Nissan's First Motion to Dismiss explained that the MMWA claim depends on an underlying warranty obligation and cannot survive where the predicate state law warranty claim fails. *See Janke v. Brooks*, 2012 U.S. Dist. LEXIS 51297, at *5 n.3 (D. Colo. Apr. 11, 2012); *see also Suhr v. Aqua Haven, LLC*, 2013 U.S.

Dist. LEXIS 100200, (D. Kan. July 18, 2013) (holding that MMWA claims fail where implied or express warranty claims also failed). The Amended Complaint adds no separate state law warranty count and no new facts curing the release and opportunity to repair pleading deficiencies. Plaintiff has no viable warranty-based claim under state law. Count I should be dismissed with prejudice.

### B. The Amended Complaint's Breach of Contract Claim Still Fails Because It Admits No Contract Existed Between Plaintiff and Nissan.

Nissan's First Motion to Dismiss identified a straightforward contradiction: Plaintiff called the lease a contract with Nissan while alleging that Valley Nissan originated it and that another entity, NMAC, serviced it. Under Colorado law, to state a claim for breach of contract, Plaintiff must demonstrate, among other elements, the existence of a contract. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (D. Colo. 1992). The Amended Complaint still does not plead the existence of a contract. It adds NMAC as a defendant, but it does not plead facts showing that Nissan itself was a party to the lease. No allegations in the Amended Complaint identify Nissan as the lessor, assignee, or party obligated to perform the lease. Plaintiff instead alleges that NMAC is Nissan's subsidiary and agent and then supplies a legal conclusion that Nissan is "liable both directly and through its control of NMAC." The Court need not accept that legal conclusion as true, and that conclusion does not supply facts showing that Nissan assumed NMAC's contractual obligations. Plaintiff's claim for breach of contract should be dismissed with prejudice.

### C. Plaintiff Cannot State an Implied Covenant Claim Where Nissan Had No Contractual Discretion to Exercise and No Contractual Duty to Breach.

The Amended Complaint's new standalone claim for breach of the implied covenant of good faith and fair dealing also fails. While Colorado recognizes an implied covenant of good faith and fair dealing in most contracts, the covenant applies only to discretionary contract terms and cannot contradict express terms or create obligations not found in the contract. *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006); *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). The duty of good faith and fair dealing may be relied upon when "one party has discretionary authority to perform certain contract terms." *O'Reilly v. Physicians Mut. Ins. Co.*, 992 P.2d 644, 646 (Colo. 1999). "Discretion" exists if the parties decide, at the time of formation of the contract, to defer a decision on the specifics of performance until later, thereby leaving one party with the power to set or control the terms of performance after the contract has been made. *Parker*, 138 P.3d at 292.

The Amended Complaint does not identify any contractual discretion conferred on Nissan or explain how Nissan exercised such discretion to deprive Plaintiff of an agreed contractual benefit. It instead alleges that Nissan refused arbitration, directed Plaintiff to another dispute forum, did not accept Plaintiff's unilateral revocation theory, and furnished derogatory credit information. Those allegations either depend on obligations assigned to entities other than Nissan or seek to add substantive duties that Plaintiff has not tied to any lease provision binding Nissan. The implied covenant cannot create the missing contractual relationship or make Nissan responsible for every act allegedly performed by NMAC. The Amended

Complaint's claim for breach of the implied covenant of good faith and fair dealing should be dismissed with prejudice.

### D. The Amended Complaint's Colorado Consumer Protection Act ("CCPA") Claim Still Does Not Plead an Actionable Deceptive Practice.

Plaintiff's CCPA claim should be dismissed because the Amended Complaint still fails to state a plausible claim. To state a CCPA claim, Plaintiff must allege: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). Because the claim sounds in fraud, Plaintiff must also satisfy Rule 9(b). *HealthONE of Denver*, 805 F. Supp. 3d at 1120-21. Rule 9(b) requires allegations of the time, place, content, speaker, and consequences of the alleged misrepresentation. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). Although the Amended Complaint adds detail, it still fails to plausibly allege an actionable misrepresentation, deceptive intent, or a significant public impact.

*First*, Plaintiff does not plausibly allege a false representation. He challenges Nissan's advertised EPA-estimated range of 216 miles and marketing statements such as "better performance in hot and cold weather," "all-weather confidence," and "Built for Extreme Conditions." But he alleges no facts showing the EPA estimate

was inaccurately calculated, improperly tested, or false when made. Nor does he allege Nissan represented that every driver would achieve 216 miles regardless of weather, speed, terrain, or driving conditions. Instead, he alleges only that his vehicle displayed a lower estimated range during cold weather and did not meet his expectations. Those allegations concern one consumer's experience under particular conditions and do not plausibly establish that Nissan's representations were false.

The Amended Complaint also fails to satisfy Rule 9(b). Plaintiff generally references advertising materials but still does not identify with particularity which statements were false, who made them, when they were made, or why they were false when made. Reliance on generalized marketing language coupled with dissatisfaction about real-world performance does not satisfy Rule 9(b).

*Second*, Plaintiff fails to plead the intent element required for a deceptive trade practice claim. "To be a deceptive trade practice under the CCPA, a false or misleading statement must be made with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive the plaintiff." *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1120 (10th Cir. 2008). Likewise, an omission is actionable only if intended to induce the consumer to enter the transaction. *Id.* The Amended Complaint contains no facts supporting a plausible inference that Nissan intended to mislead Plaintiff. Assertions that Nissan acted knowingly or willfully are conclusory and do not establish the separate requirement of intent to deceive. Plaintiff identifies no communications, conduct, or other facts evidencing deceptive intent.

*Third*, Plaintiff's causation allegations are also deficient. He entered the lease on October 31, 2024, yet one of the principal statements on which he relies appeared in a January 8, 2025 press release. A representation made after the lease transaction could not have induced him to enter it.

*Fourth*, Plaintiff still fails to plausibly allege a significant public impact as required by *Rhino Linings*. His allegations regarding vehicle range, battery performance, dispute-resolution procedures, and tax-credit disclosures arise from his individual transaction. The Amended Complaint alleges no facts showing widespread consumer deception, a substantial number of affected consumers, comparable complaints, regulatory findings, or other circumstances demonstrating an impact on the consuming public. Plaintiff also does not allege facts showing that other consumers were misled regarding Nissan's dispute resolution procedures or lease-related tax credit disclosures. Instead, he extrapolates from his own experience without factual support.

Because Plaintiff has not cured the deficiencies identified in Nissan's First Motion to Dismiss, the CCPA claim should be dismissed.

**E. The Amended Complaint's New Count for Fraudulent Misrepresentation Fails to Allege Fraud with Particularity.**

Plaintiff's original complaint asserted negligent misrepresentation. The Amended Complaint abandons negligence and substitutes fraud, but like Plaintiff's CCPA claim, it fails because it does not plead with particularity as required by Rule 9(b). To state a claim for fraudulent misrepresentation, a plaintiff must show: (1) a fraudulent misrepresentation of material fact was made by the defendant; (2) the

plaintiff relied on the misrepresentation; (3) the plaintiff had the right to rely on, or was justified in relying on, the misrepresentation; and (4) the reliance resulted in damages. *Dean v. Wright Med. Tech., Inc.*, 593 F. Supp. 3d 1086, 1096 (D. Colo. 2022) (quotation omitted). The Amended Complaint does not satisfy these requirements.

*First*, Plaintiff fails to plead any actionable false representation of material fact. The statements that the vehicle provides "better performance in hot and cold weather," "all-weather confidence," and that customers would "get the same performance in a wide variety of weather conditions" are precisely the type of generalized, promotional statements that courts routinely hold to be nonactionable puffery. *See, e.g., Home-Tech, Inc. v. Gray*, 2017 LEXIS 1503, at *2-3, 6 (D. Colo. 2017). These statements are inherently subjective, aspirational, and incapable of objective verification. The Amended Complaint offers no factual basis demonstrating that these marketing phrases constituted concrete guarantees regarding vehicle range under all temperatures, driving conditions, speeds, or usages. Likewise, Plaintiff's allegation regarding the advertised "216-mile EPA-estimated range" does not plausibly establish a false statement. By Plaintiff's own allegations, Nissan represented an EPA-*estimated* range, not a guaranteed range under all operating conditions. Plaintiff does not allege that Nissan misstated the EPA estimate itself, that the vehicle failed EPA testing, or that Nissan fabricated the EPA-certified figure. Rather, Plaintiff alleges only that he personally experienced lower range under cold weather and highway driving conditions. Such allegations do not establish that the representation was false when made.

*Second*, Plaintiff fails to plead facts supporting an inference of fraudulent intent or knowledge of falsity. The Amended Complaint relies on conclusory assertions that Nissan "knew" its representations were false because cold weather affects electric vehicle range. But Plaintiff's own allegations acknowledge that cold temperatures impact electric-vehicle performance generally. Far from demonstrating fraud, these allegations undermine any inference that Nissan knowingly misrepresented vehicle performance. Plaintiff does not identify any internal Nissan documents, testing data, consumer studies, engineer communications, or other facts showing that Nissan knew the challenged statements were false at the time they were made. Plaintiff's comparison to a different manufacturer's vehicle likewise do not establish fraud. The alleged performance of a 2024 Kia EV6 says nothing about Nissan's knowledge, intent, or the truthfulness of representations concerning the Ariya.

*Third*, Plaintiff fails adequately to plead justifiable reliance. To establish fraudulent misrepresentation, Plaintiff must plead facts showing both actual reliance and that such reliance was justified. Here, Plaintiff alleges he leased the vehicle because he wanted to provide a car to his mother, intended to perform gig work, and expected to reduce fuel costs through home charging. But these allegations merely describe Plaintiff's personal reasons for entering into the lease. They do not establish that he reasonably relied on the challenged statements as guarantees of specific real-world range under varying temperatures, vehicle speeds, driving habits, and environmental conditions.

*Fourth*, Plaintiff fails to plead damages flowing from an actionable misrepresentation. The Amended Complaint seeks recovery of lease payments, replacement transportation costs, and other damages, but those alleged injuries arise from Plaintiff's dissatisfaction with the vehicle's performance rather than from any specifically pleaded fraudulent statement. Because Plaintiff fails to allege an actionable misrepresentation or justified reliance, the causation and damages allegations necessarily fail as well.

Finally, the claim independently fails under Rule 9(b) because Plaintiff does not plead the alleged fraudulent statements with sufficient particularity. The Amended Complaint does not identify with specificity who made several of the challenged statements, when they were made, where Plaintiff encountered them, the complete context in which they were communicated, or facts demonstrating why each statement was false when made.

Accordingly, the Amended Complaint's the fraudulent misrepresentation claim should be dismissed with prejudice.

### F. The Amended Complaint's Claim for Intentional Infliction of Emotional Distress ("IIED") Still Fails Because It Does Not Allege Outrageous Conduct.

Nissan's First Motion to Dismiss explained that intentional infliction of emotional distress requires conduct so extreme and outrageous that it exceeds all possible bounds of decency, and that the Court must initially determine whether reasonable people could regard the alleged conduct as outrageous. *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665-66 (Colo. 1999). Nissan's First Motion to Dismiss notified Plaintiff that the allegations concerning vehicle performance, repurchase terms,

arbitration, tax credits, and credit consequences described a commercial dispute and did not satisfy that exceptionally high threshold. The allegations in the Amended Complaint still do not constitute outrageous conduct as a matter of law. The Amended Complaint now aggregates allegations concerning vehicle defects, advertising, dispute resolution communications, credit reporting, Nissan's default, motion practice, settlement negotiations, and counsel's arguments, then characterizes the combined course of conduct as "weaponizing" credit and "destroying" dispute forums. But multiplying allegations and intensifying adjectives do not, as a matter of law, transform a warranty, lease, credit reporting, and litigation dispute into atrocious conduct utterly intolerable in a civilized community. The Amended Complaint's allegations supporting the IIED claim come nowhere close to the extremely high standard of conduct courts recognize as sufficient to state a claim. *See Green v. Qwest Servs. Corp.*, 155 P.3d 383, 386 (Colo. App. 2006) (collecting cases). The Amended Complaint's IIED claim should be dismissed with prejudice.

### G. The Amended Complaint's Abuse of Process Claim Repeats the Same Deficiencies Identified in Nissan's First Motion to Dismiss.

Plaintiff's abuse of process claim should be dismissed because the Amended Complaint still fails to plausibly allege either of the two essential elements: an ulterior purpose, or a willful misuse of judicial process. To state an abuse of process claim, a plaintiff must allege that the defendant: "(1) had an ulterior purpose in using a judicial proceeding; (2) used the proceeding in an improper manner by taking a willful action that was improper in the proceeding's regular course; and (3) caused damage to plaintiff." *Mintz v. Accident & Injury Med. Specialists, P.C.*, 384 P.3d 62,

66 (Colo. App. 2010). An ulterior purpose is one the proceeding was not designed to accomplish, typically a collateral objective such as obtaining money, property, or some unrelated advantage. *Id*. at 66 (citing *Hertz v. Luzenac Group*, 576 F.3d 1103, 1118 (10th Cir. 2009)). Further, "[i]f the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint, there is no abuse, even if the plaintiff had an ulterior motive in bringing the action." *Id*.

*First*, the Amended Complaint does not plausibly allege an ulterior purpose. Plaintiff alleges that Nissan and its counsel submitted information regarding Plaintiff's public criticism of the presiding judge and pursued relief from default to improve Nissan's position in the litigation. But persuading a court, influencing the court's assessment of disputed issues, and obtaining relief under Rule 55(c) are objectives inherent in the litigation process itself, not collateral purposes. Likewise, Plaintiff's allegations that Nissan withdrew and refiled a Rule 55(c) motion to avoid the consequences of default describe efforts to defend the lawsuit, not attempts to obtain an objective outside the litigation. Plaintiff's allegations of delay, increased litigation costs, or settlement leverage fare no better. Those consequences are common to contested litigation and do not establish the collateral objective required by Colorado law.

*Second*, Plaintiff still fails to allege a willful misuse of process. Colorado law requires misuse of the process itself, not merely allegations that a party acted improperly while employing otherwise lawful litigation procedures. The Amended Complaint identifies three categories of conduct: (1) filing allegedly irrelevant or

prejudicial material in support of a Rule 55(c) motion; (2) submitting a declaration Plaintiff contends was inaccurate; and (3) withdrawing and refiling a Rule 55(c) motion. None constitutes abuse of process. Filing arguments and supporting materials in connection with a pending motion is routine litigation conduct. Likewise, even assuming the declaration contained an inaccurate statement concerning when Nissan learned of the case, allegations that a filing includes incorrect information do not establish misuse of judicial process. Plaintiff does not allege that Defendants employed subpoenas, garnishments, attachments, discovery devices, or any other judicial mechanism for an unauthorized purpose. Instead, he challenges the content of filings submitted in support of relief sought from the Court. Such allegations may raise evidentiary or procedural disputes, but they do not constitute abuse of process. Nor does the withdrawal and refiling of a motion. Amending, correcting, supplementing, withdrawing, and refiling motions are ordinary litigation activities expressly contemplated by the Federal Rules, and Plaintiff's disagreement with Nissan's explanation for doing so does not transform routine motion practice into an actionable tort.

Because the Amended Complaint still alleges only disagreement with Defendants' litigation conduct and not an ulterior purpose or misuse of process, the abuse of process claim should be dismissed with prejudice.

### H. The Civil Conspiracy Claim Fails Because Plaintiff Alleges Only Routine Litigation Conduct, Not an Unlawful Agreement or Overt Act.

To state a claim for civil conspiracy, a plaintiff must allege: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds regarding the

object or course of action; (4) one or more unlawful overt acts; and (5) damages proximately caused by those acts. *See Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486 (Colo. 1989). A party cannot be held liable for civil conspiracy for exercising a lawful right in a lawful manner, including pursuing legal claims through the courts. *See Nelson v. Elway*, 908 P.2d 102 (Colo. 1995); *Magin v. DVCO Fuel Sys., Inc.*, 981 P.2d 673 (Colo. App. 1999).

Plaintiff's civil conspiracy claim fails because the Amended Complaint does not plausibly allege either an unlawful agreement between Nissan and its counsel, or any unlawful overt act capable of supporting a conspiracy claim. Instead, the allegations concern litigation conduct undertaken by a party and its attorneys in the course of representing Nissan in this action. Colorado law does not permit a civil conspiracy claim based on the lawful exercise of litigation rights.

*First*, Plaintiff fails to adequately plead the requisite "meeting of the minds" to accomplish an unlawful objective. The Amended Complaint alleges only that Nissan retained counsel to represent it in this litigation and that Nissan directed certain litigation decisions, including withdrawal of a prior motion. These allegations merely describe the ordinary attorney-client relationship and routine litigation management. They do not plausibly establish an agreement between separate actors to commit an unlawful act. Plaintiff pleads no non-conclusory facts showing that Nissan and its counsel reached an agreement to engage in unlawful conduct.

*Second*, Plaintiff fails to allege any unlawful object of the conspiracy. The Amended Complaint alleges Nissan sought to obtain relief from default under Rule

55(c) and to secure a favorable ruling for Nissan. Seeking relief from default, filing motions, advocating legal positions, and attempting to obtain favorable judicial rulings are lawful litigation activities which cannot sustain a civil conspiracy claim.

*Third*, the Amended Complaint fails to allege an actionable unlawful overt act. Plaintiff relies on alleged violations of the Colorado Rules of Professional Conduct, Rule 11, and the Court's Standing Order. But alleged violations of attorney-conduct rules do not create independent causes of action and therefore cannot serve as the predicate unlawful acts necessary to sustain a civil conspiracy claim. Likewise, Rule 11 and court management orders provide procedural mechanisms for sanctions and discipline; they do not create private tort duties running to an opposing litigant. Plaintiff cites no authority recognizing violations of professional conduct rules, Rule 11, or a standing order as actionable torts supporting civil conspiracy liability.

Plaintiff's reference to the Colorado Supreme Court's decision in *Dixon v. Bowen*, 85 Colo. 194, 274 P. 824 (1929), does not salvage the claim. *Dixon* involved allegations of procuring a judgment through fraud and collusion. Here, Plaintiff alleges only disagreement with litigation positions advanced in support of Rule 55(c) relief. The Complaint contains no well-pleaded facts demonstrating that Nissan procured any ruling through fraud, corruption, or other independently actionable misconduct.

Finally, because the alleged overt acts consist entirely of litigation conduct undertaken by Nissan and its attorneys in connection with the defense of this lawsuit, the conspiracy claim is an impermissible attempt to recast ordinary advocacy as an

independent tort. Accordingly, because the Amended Complaint's civil conspiracy claim should be dismissed with prejudice.

## V. LEAVE TO AMEND WOULD BE FUTILE

Plaintiff has already had the opportunity to amend his Complaint. Courts may dismiss a plaintiff's claims with prejudice where, as here, further amendment would be futile. *Sullivan v. Univ. of Kan. Hosp. Auth.*, 844 F. App'x 43, 52 (10th Cir. 2021) (holding that even pro se plaintiffs must comply with the Federal Rules of Civil Procedure and amendment will not be granted where it would be futile). Plaintiff's amendment does precisely that. Amendment would be futile here because the factual allegation in the Amended Complaint make clear that further amendment would not cure the fatal deficiencies in Plaintiff's claims. "[The] Court need not provide additional opportunities to amend where prior amendments have failed to produce sufficient allegations..." *McAllister v. Kellogg*, 2015 WL 2329425, at *11 n.3 (D. Colo. May 14, 2015). Such claims should accordingly be dismissed with prejudice, as any amendment would be futile. *See Onodera v. Dowis*, 2011 WL 3666748, at *7 n.3 (D. Colo. June 6, 2011) ("Even as courts are careful to protect the rights of pro se plaintiffs, they typically find that granting the opportunity to amend would be futile.").

## VI. CONCLUSION

For the foregoing reasons, Nissan respectfully requests that the Court dismiss all counts asserted against it in Plaintiff's Amended Complaint. Upon dismissal of all claims against Nissan, Nissan further requests judgment for its reasonable attorney

fees under C.R.S. § 13-17-201. Accordingly, Nissan requests leave to establish the amount of its reasonable attorney fees by a timely post-dismissal submission, together with such other relief as the Court deems proper.

Respectfully submitted this 16th day of September, 2026.

By: */s/ Russell Kalvelage*
Russell S. Kalvelage
O'Hagan Meyer PLLC
1331 17th St., Suite 350
Denver, CO 80202
Telephone: (303) 652-5871
rkalvelage@ohaganmeyer.com
***Attorneys for Nissan North America, Inc.***

**Generative AI Certification**: In accordance with Section C.2. of Judge Crews's Standing Order for Civil Cases, the attorney that drafted this motion certifies that any language drafted by AI was personally reviewed by the filer or another human for accuracy, and all legal citations are to actual, non-fictitious cases or cited authority.

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September, 2026, a true and correct copy of this **DEFENDANT NISSAN NORTH AMERICA, INC.'S MOTION TO DISMISS FIRST AMENDED VERIFIED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** was filed via the Court's CM/ECF system and served via E-Mail to the following:

***Jason Brooks***
636 Barberry Drive
Longmont, CO 80503
Telephone: (925) 366-0803
E-mail: geniusjasonbrooks@gmail.com
Plaintiff, *pro se*

*/s/ Russell Kalvelage*